**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LISA W. WANG, JUDGE**

-------------------------------------------------------------- **X**

**TARGET GENERAL MERCHANDISE, INC.**

       **Plaintiff,**

       *v.*                     **Consol. Court No. 15-69**

**UNITED STATES OF AMERICA**
       **Defendant.**

-------------------------------------------------------------- **·X**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: June 20, 2024

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT...................................................................1

STATEMENT OF FACTS .............................................................................................4

STANDARD OF REVIEW ...........................................................................................13

ARGUMENT ................................................................................................................14

I.     The Imported LED Products Imported After January 1, 2017 are Properly Classified
       in Heading 8539.50, HTSUS. ...............................................................................14

II.    Some LED Lamps Imported Prior to January 1, 2017 are Classifiable Under
       Subheading 8543.70.70, HTSUS ...........................................................................25

CONCLUSION ............................................................................................................30

## **TABLE OF AUTHORITIES**

**Cases**

*AFL-CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) ........................................................ 28

*Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461 (2004) ............................ 28

*Amcor Flexibles Kreuzlingen AG v. United States*, 560 F. Supp. 3d 1326 (Ct. Int'l Tr. 2022). ........................................................................................................................ 15

*Aromont USA Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012) .......................... 22

*Asiana Airlines v. FAA,* 134 F.3d 393 (D.C. Cir. 1998). ............................................. 28

*BASF Corp. v. United States*, 30 C.I.T. 227 (2006) .................................................... 16

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (Fed. Cir. 1998) ................ 13, 14

*C.J. Tower & Sons of Niagara Inc., v United States,* 52 Cust. Ct. 14 (1964).............. 27

*C.J. Tower & Sons v. United State*s, 673 F.2d 1268 (C.C.P.A. 1982)......................... 18

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999)......................... 15, 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................... 13

*Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361 (Ct. Int'l Tr. 1999) ........... 14

*Cont'l Auto Sys. v. United States*, 589 F. Supp. 3d 1215 (Ct. Int'l. Tr. 2022)............. 18

*Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33 (1948)............................... 15

*Cummins Inc. v. United States*, 454 F.3d 1361 (Fed. Cir. 2006) ................................. 14

*Deckers Outdoor Corp. v. United States*, 714 F.3d 1363 (Fed. Cir. 2013) ................. 16

*Dofasco Inc. v. United States*, 31 C.I.T. 1592 (2007)................................................. 21

*Gerson Co. v. United States*, 254 F. Supp. 3d 1271 (Ct. Int'l Tr. 2017). .................... 26

*Gerson Co. v. United States*, 898 F.3d 1232 (Fed. Cir. 2018)............................... passim

*H.I.M./Fathom Inc. v. United States*, 21 C.I.T. 776 (1997) ......................................... 16

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)............................... 13

*Kalle USA Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019) ........................... 26, 27

*La Crosse Tech. v. United States*, 723 F.3d 1353 (Fed. Cir. 2013) ............................. 26

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................. 14

*Mita Copystar Am. v. United States*, 21 F.3d 1079 (Fed. Cir. 1994)........................... 18

*Nootka Packing Co. v. United States*, 22 C.C.P.A. 464 (1935).................................. 15

*Norman G. Jensen v. United States*, 84 Cust. Ct. 76 (1980)........................................ 21

*Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998). ..................... 15

*Outer Circle Products Inc. v. United States*, 602 F. Supp. 2d 1294 (Ct. Int'l Trade 2009). ........ 15

*Phila. Energy Sols. Refin & Mktg. LLC v. United States*, 89 F.4[th] 1364 (Fed. Cir. 2024) .......... 21

*Pillowtex Corp. v. United States*, 171 F.3d 1370 (Fed. Cir. 1999)............................... 14

*Primal Lite v. United States*, 182 F.3d 1362 (Fed. Cir. 1999)..................................... 20

*Processed Plastic Co. v. United States*, 29 C.I.T. 1129 (Ct. Int'l Tr. 2005)................ 13

*Processed Plastic Co. v. United States*, 473 F.3d 1164 (Fed. Cir. 2006) ................... 13

*Rubie's Costume Co. v. United States*, 337 F.3d 1357 (Fed. Cir. 2003) ..................... 27

*Russ Berrie & Co., v. United States*, 329 F. Supp. 3d 1345 (Ct. Int'l Tr. 2018) ......... 20

*Sabritas v. United States*, 22 C.I.T. 59 (1998)............................................................ 15

*Second Nature Designs Ltd. v. United State*s, 660 F. Supp. 3d 1352 (Ct. Int'l Tr. 2023)............ 22

*Simod Am. Corp. v. United States*, 872 F.2d 1572 (Fed. Cir. 1989)............................ 18

*Simon Mktg. v. United States*, 29 C.I.T. 1111 (2005) ................................................. 14

*Sorensen v. Sec'y Treasury*, 475 U.S. 851 (1986) ...................................................... 21

*T.M. Duche & Sons, Inc. v. United States,* 44 C.C.P.A. 60 (1957) ............................... 15
*Trijicon Inc. v. United States,* 2024 Ct. Int'l Tr. LEXIS 18 (2024)................................ 20
*Trumpf Med. Sys. v. United States,* 34 C.I.T. 1404 (2010) ........................................ 21
*United States v. Bruckmann,* 65 C.C.P.A. 90 (1978)................................................... 15
*United States v. Pan Pac. Textile Group Inc.,* 27 C.I.T. 925 (2003) ........................... 14
*United States v. UPS Customs Brokers Inc.,* 30 C.I.T. 1612 (2006) ........................... 27
*Universal Electronics Inc. v. United States,* 112. F.3d 488 (Fed. Cir. 1997) ............... 13

**Statutes**
19 U.S.C. § 3004........................................................................................................ 29
28 U.S.C. § 2640........................................................................................................ 13

**Other Authorities**
Avnet, Inc., *LEDs and Their Rapidly Changing Form Factor,* (March 13, 2017)........................ 7
Bill Lewis, *What Size Light Bulb Can I Use?* (June 19, 2022),........................................ 7
Collins English Dictionary, definition of "lamp," CollinsDictionary.com.................................. 19
*Customs Headquarters Ruling H024762 of December 12, 2014* ................................ 22
*Customs Headquarters Ruling H024874 of March 31, 2010* ................................ 18, 19
*Customs Headquarters Ruling H024876 of March 31, 2010* ................................ 18, 19
*Customs Headquarters Ruling H024878 of March 31, 2010;* ................................... 18
*Customs Headquarters Ruling H042586 of January 29, 2009*............................... 18, 19
*Customs Headquarters Ruling H095035 of March 31, 2010* ................................ 18, 19
*Customs Headquarters Ruling H254047 of November 4, 2014* ................................. 22
*Customs Headquarters Ruling H966952 of August 18, 2004*.................................... 20
English Oxford Dictionaries, definition of "lamp," \................................................... 19
LED Lighting, U.S. Dep't of Energy, https://www.energy.gov/energysaver/led-lighting
    (last visited June 20, 2024). ................................................................................... 6
*Liteline Corp. v. President of the Canada Border Services Agency,* AP-2014-029 (2016). .. 16, 27
*Merriam-Webster Dictionary,* definition of "lamp," Merriam-Webster.com.............................. 19
Modifications to the Harmonized Tariff Sched. Of the United States under Sec. 1206 of
    the Omnibus Trade and Competitiveness Act of 1988 annex I
    USITC Pub. No. 3898 (Dec. 2006)..................................................................... 29
*New York Ruling Letter N297843 of June 29, 2018* ................................................ 21
*New York Ruling Letter N299720 of August 13, 2018*.............................................. 21
*New York Ruling N262787 of April 7, 2015.* ......................................................... 22
*New York Ruling N280074 of October 25, 2016* ................................................... 22
*New York Ruling N286276 of June 6, 2017* ........................................................... 22
*New York Ruling N289194 of March 23, 2017* ....................................................... 22
Proclamation No. 8097, 72 Fed. Reg. 453 (Jan. 4, 2007)........................................... 28
*See* Corey Graves, *Jarvis Lighting, LED Lighting Technology Explained: A
    Comprehensive Guide* (May 23,2023)...................................................................... 6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

---------------------------------------------------------------- X

TARGET GENERAL MERCHANDISE, INC. :

        Plaintiff, :

        *v.* :           **Consol. Court No. 15-69**

UNITED STATES OF AMERICA :
        Defendant. :

---------------------------------------------------------------- X

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Target General Merchandise, Inc. ("Target"), submits this Motion for Summary Judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade (hereinafter "USCIT R."), and respectfully moves this Court for an order granting summary judgment in its favor, and awarding the relief sought in the Consolidated Complaint. *See* ECF 29. Specifically, plaintiff submits that United States Customs and Border Protection ("CBP" or Customs"), improperly classified its imported LED lamps in liquidation.

Two distinct periods of time are involved in this consolidated action:

**"PERIOD ONE" February 7, 2014, through March 28, 2014.**

During this period, CBP classified Target's LED lamps in liquidation under the following three subheadings:

- Subheading 9405.20.60, Harmonized Tariff Schedule of the United States ("HTSUS"), as "Electric table, desk, bedside or floor-standing lamps" of base metals other than brass, with a duty rate of 6% *ad valorem*;

- Subheading 9405.20.80, HTSUS as "Electric table, desk, bedside or floor-standing lamps" of materials other than base metals, with a duty rate of 6% *ad valorem*;

- Subheading 9405.30.00, HTSUS as "Lighting sets of a kind used for Christmas trees," with a duty rate of 8%; and

- Subheading 9405.40.60/9405.40.80. HTSUS as "Other electric lamps and lighting fittings" of base metals other than brass, and of materials other than base metals, with respective duty rates of 6%, and 3.9% *ad valorem*.

As to goods made in this period, Target submits that the products are all properly classifiable under one provision:

- Subheading 8543.70.70, HTSUS: an *eo nomine* provision covering "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: Other machines and apparatus; Electric luminescent lamps," dutiable at 2% *ad valorem*.

In *Gerson Co. v. United States*, 898 F.3d 1232 (Fed. Cir. 2018), the Court of Appeals for the Federal Circuit, addressing the classification of certain battery-powered LED votive candles, rejected classification under subheading 8543.70,70, HTSUS, based on the superior heading language: "electrical machines and apparatus." The Federal Circuit reasoned that:

> … it is "plausible" to read heading 8543 broadly as encompassing Gerson's candles, at least in a "hyper-technical sense," because the candles use electricity to operate and therefore arguably qualify as "electrical machines and apparatus"

898 F.3d at 1236. However, reading subheading 8543.70.70 in context with other provisions of the tariff, the Federal Circuit held:

> If one were to read heading 8543 as covering Gerson's candles, it would cover every electric lamp, because all such lamps use electricity to generate light. And, by operation of Note 1(f) [to Chapter 94, HTSUS], such lamps could not be classified under heading 9405. In other words, heading 9405 would be constrained

2

> to only non-electric lamps. That reading, as the Trade Court noted, "would impose a specific, and drastic, limitation on the scope of heading 9405, HTSUS that the article description for that heading does not express or suggest." *Gerson*, 254 F. Supp. 3d at 1278. In fact, such a reading would effectively remove electric "searchlights" and "spotlights" from heading 9405 even though those devices are expressly provided for in that heading. *See* HTSUS Hdg. 9405 ("Lamps and lighting fittings including searchlights and spotlights and parts thereof" (emphasis added)). We agree with the Trade Court, therefore, that Gerson's candles do not fall within heading 8543.

*Id*. at 1237. The Federal Circuit's concern appears not to be that other (non-LED) lights would be classified in subheading 8543.70.70's provision for "electric luminescent lamps," but rather in the "basket" provision for "other" electrical machines and apparatus" in 8543.70.96. Since *Gerson*, the cadence of decisions in the United States and elsewhere has been that Chapter 85 covers lighting components, but not *finished* lighting apparatus.

As discussed herein, Target submits that some of the LED lights at bar are distinguishable from those involved in *Gerson,* and are properly classified under subheading 8543.70.70, HTSUS.

**"PERIOD TWO" September 7, 2018, through October 12, 2018.**

The classification of LED lamps which Target imported in 2018 involves a different claim and a different tariff provision which is not affected by the *Gerson* decision.

Effective January 1, 2017, the World Customs Organization ("WCO"), as part of its five-year review of the Harmonized System ("HS") Nomenclature, created a new provision at subheading 8539.50, HTSUS, covering "Electrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof: "Light emitting diode lamps." The United States adopted this provision into its HTSUS, assigning a rate of 2% *ad valorem*.

During this second period—September 7, 2018, through October 12, 2018—CBP classified Target's imported LED lamps in liquidation under the following provisions:

- Subheading 9405.30.00, HTSUS, as "Lighting sets of a kind used for Christmas trees," with a duty rate of 8%;

- Subheading 9405.40.60, HTSUS as "Other electric lamps and lighting fittings: Of base metal: Other," with a duty rate of 6%

- Subheading 9405.40.8410, HTSUS, as "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: Other electric lamps and lighting fittings: Of base metal: Other: Other lighting sets[,]"with a duty rate of 3.9% *ad valorem*.

Plaintiff contends that the lamps imported during this second period are properly classified under subheading 8539.50, HTS.

## <u>STATEMENT OF FACTS</u>

In accordance with USCIT R. 56.3, a Statement of Material Facts Not in Dispute is submitted herewith and is incorporated by reference.

### A. <u>Development of LED Lighting</u>

LED technology operates by running an electric current through a light-emitting diode ("LED") which contains electroluminescent semiconductor material. The electrons coursing through the semiconductor material (usually a powder or thin film) cause the electroluminescent material to produce visible light.

The concept of electroluminescence was first discovered in 1907 by the British scientist H.J. Round, a radio pioneer who first observed electroluminescence within a solid-state diode. In 1962, Texas Instruments scientists Robert Biard and Gary Pittman patented an LED which used a gallium arsenide (GaAs) crystal and emitted 890 nm of infrared light. Later that year, General

Electric Company engineer Nick Holonyak, Jr. created the first practical visible spectrum LED, which used a Gallium arsenide phosphide (GaAsP) crystal and emitted a deep red light. The first commercially available LEDs were launched in 1968, but were unpopular because of the deep red light they generated.[1]

During the 1970s, scientists continued to make progress in LED development. General Electric developed a yellow light LED, and Stanford scientists patented a blue LED in 1976. In 1989, the Cree Company marketed a blue silicon carbide LED, which had low efficiency.[2] In the 1990s, Japanese scientists Isamu Akasaki, Hiroshi Amano and Shuji Nakamura advanced the development of blue LEDs, including blue-white LEDs, in the process achieving LED lifecycles of up to 50,000 hours[3], or roughly 50 times the life of an incandescent bulb. Ultimately, white LEDs were developed and perfected by combining other LED colors: [4]

---

[1] Taryn Engmark, *The (Accidental) Invention of the LED,* Embedded Computing Design Magazine (October 20, 2021), https://embeddedcomputing.com/technology/analog-and-power/the-accidental-invention-of-the-led.

[2] *Id.*

[3] *Id.*

[4] *Id.*



The increase in efficiency dramatically improved the cost-saving advantages of LEDs, causing governments to promote and mandate their use through a combination of energy policies, regulations and incentives.[5] One prominent example of this promotion in the United States is the ENERGY STAR program, run jointly by the United States Department of Energy ("DOE"), and the Environmental Protection Agency ("EPA").[6]

As LED technology has replaced and displaced historical incandescent and fluorescent lighting, the increased flexibility of LED technology has allowed form factors to change. Initially,

---

[5] *See* Corey Graves, *Jarvis Lighting*, *LED Lighting Technology Explained: A Comprehensive Guide* (May 23,2023) https://www.jarvislighting.com/blogs/jarvis-lighting-insights/led-lighting-technology#A%20Brief%20and%20Luminous%20History%20of%20Led%20Lighting

[6] *See* LED Lighting, U.S. Dep't of Energy, https://www.energy.gov/energysaver/led-lighting (last visited June 20, 2024).

LED lamps or bulbs needed to fit into the luminaires or other fittings which had housed other types of lamps. As one major LED lamp manufacturer noted:

> From street lamps to industrial applications, LED use goes well beyond screwing an LED light into a desk lamp. Historically, retrofit LEDs have often emulated the form factor of the lamps they were replacing. Anything out of the ordinary was problematic, but this is rapidly changing.

> There are hundreds of millions of fluorescent strips and industrial fixtures installed in varying locations and applications throughout North America. LED luminaires are replacing these fixtures rapidly, combining aesthetics, high performance and slim, modern form factors. Energy cost is easily lowered by up to 25 percent with these replacements, and ongoing bulb maintenance is becoming a thing of the past.[7]

Standard incandescent and fluorescent light bulbs are size-limited by various form-factors, such as the heat generated by electrical resistance in an incandescent filament, and the dispersion of gases in a fluorescent bulb. Also limiting are the wattage ratings of the various luminaires in which these bulbs are installed.[8] But LED lighting can take on diverse sizes and forms. Thus in the case of LED lighting:

> Adjusting form factors ultimately comes down to achieving the right amount of light output from a lighting fixture. While single LEDs might not meet the needs of applications that require high luminosity, multiple LEDs can be used effectively in arrays. And while the lighting fits the bill, the downside of arrays can include their size, their assembly price tag and their level of complexity when trying to match correlated color temperature (CCT)[9].

What this means is that while most people think of a light "bulb" as composing uniform elements in a given size range—*e.g.,* a light source, base for drawing power, and globe—LED

---

[7] Avnet, Inc., *LEDs and Their Rapidly Changing Form Factor*, (March 13, 2017), https://www.avnet.com/wps/portal/us/resources/article/leds-their-rapidly-changing-form-factor/#:~:text=LEDs%20and%20Their%20Rapidly%20Changing%20Form%20Factor%201,varying%20applications%2C%20LEDs%20are%20taking%20on%20various%20forms.

[8] *See, e.g.,* Bill Lewis, *What Size Light Bulb Can I Use?* (June 19, 2022), https://www.thespruce.com/what-size-light-bulb-to-use-2175029.

[9] Avnet, Inc., *supra* note 7.

"bulbs" consisting of light sources, power-providing drivers and protective caps, may be radically different in size and shape when compared against traditional incandescent or fluorescent light bulbs.

**B.  Products Involved in this Action**

There are one hundred and sixty-two unique imported products subject to this case. Each of the imported products contains a LED array. Each of the products creates light by means of an internal semiconductor that is a LED. When the LED, which is composed of photosensitive material, is energized by an electrical current, the semiconductor material is stimulated and energized, resulting in the production of light. The name of the process describing the production of light by a LED in response to an electrical current is known as electroluminescence. *See* 56.3 Statement at ¶ 7.

Target primarily marketed and sold the imported merchandise at its approximately 2,000 retail stores in the United States. Depending on a given product's specific purpose, it may have been displayed and sold in numerous different areas of Target retail stores such as houseware, lawn and garden, or seasonal departments. *See* 56.3 Statement at ¶ 8.

Plaintiff has grouped products into various product categories in order to ease the presentation of plaintiff's claims and legal analyses, *See* 56.3 Statement at ¶ 11, as follows:

1. LED candles, LED candle sets; tea lights and votive (37 products);
2. LED string, icicle and net lights (93 products);
3. Table/Desk Lamps; (10 products)
4. Nightlight (1 product);
5. Solar Path Lights (17 products);
6. LED Metal Lanterns (2 products);
7. LED Christmas Trees (2 products)

LED candles, LED candle sets, tea lights, and votive candles provide end users with both utilitarian and decorative illumination. See 56.3 Statement at ¶ 15. A pillar candle is usually larger

and more substantial, while a votive or tea light candle is smaller and typically intended for insertion within a container. *Id.* These products consist of LED lighting elements, plastic candle housings, batteries, and a switch. *Id.* at ¶ 16. Some of the LED candles at issue may also come with a remote control that can turn the LED lighting element on and off. *Id.* There are thirty seven products in this category. There are four solar LED candles contained in various sizes of rattan housing. *Id.* at ¶ 14. There are two battery-operated packs of LED tea light candles, one 12-pack and one 24-pack. *Id.* There are thirty one individual battery-operated LED candle products. *Id.* These products may contain multiple candles, in different sizes and colors, with or without added scents or timers for indoor or outdoor use. *Id.*

LED string lights are LED lighting elements with plastic caps, copper wiring harnesses with plastic or rubber sheeting, and long wires with LED bulbs arranged along the wire of the string. *Id.* at ¶ 24. Alternatively, some of the string lights can be powered by solar energy or batteries. *Id.* at ¶ 25. Icicle lights are identical to string lights in concept, but they are designed to hang in a way that resembles an icicle. *Id.* at ¶ 28. Net lights are string lights designed to drape like a net over a bush or other outdoor surfaces, covering larger areas than normal string lights. *Id.* at ¶ 29. The majority of the string lights at issue were branded and resold by Philips, a third-party company, while some were sold under Target's private label brands Room Essentials and Wondershop. *Id.* at ¶ 31. There are ninety three string lights subject to this litigation. *Id.* at ¶ 22.

Table/desk lamps are used to provide utilitarian lighting to individuals working or sitting at a desk or table. *Id.* at ¶ 37. There is one unique product in this case, which is a clip-on grill light. *Id.* Desk lamps consist of an LED lighting element, a plastic or metal base, a plastic or metal neck, an electrical power cord and plug, and may include task lights. *Id.* at ¶ 35. Table lamps consist of an LED lighting element, a plastic or metal base, a plastic or metal body, and an electrical power

cord and plug. *Id.* at ¶ 36. Table/desk lamps were sold in Target's Lighting and Wall Décor department. *Id.* at ¶ 38. There are ten table/desk lamps subject to this litigation. *Id.* at ¶ 33. Additional pictures of two table/desklamps are found in plaintiff's 56.3 Statement Ex. G.

A nightlight is used for illuminative or decorative purposes, specifically to provide local lighting for safety at night. *Id.* at ¶ 42. A nightlight consists of an LED lighting element, a plastic cap, and an electrical plug to connect into the wall. *Id.* at ¶ 41. The nightlight subject to this litigation was sold under Target's private label Circo, which is no longer in use. *Id.* at ¶ 43. DCPI 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 is the sole nightlight product in this litigation. *See* 56.3 Statement, Ex. C at Bates 1343.

The solar path lights are used for utilitarian and decorative illumination on sidewalks, walkways, pathways, or walking paths. *Id.* at ¶ 35. The path lights are solar-powered and automatically turn on when the sun goes down. *Id.* at ¶ 36. A path light consists of an LED lighting element, a copper wire harness with rubber or plastic sheeting, a plastic base for insertion into the soil or ground, a decorative cap, and a solar power source. *Id.* at ¶ 34. There are 17 path lights subject to this litigation. Additional Pictures of the solar path lights are included in 56.3 Statement Ex. D.

The next category of products is LED metal lanterns. There are two LED metal lanterns subject to this litigation. *Id.* at ¶ 37. The metal lanterns consist of an LED lighting element housed in a plastic or metal lantern with plastic or glass windows and are used to provide utilitarian or decorative lighting. *Id.* at ¶ 51. The other lanterns have an LED lighting element built into the product. The metal lanterns were sold under Target's private label brand Smith & Hawken and were sold in the Outdoor Living Department of Target. *Id.* at ¶ 52.

## RELEVANT STATUTES

As the instant case involves two different time periods, we set out the relevant statutory

provisions for 2018, and 2014, separately below; and for ease of discussion, our analysis begins

with the goods imported in 2018, and will then address goods imported in 2014:

### Harmonized Tariff Schedule of the United States (2018)

**Chapter 85:**

    **Statistical Notes:**

    8. For statistical reporting purposes under subheading 8539.50.00, the types of light-emitting (LED) lamps are defined by American National Standards Institute for Electric Lamps as follows:

    (a) ANSI shapes A, BT, P, PS or T described under 8539.50.0010;

    (b) ANSI shapes B, BA, C, CA, DC, F, G or ST described under 8539.50.0020;

    (c) ANSI shapes R, BR or PAR described under 8539.50.0030; or

    (d) ANSI shapes MR11, MR16 or MRX16 described under 8539.50.0040.

| | |
|---|---|
| 8539 | Electrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof: |

***

| | |
|---|---|
| 8539.50 | Light-emitting diode (LED) lamps. |

**Chapter 94**

    **Notes:**

      1.  This Chapter does not cover:

***

      (f) Lamps or lighting fittings of chapter 85;

| | |
|---|---|
| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere |

11

specified or included:

***

| | |
|---|---|
| 9405.30.00 | - Lighting sets of a kind used for Christmas trees |
| 9404.40 | - Other electric lamps and lighting fittings: |
| | Of base metal; |
| 9404.40.60 | Other [than brass] |

***

| | |
|---|---|
| 9404.40.84 | Other |

## Harmonized Tariff Schedule of the United States (2014)

### Chapter 85:

| | |
|---|---|
| 8543 | Electrical machines and apparatus, having individual functions, not specified or Included elsewhere in this chapter; parts thereof: |

***

| | |
|---|---|
| 8543.70 | Other machines and apparatus: |

***

| | |
|---|---|
| 8543.70.71 | Electric luminescent lamps. |

## Chapter 94

**Notes:**

2.  This Chapter does not cover:

***

(f) Lamps or lighting fittings of chapter 85;

| | |
|---|---|
| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: |

***

| | |
|---|---|
| 9405.30 | - Lighting sets of a kind used for Christmas trees |
| 9404.40 | - Other electric lamps and lighting fittings: |
| | Of base metal; |
| 9404.40.60 | Other [than brass] |
| | *** |
| 9404.40.84 | Other |

## STANDARD OF REVIEW

Customs' classification is subject to *de novo* review pursuant to 28 U.S.C. § 2640. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* USCIT R. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (reviewing CBP's classification decision *de novo* on the record made before it, 28 U.S.C. § 2640(a)(1)); *see also, Processed Plastic Co. v. United States*, 29 C.I.T. 1129, 1130 n.4 (Ct. Int'l Tr. 2005), *aff'd*, 473 F.3d 1164 (Fed. Cir. 2006). Where there is no genuine dispute as to any material fact, on a motion for summary judgment, CBP will not receive the benefit of a presumption of correctness. *Id.* at 1131, n.5; *see also Universal Electronics Inc. v. United States*, 112. F.3d 488, 491 (Fed. Cir. 1997).

As with all classification issues, fundamentally "[t]he court's duty is to find the *correct* result," *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original), and thus, the ultimate question is "whether the merchandise is properly classified under

one or another classification heading." *Simon Mktg. v. United States*, 29 C.I.T. 1111, 1117 (2005) (citation omitted).

Determining the correct classification of merchandise entails a two-step process where the court first construes the relevant classification headings—a purely legal question—and second, the court determines under which of the properly construed tariff terms the merchandise at issue falls. *Bausch & Lomb*, 148 F.3d at 1365; *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). Where the nature of the merchandise is not at issue, the question collapses entirely into a question of law ripe for disposition on summary judgment. *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

In determining whether a genuine issue of fact exists, the court reviews the evidence submitted and draws all inferences against the nonmoving party. *United States v. Pan Pac. Textile Group Inc.*, 27 C.I.T. 925, 927 (2003); *see also, Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But even if there are "differences in the factual positions advanced by each party," summary judgment is appropriate unless there are "genuine issues of material fact in dispute." *Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1363 (Ct. Int'l Tr. 1999).

## **ARGUMENT**

### I.    **The Imported LED Products Imported After January 1, 2017, are Properly Classified in Heading 8539.50, HTSUS.**

The imported LED products imported after January 1, 2017, are provided for *eo nomine* in heading 8539.50, HTSUS, and CBP erred in classifying them in liquidation under heading, 9405, HTSUS.

"To determine the meaning of an HTSUS provision, the court applies the GRIs in numerical order, beginning with GRI 1 and reaching subsequent GRIs if analysis under the

14

preceding GRI does not yield proper classification of the subject merchandise." *Amcor Flexibles Kreuzlingen AG v. United States*, 560 F. Supp. 3d 1326, 1330 (Ct. Int'l Tr. 2022). Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." "A court first construes the language of the heading, and any section or chapter notes in question." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). In interpreting the terms of a tariff provision "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.*

Classification of the subject merchandise is further dictated by the canon of statutory construction that, absent a clearly expressed Congressional intent, an *eo nomine* provision for an article covers all forms of the named article. An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known in commerce. *United States v. Bruckmann*, 65 C.C.P.A. 90 (1978). *Eo nomine* designations are to be construed according to their common and commercial meanings, which are presumed to be the same. *Outer Circle Products Inc. v. United States*, 602 F. Supp. 2d 1294, 1306 (Ct. Int'l Trade 2009). Of prime importance here, an *eo nomine* designation, absent contrary legislative intent, is to be interpreted to include all forms of the named article. *Nootka Packing Co. v. United States*, 22 C.C.P.A. 464, 470 (1935); *Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33, 35 (1948); *T.M. Duche & Sons, Inc. v. United States,* 44 C.C.P.A. 60, 63 (1957); *Sabritas v. United States*, 22 C.I.T. 59, 63 (1998).

The subheading 8473.70.71, HTSUS, provision for "electro-luminescent lamps" was an effort by the drafters of the HTSUS to create a specific provision covering LED lighting products

and to assign them a duty rate of 2% *ad valorem*. As the Federal Circuit indicated in *Gerson*, this effort foundered on the shoals of judicial interpretation of the tariff. While the parties in *Gerson* agreed that the products were "lamps" and functioned through electroluminescence, the placement of subheading 8543.70.70 subordinate to a four-digit tariff heading covering "electrical machines and apparatus" (a phrase which the *Gerson* Court conceded was "not free of ambiguity," 898 F.3d at 1236)—led that Court to limit application of the provision. Relying on definitions from *Webster's New World College Dictionary* 67 (4th ed. 2009), the court noted that "apparatus" referred to "any complex device or machine for a specific use," and that "machine" meant "a structure consisting of a framework and various fixed and moving parts, for doing some kind of work" and "any device thought of as functioning in such a way, as … an electronic computer").[10]

The enactment of subheading 8539.50, HTSUS, eliminates the problems the *Gerson* court detected with subheading 8543.70.71, HTTSUS. It provides *eo nomine* for "light-emitting diode (LED) lamps", and is positioned below a four-digit heading (heading 8539, HTSUS) which also specifies "LED lamps," as within its coverage. Classification under this provision is not dependent on the lamps being considered "electrical machines or apparatus."

In discerning the meaning of a tariff provision, resort to the WCO Explanatory Notes is not binding, but helpful.[11] In this regard, the ENs to Chapter 85 provide that:

---

[10] The Canadian International Trade Tribunal ("CITT") reached a similar conclusion in interpreting subheading 8543.70 of Canada's Customs Tariff. *See Liteline Corp. v. President of the Canada Border Services Agency*, AP-2014-029 (2016).

[11] Explanatory Notes are "generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1239 (Fed. Cir. 2008) (citation omitted). "Unlike Chapter Notes, Explanatory Notes are not legally binding." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n. 1 (Fed. Cir. 2013). However, "the Explanatory Notes are persuasive authority for the court when they specifically include or exclude an item from a tariff heading." *H.I.M./Fathom Inc. v. United States*, 21 C.I.T. 776, 779 (1997); *see also BASF Corp. v. United States*, 30 C.I.T. 227 (2006), aff'd, 497 F.3d 1309 (Fed. Cir. 2007).

> This Chapter covers … (6) Certain electrical goods not generally used independently, but designed to play a particular role as components, in electrical equipment, *e.g.,* capacitors (heading 85.32), switches, fuses, junction boxes, etc. (heading 85.35 or 85.36), lamps (heading 85.39), thermionic, etc., valves and tubes (heading 85.40), diodes, transistors and similar semiconductor devices (heading 85.41), electrical carbons (heading 85.45).

The language "not generally used independently" admits of the possibility that some electrical goods used independently nonetheless fall within the Chapter. The ENs for Heading 85.39 provide that "The heading covers filament lamps, gas or vapour discharge lamps, arc-lamps and light-emitting diode (LED) lamps."

With respect to LED lamps, the ENs indicate that the coverage of the Heading is intended to be broad:

### (F) LIGHT-EMITTING DIODE (LED) LAMPS

> The light from these lamps is produced by one or more light-emitting diodes (LED). These lamps consist of a glass or plastic envelope, one or more light-emitting diodes (LED), circuitry to rectify AC power and to covert voltage to a level useable by the LEDs, and a base (e.g., screw, bayonet or bi-pin type) for fixing in the lamp-holder. Certain lamps may also contain a heat sink.

> These lamps are of various shapes, e.g., spherical (with or without a neck); pear or onion shaped; flame shaped; tubular (straight or curved); special fancy shapes for illuminations, decorations, Christmas trees, etc.

The enactment of subheading 8539.50, HTSUS, effective January 1, 2017, changes the classification of LED lighting in several meaningful ways:

> ➢ The lamps no longer need to meet the definition of "machines" or "apparatus";

> ➢ These lamps are squarely excluded from classification under Chapter 94, HTSUS by operation of Note 1(f) to Chapter 94.

What remains is to determine the meaning of the word "lamp" as used in Heading 8539, and in subheading 8539.50, which provides for:

> Electrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof: Light-emitting diode (LED) lamps.

The HTSUS does not define "lamps," for purposes of classification. Where a specific term is not defined in the tariff, Customs and the Courts may consult dictionaries and other sources to determine their correct meaning. *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("the term's correct meaning is its common meaning.") The common meaning of a term used in commerce is presumed to be the same as its commercial meaning. *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989). To ascertain the common meaning of a term, a court may consult "dictionaries, scientific authorities, and other reliable information sources" and "lexicographic and other materials." *C.J. Tower & Sons v. United State*s, 673 F.2d 1268, 1271 (C.C.P.A. 1982); *Simod*, 872 F.2d at 1576. The common meaning of a term is a question of law, rather than a question of fact. *See e.g., C.J. Tower & Sons v. United States*, 69 C.C.P.A. 128 (1982); *Cont'l Auto Sys. v. United States*, 589 F. Supp. 3d 1215 (Ct. Int'l. Tr. 2022).

Customs has already defined LEDs in previous rulings, namely as " … semiconductor diodes, electronic devices that permit current to flow in only one direction. The diode is formed by bringing two slightly different materials to from a PN junction"; or as "a semiconductor diode that emits light when a voltage is suitably applied." *See Customs Headquarters Ruling H024878 of March 31, 2010; Customs Headquarters Ruling H024876 of March 31, 2010* (LED modules for promotional buttons and displays); *Customs Headquarters Ruling H095035 of March 31, 2010* (LED light set for bike handlebars); *Customs Headquarters Ruling H024874 of March 31, 2010* (various LED modules); *Customs Headquarters Ruling H042586 of January 29, 2009* (fiber optic lamp). It is accepted that all the merchandise in question are considered semiconductor devices

that permit the flow of electric current through the formation of a PN junction. The next issue to address then is the definition of "lamp" for the purpose of classifying these goods as "LED lamps."

Such common understanding is also provided in numerous dictionary sources defining lamp consistently as:

> any of various devices for producing light or sometimes heat: such as
>
>> (1): a vessel with a wick for burning an inflammable liquid (such as oil) to produce light
>>
>> (2): a glass bulb or tube that emits light produced by electricity (such as an incandescent light bulb or fluorescent lamp)

*See Merriam-Webster Dictionary*, definition of "lamp," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/lamp (last accessed June 20, 2024):

> A device for giving light, either one consisting of an electric bulb together with its holder and shade or cover, or one burning gas or oil and consisting of a wick or mantle and a glass shade.

*See* English Oxford Dictionaries, definition of "lamp," en.ocofrddictionariyes.com. https://en.oxforddictionaries.com/definition/lamp (last accessed June 20, 2024):

> A **lamp** is a light that works by using electricity or by burning oil or gas.

*See* Collins English Dictionary, definition of "lamp," CollinsDictionary.com, https://www.collinsdictionary.com/dictionary/english/lamp (last accessed June 20, 2024).

The common element in all these definitions is the description of a device that emits light. This aligns with Customs' description of a lamp as "a device which provides an isolated source of heat or light." *Customs Headquarters Ruling H024876 of March 31, 2010* (LED modules for promotional buttons and displays); *Customs Headquarters Ruling H095035 of March 31, 2010* (LED light set for bike handlebars); *Customs Headquarters Ruling H024874 of March 31, 2010* (various LED modules); ); *Customs Headquarters Ruling H042586 of January 29, 2009* (fiber

optic lamp); and *Customs Headquarters Ruling H966952 of August 18, 2004* (litecube). These rulings illustrate the variety of shapes and forms LED "lamps" can take, including litecubes, modules for buttons, and lights for bicycle handlebars. As mentioned earlier, LED technology enables the production of LED lights and "bulbs" in a much wider array of sizes, shapes, and forms compared to traditional incandescent or fluorescent lamps.

This Court recently had the opportunity to determine the common meaning of the term "lamp" in *Trijicon Inc. v. United States*, 2024 Ct. Int'l Tr. LEXIS 18 (2024), where the Court noted:

> It is clear from the definition of lamp and the description of the subject imports that the subject imports are readily classified as lamps. A lamp is "any of various devices for producing light." Def.'s Ex. 7 (quoting Lamp, Webster's New World College Dictionary (3d ed. 1988)). It is undisputed that the subject imports produce illumination. Pl.'s SOF ¶ 26; see Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant part). The Explanatory Note confirms that lamps "can be constituted of any material … and use any source of light." Def.'s Ex. 8 at XX-9405-1. Thus, a lamp can readily include one that involves beta radiation. It makes no difference that the Explanatory Notes do not specify tritium-powered lamps because the list is exemplary, not exhaustive. Moreover, Trijicon regularly refers to the subject imports as tritium lamps in various documents within the organization and with government agencies. *See* Def.'s Confid. Exs. 2-5, ECF Nos. 32-4, 32-5, 32-6, 32-7. At least one science journal also refers to the item used to illuminate the aiming point of a gun as a "lamp." *See* Def.'s Ex. 7 (reproducing Gunsights, McGraw-Hill Encyclopedia of Sci. and Tech. at 305 (9th ed. 2002) (" … the reticle may be illuminated by a small lamp to permit night use."). Meanwhile, Trijicon's averment that the "general public" would not consider the subject imports to be lamps is unsupported. The documented usage of the term "lamp" to describe the subject imports suggests that they meet the "common and commercial meaning[]" of lamps. *See Carl Zeiss*, 195 F.3d at 1379.

Courts have given a broad definition of the common meaning of the term "lamp" as used in the HTSUS. *See e.g.*, *Primal Lite v. United States*, 182 F.3d 1362 (Fed. Cir. 1999) (lights in strings); *Trujicon, supra* (term "lamp" includes both radiation and non-radiation powered lamps; *Russ Berrie & Co., v. United States*, 329 F. Supp. 3d 1345 (Ct. Int'l Tr. 2018) (term covers

electrical and non-electrical lamps); *Trumpf Med. Sys. v. United States*, 34 C.I.T. 1404 (2010) (term includes specialized surgical lamps).

It is a natural presumption that identical words used in different parts of the same law are intended to have the same meaning. *Sorensen v. Sec'y Treasury*, 475 U.S. 851, 860 (1986); *Phila. Energy Sols. Refin & Mktg. LLC v. United States*, 89 F.4ᵗʰ 1364 (Fed. Cir. 2024); *Dofasco Inc. v. United States*, 31 C.I.T. 1592 (2007). The same rule applies to the construction of tariff schedules. *Norman G. Jensen v. United States*, 84 Cust. Ct. 76 (1980).  There is no legislative intent for the term "lamp"—as used in subheading 8539.50, HTSUS—to be interpreted more narrowly than in Heading 9405, HTSUS.

Considering the above-definitions of the term "lamp," all subject LED products, from all categories, are devices that give off light or provide an isolated source of light. Such devices are commonly known and referred to  as "lamps," and are therefore provided for *eo nomine* under subheading 8539.50, HTSUS.

Similar LED lamps have been classified by Customs under subheading 8539.50, HTSUS. Specifically, in *New York Ruling Letter N299720 of August 13, 2018*, Customs classified Christmas LED replacement C-9 bulbs under 8539.50.0020. Likewise, in *New York Ruling Letter N297843 of June 29, 2018*, Customs classified street LED lamps consisting of a LEDs, PCBs, and plastic lens under subheading 8539.50.0090, HTSUS, as other LED lamps.

The next question is whether the term "lamp" as used in the HTSUS, encompasses not merely light bulbs, but light bulbs in lamp holders which are connected by electrical wiring and use electrical connectors. The answer is clearly "yes." Customs has consistently classified light strings, featuring various lights in lamp holders, connected by electrical conductors, and featuring male- and female- plugs, under tariff provisions providing for "lamps." *See e.g.*, *Customs*

*Headquarters Ruling H254047 of November 4, 2014; New York Ruling N286276 of June 6, 2017; New York Ruling N289194 of March 23, 2017; New York Ruling N280074 of October 25, 2016; New York Ruling N262787 of April 7, 2015*. As Customs explained, in *Customs Headquarters Ruling H024762 of December 12, 2014* (emphasis added):

> <u>CBP has previously determined that a "lamp" is a device which provides an isolated source of heat or light.</u> *See* Headquarters Ruling Letter (HQ) H024878, (LED module for ornaments); HQ H024876, (LED modules for promotional buttons and displays); HQ H095035, (LED light set for bike handlebars); HQ H024874, (various LED modules); HQ H042586, dated January 29, 2009 (fiber optic lamp); HQ 966952 , dated August 18, 2004 (litecube); and HQ 965248 , dated July 26, 2002 (bubble lights). *See also* The Random House College Dictionary (1973) at 752; Webster's New Collegiate Dictionary (1979) at 639.

Thus, the subject LED products are lamps and clearly fall under subheading 8539.50, HTSUS—an *eo nomine* provision for "light-emitting diode (LED) lamps." In the absence of a contrary legislative intent, an *eo nomine* provision covers all forms of the article described. *See Aromont USA Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012); *Second Nature Designs Ltd. v. United State*s, 660 F. Supp. 3d 1352, 1366 (Ct. Int'l Tr. 2023).

The enactment of subheading 8539.50, HTSUS, also serves to eliminate from consideration subheading 8543.70.71—a provision for "electric luminescent lamps." That provision only covers articles "not specified or included elsewhere in this chapter," meaning that once LED lamps were explicitly described in subheading 8539.50, this precluded classification under subheading 8543.70.71, HTSUS.[12]

---

[12] For the same reason, the decision of the Federal Circuit in *Gerson Co. v. United States*, (Fed. Cir. 2018), has no bearing on the instant matter. In *Gerson*, the Court held that certain LED candles were more properly classified in heading 9405, HTSUS, than in subheading 8543.70.71, HTSUS. However, <u>at the time of the relevant facts in *Gerson*, subheading 8539.50, HTSUS, had not been enacted</u>. The Court noted that classification under a different provision in Chapter 85, HTSUS, was not precluded.

The classification of the products at issue under subheading 8539.50, HTSUS, precludes classification under Heading 9405, HTSUS. To be sure, Chapter 94, HTSUS, contains numerous provisions for lamps. However, once it is established that Target's imported article is an LED lamp of subheading 8539.50, HTSUS, consideration of Chapter 94 provisions are clearly precluded by Note 1(f) to Chapter 94, HTSUS. The note reads that Chapter 94 "does not cover: … Lamps or light fittings of Chapter 85"). As such it is impossible for CBP's liquidation classification to apply to the imported LED products.

Even if, arguendo, Note 1(f) to Chapter 94 were not operative here, we note that Under GRI 1, Heading 9405 only covers "lamps and lighting fittings" which are "not elsewhere specified or included." The inclusion of these items *eo nomine* in subheading 8539.50 eliminates the possibility of classification in Heading 9405. The LED products imported after January 1, 2017, are properly classified under subheading 8543.70.70, HTSUS.[13]

---

[13] The fact that subheading 8539.50, HTSUS, is not confined to bulbs can be inferred from amendments to the Harmonized System nomenclature adopted by the World Customs Organization effective January 1, 2022 (which do not apply to this case). As of January 1, 2022, the six-digit subheading 8539.50 for "light emitting diode (LED) lamps" was split into two new subheadings:

Light-Emitting Diode (LED) Light Sources:

8539.51        Light-Emitting Diode (LED) Modules

8539.52        Light-Emitting Diode (LED) Lamps

The changes to the Harmonized System Explanatory Notes also clarify the distinction between lamps and modules:

Light-emitting diode (LED) modules, which are electrical light sources based on light-emitting diodes (LED) arranged in electrical circuits and continuing further elements like electrical, mechanical, thermal or optical elements. They also contain discrete active elements, discrete passive elements, or articles of heading 85.36 or 85.42 for the purposes of providing power supply or power control. Light-emitting diode (LED) modules do not have a cap designed to allow easy installation or replacement in a luminaire and ensure mechanical and electrical contact.

The Explanatory Notes further clarify:

23

Thus, with respect to subject articles imported after January 1, 2017, there should be no dispute that all subject LED lighting products qualify for classification as "light emitting diode (LED) lamps," of subheading 8539.50, HTSUS.

The creation of a provision for "light emitting diode (LED) lamps" in subheading 8539.50, HTSUS, makes the *Gerson* decision, and the analysis therein, irrelevant. Indeed, the *Gerson* Court itself admitted that the availability of a classification in heading 8539 would change its analysis:

> Given that heading 8543 does not refer to "lamps," it is questionable whether the plain language of heading 9405 and chapter 94's Note 1(f)—which each exclude from chapter 94's scope only "lamps" specified elsewhere—preclude classification of Gerson's lamps in heading 9405. In contrast to heading 8543, headings 8513 (certain "[p]ortable electric lamps designed to function by their own source of energy") and 8539 ("[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps") do refer to "lamps." Gerson does not argue on appeal that its candles are classifiable under either of these headings, however.

*Gerson Co. v. United States*, 898 F.3d 1232, n.3 (Fed. Cir. 2018). Here, the four-digit Heading 8539, and the six digit subheading 8539.50, each contain the phrase "lamps." Thus, Note 1(f) to Chapter 94 plainly excludes LED lamps imported after January 1, 2017, from classification in Chapter 94, HTSUS.

---

The distinction between light-emitting diode (LED) modules and light-emitting diode (LED) lamps is that lamps have a cap designed to allow easy installation or replacement in a luminaire and ensure mechanical and electrical contact.

The division of subheading 8539.50 in this manner indicates that the replaced provision previously covered both LED light sources intended for luminaire installation and modular-style LED light sources.

**II.    Some LED Lamps Imported Prior to January 1, 2017, are Classifiable Under Subheading 8543.70.70, HTSUS**

The next question is whether *Gerson* precludes all LED lamps imported prior to the enactment of subheading 8539.50, HTSUS (and the concomitant change in the four-digit heading), from being classified in Chapter 85, HTSUS. We submit it does not, and that the decision is binding on this Court only with respect to "votive"-type lights of the kind at bar in *Gerson*.

In *Gerson*, the Court noted that Note 1(f) to Chapter 94, HTSUS, excluded from coverage therein "lamps or lighting fittings of Chapter 85." *Gerson Co. v. United States*, 898 F.3d 1236 (Fed. Cir. 2018). It concluded that Note 1(f) did not exclude LED lights from classification under Chapter 94 largely because the word "lamp" did not appear in the text of the four-digit tariff heading 8543, HTSUS. And yet the parties in *Gerson*, and the Court, were in apparent agreement that the products at issue were "lamps" in common meaning (a fact corroborated by the Court and Customs decisions defining "lamps" noted above). At the heart of the *Gerson* opinion is the notion that, where a Chapter Note excludes a named article or class of articles, those named articles must be specifically mentioned in the text of a tariff provision in order for the exclusionary note to be operative. We have found no authority for this extraordinary proposition.

Exclusionary Chapter Notes may designate excluded articles by general description. *See e.g.*, Note 1(a) to Chapter 85, HTSUS (excluding from the chapter "Electrically warmed blankets, bed pads, foot-muffs or the like; electrically warmed clothing, footwear or ear pads or other electrically warmed articles worn on or about the person"). Others may exclude articles based on description, tied to a tariff classification, without providing a definition for the described article (*see e.g.*, Chapter 85, Note 1(e) (excluding from the Chapter "Electrically heated furniture of chapter 94."). In some cases, an exclusionary Chapter Note may tie the exclusion to the classification of the excluded good in a particular HTSUS heading (*see e.g.*, Chapter 85, HTSUS

note 1(b) (excluding "Articles of glass of heading 7011.")). In these cases, it falls to the reviewing court to determine the common meaning of the described, but not defined term. *See e.g.*, *Kalle USA Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019) (terms in the HTSUS must be defined according to their common and commercial meaning); *see also*, *La Crosse Tech. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013); *Carl Zeiss Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

In this case, as in *Gerson*, there is agreement that Target's articles are within the common meaning of the term "lamps." Thus, the nature of the goods excluded from classification in Chapter 94 is agreed. The other requirement of the exclusionary note is that the lamps be "of Chapter 85." At all relevant times here, the lamps—specifically "electric luminescent lamps"— were in fact described and provided for *eo nomine* in Chapter 85 within subheading 8543.70.70. That should have ended the inquiry altogether as to the effect of Note 1(f) to Chapter 94 becauseelectric luminescent lamps, being provided for in Chapter 85, could not be classified in Chapter 94.

However, the *Gerson* Court went a step further in its analysis, which was unnecessary. It did not concentrate on whether any of the lights specified in Heading 9405, HTSUS, could have been classified under subheading 8543.70.70. Clearly, unless these lights were "electric luminescent lamps," they would not fit into that subheading. The CIT in *Gerson* acknowledged that the products in question were "lamps" and could also plausibly be considered "electrical machines and apparatus." *Gerson*, 254 F. Supp. at 1276. The CIT instead examined whether some lights described in heading 9405, HTSUS, might be classified under a different provision, specifically subheading 8543.70.96, HTSUS, which covers "Other" "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter." This

analysis was unnecessary for applying the exclusion set forth in Chapter 94, Note 1(f), which only requires that the excluded lamps be classified under "Chapter 85" without specifying a particular tariff classification.

It is analysis, the *Gerson* court violated two important canons of tariff and statutory construction. First, it disregarded GRI 1 to the HTS, which provides:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings **and any relative section or chapter notes** and, provided such headings or notes do not otherwise require, according to the following provisions:

(Emphasis added). The effect of the *Gerson* Court's interpretation was to focus solely on the terms of the headings, and to disregard the relevant Chapter Note, namely Chapter 94, Note 1(f). It is well-established that a court cannot interpret an exclusionary note in disregard of the context of the exclusion as a whole. *See Kalle USA v. United States*, 923 F.3d 991 (Fed. Cir. 2019); *Rubie's Costume Co. v. United States*, 337 F.3d 1357 (Fed. Cir. 2003).

Second, the *Gerson* Court's interpretation violated the canon of statutory construction that a statute should not be interpreted in a way that renders it nugatory. *See e.g., United States v. UPS Customs Brokers Inc.*, 30 C.I.T. 1612 (2006); *C.J. Tower & Sons of Niagara Inc., v United States*, 52 Cust. Ct. 14 (1964).[14] While the *Gerson* Court drew narrow distinctions based not on the statutory terms themselves, but on the greater "context" surrounding them, it violated important rules of statutory construction in the process. It interpreted subheading 8543.70.70, HTSUS, in such a way as to render it devoid of content and ensuring that absolutely **no** merchandise could be classified therein. It is a bedrock rule of statutory construction that a court "is obligated not only

---

[14] This was not an issue in the CITT's *Liteline* case, *supra* note 10, since Canada's Customs Tariff did not contain descriptive language similar to that of subheading 8473.70.70, HTSUS.

to construe the statute as a whole but to give meaning to each word of the statute". *AFL-CIO v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005); *see also Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 (2004); *Asiana Airlines v. FAA,* 134 F.3d 393, 398 (D.C. Cir. 1998). The *Gerson* Court not only emptied subheading 8543.70.70, HTSUS, of content and meaning, but disregarded Note 1(f) to Chapter 94 in the process despite the Note's preclusion of lamps provided for in Chapter 85 from classification within Chapter 94.

While this Court is constrained by the *Gerson* decision with respect to the specific class of merchandise involved therein—*i.e.,* LED votives and candles—the decision should not be applied to other products of the type which Target has imported. Those goods unquestionably meet the definition of "electric luminescent lamps" in subheading 8543.70.70, HTSUS, and should be classified therein.

These lights are all classifiable as "Electric Luminescent Lamps," of subheading 8543.70.70, HTSUS, because they produce luminescence as a result of energy being delivered through a semi-conductive material. Subheading 8543.70.70, HTSUS, provided at relevant times as follows:

| 8543 | Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: |
| --- | --- |
| 8543.70 | Other machines and apparatus: |
| 8543.70.70 | Electric luminescent lamps. |

Subheading 8543.70.70, HTSUS, is an eight digit "national" or "duty-rate" subheading that is unique to the HTSUS, and is not part of the six-digit international Harmonized Commodity Description and Coding System ("HS") tariff nomenclature on which the U.S. tariff is based. It was added to the HTSUS by Presidential Proclamation 8097 in 2007. *See* Proclamation No. 8097, 72 Fed. Reg. 453 (Jan. 4, 2007); *see also* Modifications to the Harmonized Tariff Sched. Of the

United States under Sec. 1206 of the Omnibus Trade and Competitiveness Act of 1988 annex I, at 133, USITC Pub. No. 3898 (Dec. 2006). Subheading 8543.70.70, HTSUS, is part of the legal text of the HTSUS, and considered to be "statutory law for all purposes." 19 U.S.C. § 3004(c)(1). LEDs are basic semiconductor devices that fit the description of "electrical machinery or apparatus," and are provided for *eo nomine* in Heading 8541. Although it is a national level subheading, it is undoubtedly part of the HTSUS, and it would be error for this Court to disregard it in determining the scope of the exclusionary language in Note 1(f) to Chapter 94, HTSUS.

  The subject goods are lamps that contain internal LEDs that modify power transmitted from an internal battery, or external electrical current sources, to illuminate. Such illumination demands strict cooperation between interrelated parts—*e.g*., cathodes, anodes, diffusers—each of which, in isolation, would be wholly incapable of performing the intended work, namely illumination. The useful traits of the articles are accomplished by direct virtue of the LED's basic semiconductor properties, which emit light by exciting electrons rather than by producing heat— *i.e*., "incandescence" describes light emitted by a solid that has been heated until it glows or radiates light (cf. "luminescence" describes low temperature light emission.). Because the articles' illuminative properties are controlled by the semiconductor properties of the LED, no light emission would be possible if the products at issue did not function as an "electrical machine or apparatus."

**<u>CONCLUSION</u>**

For the reasons set out herein, Plaintiff submits that summary judgment should be entered in its favor and its protests sustained.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*


<u>/s/ John M. Peterson</u>
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: June 20, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LISA W. WANG, JUDGE**

```
--------------------------------------------------------------  X
                                                                :
TARGET GENERAL MERCHANDISE, INC.                                :
                                                                :
            Plaintiff,                                          :
                                                                :          Consol. Court No. 15-69
            v.                                                  :
                                                                :
UNITED STATES OF AMERICA                                        :
            Defendant.                                          :
--------------------------------------------------------------·X
```

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 8,434 words.

Respectfully submitted,

<u>/s/ Patrick B. Klein   </u>
Patrick B. Klein