UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

|  |  |  |
|---|---|---|
| TARGET GENERAL MERCHANDISE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Consol. Court No. 15-00069 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, and upon consideration of all other papers and proceedings had herein; it is hereby

ORDERED that defendant's cross-motion for summary judgment is granted;

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that judgment is entered for defendant and this action is dismissed.

LISA W. WANG, JUDGE

Dated: _____
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

|  |  |  |
|---|---|---|
| TARGET GENERAL MERCHANDISE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Consol. Court No. 15-00069 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

*Of Counsel:*

MATHIAS RABINOVITCH
Trial Attorney
VALERIE SORENSEN-CLARK
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0484

November 7, 2024                                  *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

    A.  The Relevant Tariff Provisions Covering "Lamps"........................................... 3

    B.  Description of the Subject Merchandise ............................................................ 6

QUESTION PRESENTED................................................................................................. 14

SUMMARY OF ARGUMENT .......................................................................................... 15

ARGUMENT ..................................................................................................................... 16

I.  Legal Framework ........................................................................................................ 16

    A.  Standard of Review........................................................................................... 16

    B.  Applicable Law ................................................................................................. 16

    C.  Competing Tariff Provisions............................................................................. 18

II.  Target's LED Lights Are "Lamps" of Heading 9405 ................................................. 19

III.  Target's LED Lights Are Not Classifiable under Heading 8543 as "Electrical Machine or Apparatus" or under Heading 8539 as "Light-Emitting Diode (LED) Lamps" ................... 24

    A.  The Candles, String Lights, Table Lights, Nightlights, Path Lights, and Lanterns Imported During the 2013 Period Are Not "Electrical Machines or Apparatus" of Heading 8543 ............................................................................................... 24

    B.  The String Lights Imported During the 2017 Period Are Not "Light-Emitting Diode (LED) Lamps" of Heading 8539................................................................... 29

IV.  Target's Artificial Christmas Trees Are "Festive Articles" of Heading 9505....................... 34

CONCLUSION.................................................................................................................. 36

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................. 16

*Bausch & Lomb, Inc. v. United States*,
    148 F.3d 1363 (Fed. Cir. 1998) ............................................... 16

*BenQ Am. Corp. v. United States*,
    646 F.3d 1371 (Fed Cir. 2011) ................................................ 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................. 16

*Drygel, Inc. v. United States*,
    541 F.3d 1129 (Fed. Cir. 2008) .......................................... 17, 18

*Gerson Co. v. United States*,
    254 F. Supp. 3d 1271 (Ct. Int'l Trade 2017) .....................*passim*

*Gerson Co. v. United States*,
    898 F.3d 1232 (Fed. Cir. 2018) ..........................................*passim*

*Lynteq, Inc. v. United States*,
    976 F.2d 693 (Fed. Cir. 1992) ................................................. 24

*Midwest of Cannon Falls, Inc. v. United States*,
    122 F.3d 1423 (Fed. Cir. 1997) ............................................... 35

*Midwest of Canon Falls Inc. v. United States*,
    20 C.I.T. 123 (1996) ................................................................ 35

*Millennium Lumber Distribution Ltd. v. United States*,
    558 F.3d 1326 (Fed. Cir. 2009) ............................................... 17

*Minnetonka Brands, Inc. v. United States*,
    110 F. Supp. 2d 1020 (Ct. Int'l Trade 2000) .......................... 17

*Orlando Food Corp. v. United States*,
    140 F.3d 1437 (Fed. Cir. 1998) ..................................... 17, 25, 27

*Otter Prod., LLC v. United States*,
    834 F.3d 1369 (Fed. Cir. 2016) .......................................... 18, 27

*Park B. Smith, Ltd. v. United States*,
  347 F.3d 922 (Fed. Cir. 2003) ............................................................. 34, 35

*Pomeroy Collection, Ltd. v. United States*,
  559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) ......................................... 20

*Primal Lite v. United States*,
  15 F. Supp. 3d  (Ct. Int'l Trade 1998) ............................................. 22, 23

*Primal Lite, Inc. v. United States*,
  182 F.3d 1362 (Fed. Cir. 1999) ..................................................... 22, 23, 32

*RKW Klerks Inc. v. United States*,
  592 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ................................... 16, 17

*RKW Klerks Inc. v. United States*,
  94 F.4th 1374 (Fed. Cir. 2024) ............................................................. 16

*Target General Merchandise, Inc. v. United States*,
  392 F. Supp. 3d 1326 (Ct. Int'l Trade 2019) ................................... 22, 23

*Trijicon, Inc. v. United States*,
  686 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) ....................................... 32

*Trumpf Med. Sys., Inc. v. United States*,
  753 F. Supp. 3d 1297 (Ct. Int'l Trade 2010) ....................................... 32

**Harmonized Tariff Schedule of the United States (HTSUS)**

General Rules of Interpretation:

  General Rule of Interpretation 1 .................................................. 17, 19, 21

  General Rule of Interpretation 6 ............................................................. 17

Chapter 85 ....................................................................................... *passim*

  Note 11 to Chapter 85 ........................................................................... 30

  Explanatory Note to Chapter 85 ............................................................ 25

  Explanatory Note to Heading 85.39 ............................................. 25, 29, 30

  Explanatory Note to Heading 85.43 ............................................... 28, 29

  Heading 8539 ............................................................................... *passim*

Subheading 8539.50 ..................................................................... 30

Subheading 8539.50.00 ................................................................ 2

Subheading 8539.51 ..................................................................... 5

Subheading 8539.52 ..................................................................... 5

Heading 8543 ....................................................................... *passim*

Subheading 8543.70.70 ......................................................... *passim*

Chapter 90:

Note 1(h) ................................................................................... 29

Heading 9006 ............................................................................ 29

Chapter 94 ................................................................... 2, 3, 20, 27

Note 1(f) ............................................................... 18, 19, 27, 28, 33

Explanatory Note to Heading 9405 .............................. 20, 21, 22, 23, 26

Heading 9405 ..................................................................... *passim*

Subheading 9405.30.00 .............................................................. 22

Subheading 9405.60.80 ................................................................ 2

Subheading 9405.60.84 ................................................................ 2

Chapter 95 ................................................................................ 34

Heading 9505 ..................................................................... *passim*

Subheading 9505.10.25 ......................................................... 34, 35

**Statutes**

19 U.S.C. § 1315 ................................................................... 6, 18

Omnibus Trade and Competitiveness Act of 1988, § 1204,
     Pub. L. 100-418, 102 Stat. 1107 (1988) ..................................... 4

Tariff Act of 1930, Sch. 2, Title I, Pub. L. 71–361, 46 Stat. 590 (1930)....................................4, 5

**Rules**

USCIT Rule 56(a) ............................................................................................................. 16

**Regulations**

19 C.F.R. § 141.69 ............................................................................................................ 6

**Customs Rulings**

HQ 966952 (Aug. 18, 2004) ............................................................................................ 33

HQ H024762 (Feb. 12, 2014) ...................................................................................... 5, 33

HQ H024874 (Mar. 31, 2010) ......................................................................................... 33

HQ H024878 (Mar. 31, 2010) ......................................................................................... 33

HQ H042586 (Jan. 26, 2009) .......................................................................................... 33

HQ H095035 (Mar. 31, 2010) ......................................................................................... 33

HQ H254047 (Nov. 4, 2014) ........................................................................................... 33

HQ H301947 (Jan. 15, 2020) .......................................................................................... 30

NY N262787 (Apr. 7, 2015) ............................................................................................ 33

NY N280074 (Oct. 25, 2016) .......................................................................................... 33

NY N286276 (June 6, 2017) ............................................................................................ 33

NY N297843 (June 29, 2018) .......................................................................................... 33

NY N299720 (Aug. 13, 2018) ......................................................................................... 33

**Other Authorities**

Apparatus, Webster's New World College Dictionary 67, 860 (4th ed. 2009) ........................... 24

Lamp, *Cambridge Dictionary*, Dictionary.Cambridge.org,
    https://dictionary.cambridge.org/us/dictionary/english/lamp .................................................. 19

Lamp, Merriam-Webster Dictionary, Merriam-Webster.com,
    https://www.merriam-webster.com/dictionary/lamp ........................................................... 3, 19

Luminaire, Merriam-Webster Dictionary, Merriam-Webster.com,
    https://www.merriam-webster.com/dictionary/luminaire ......................................................... 3

Luminaire, National Electrical Code, Article 100 ......................................................................... 3

Ornament, *Webster's Third New International Dictionary* 1592 (Unabridged, 1986) ............... 35

Ornament, *Webster's New World Dictionary* 955 (3rd College ed., 1988) ................................ 35

USPTO, A Tour of the Public Search Facility at the United States Patent and
    Trademark Office (2023) ............................................................................................................ 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

| | : | |
|---|---|---|
| TARGET GENERAL MERCHANDISE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Consol. Court No. 15-00069 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the United States Court of International Trade (USCIT),

defendant, the United States (the Government), respectfully cross-moves this Court for an order:

(1) denying plaintiff Target General Merchandise, Inc. (Target)'s motion for summary judgment;

(2) granting our cross-motion for summary judgment; (3) entering judgment for the Government

and dismissing this action; and (4) granting the Government such other and further relief as may

be just and appropriate. As we demonstrate below, summary judgment in favor of the

Government is appropriate because there are no genuine disputes of material fact, and the

Government is entitled to judgment as a matter of law.

## INTRODUCTION

This consolidated case concerns the tariff classification of a variety of decorative and

utilitarian, electrically powered light sources sold by Target that are used to illuminate rooms,

areas, paths, buildings, and plants. Target imported the subject merchandise during two periods

corresponding to the two actions in this consolidated case: from March 24, 2013 through May

14, 2013 (Civil Action No. 15-00069) and from August 16, 2017 through November 27, 2017

(Civil Action No. 19-00199).  For those articles imported in 2013, Target claims classification under subheading 8543.70.70 of the Harmonized Tariff Schedule of the United States (HTSUS),[1] which provides for "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: . . .  Other machines and apparatus: . . . Electric luminescent lamps," dutiable at 2% *ad valorem*.  For the articles imported after January 1, 2017, due to a change in the HTSUS, Target claims classification under subheading 8539.50.00, which, among other things, provides for "Light-emitting diode (LED) lamps," dutiable at 2% *ad valorem*.  U.S. Customs and Border Protection (CBP) liquidated the merchandise imported during both the 2013 and 2017 periods under various subheadings of heading 9405, HTSUS (2013 & 2017), which provides for "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included," dutiable at rates between 3.9% and 8% *ad valorem*.

At issue in this case is the meaning of the term "lamp" as it is used in the different provisions of the HTSUS identified above.  As we demonstrate below, the HTSUS is organized around the principle that lamps of Chapter 85 (including those commonly referred to as light bulbs) are components of electrical equipment requiring a fixture or apparatus to function; and that lamps of Chapter 94 are complete, standalone illuminating articles.  This case concerns complete, standalone lights used in and around the home: light-emitting diode (LED) candles, string lights, table lights, nightlights, path lights, and metal lanterns (the "LED lights").  The Court of Appeals for the Federal Circuit (Federal Circuit) has classified battery-powered LED

---

[1] The versions of the HTSUS and Explanatory Notes cited in this brief are those in effect at the times of entry in March to May of 2013 and August to November of 2017.  Heading 9405 in the 2013 and 2017 versions are materially the same, except that subheading 9405.60.80 (2013) was renumbered to 9405.60.84 (2017).  Copies of the Explanatory Notes are reproduced in Government Exhibit ("Gov't Ex.") A.

candles as "lamps" of heading 9405, HTSUS, in *Gerson Co. v. United States*, 898 F.3d 1232, 1233–34 (Fed. Cir. 2018), *aff'g* 254 F. Supp. 3d 1271 (Ct. Int'l Trade 2017), which provides helpful guidance.  Like the LED candles in *Gerson*, Target's LED lights are all "lamps" of heading 9405.

Target also challenges the classification of artificial Christmas trees incorporating LED lighting elements under heading 9405.  For the reasons below, these items are  "festive articles" of heading 9505, HTSUS.

## BACKGROUND

### A.  The Relevant Tariff Provisions Covering "Lamps"

The term "lamp," as used to refer to both a light bulb and an independent, standalone appliance housing a light source, is reflected in the Harmonized Tariff Schedule of the United States.  This distinction is carried out in Chapter 94 and Chapter 85, HTSUS.

Chapter 94, HTSUS, as indicated by heading 9405 and its accompanying Explanatory Notes, used the term "lamp" to refer to complete lighting units.[2]  *See* Heading 9405, HTSUS (2013).  Historically, these articles would previously have been scheduled in the Tariff Schedule of the United States (TSUS), adopted in 1962, as "illuminating articles for use in the household or elsewhere in connection with artificial illumination (except candle illumination) in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for practical or

---

[2]  As part of the 2022 changes to the Harmonized System, the WCO changed heading 9405 to cover "*luminaires* and lighting fittings" and removed any confusion derived from having two uses of the term "lamp" in the HTSUS, in headings 8539 and 9405.  *See* Heading 9405 (2022) (emphasis added).  A luminaire is defined as "a complete lighting unit."  *See* luminaire, Merriam-Webster Dictionary, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/luminaire; *see also* National Electrical Code, Article 100 (defining "luminaire" as " as "a complete lighting unit consisting of a lamp or lamps together with the parts designed to distribute the light, to position and protect the lamps, and to connect the lamps to the power supply").

ornamental purposes[.]"  *See* Tariff Classification Act of 1962, Pub. L. 87-454, 76 Stat. 72

(1962); *see also* United States Statutes at Large containing Tariff Schedule of the United States,

Volume 77A, at 248 (1963)  (items 545.53–546.67, TSUS) (Gov't Ex. B (Schedules 5 and 6));

*see also* Para. 218(c), Sch. 2, Title I, Tariff Act of 1930 (providing for "Illuminating articles of

every description").

The relevant provision for the both the 2013 period and 2017 period covering Target's

entries, is heading 9405, which provides for:

> 9405   Lamps and lighting fittings including searchlights and spotlights
> and parts thereof, not elsewhere specified or included[.]

Chapter 85, HTSUS, which encompasses headings 8543 and heading 8539 (amended in

2017), describes "lamps" known as light bulbs (heading 8539) or components of electrical

equipment (heading 8543).  The use of the term "lamp" to refer to what is commonly referred to

as a light bulb dates back, as least, to Thomas Edison's patent for his incandescent light bulb,

which he called an "electric lamp for giving light by incandescence" — a device that consisted of

a filament of carbon wire sealed in a glass vacuum bulb.  *See* U.S. Patent No. 223,898 (issued

Jan. 27, 1880).[3]  This use made its way into the Tariff Act of 1930, which provided for

"Incandescent electric-light bulbs and lamps" with or without filaments.  *See* Para. 229, Sch. 2,

Title I, Tariff Act of 1930 (1930).  The TSUS similarly provided for "Electric filament lamps and

electric discharge lamps . . . ; electric luminescent lamps; and arc lamps" under a category for

electrical machinery and equipment.  *See* Gov't Ex. B at 324 (items 686.30–687.30).

---

[3]  Although the development of the light bulb preceded Edison's patent, his was "the first
long lasting light bulb."  *See* USPTO, A Tour of the Public Search Facility at the United States
Patent and Trademark Office at 7 (2023).

Similar to the TSUS, the 2013 version of heading 8539, HTSUS, only covered filament, discharge, and arc lamps, *i.e.*, light bulbs that provide a source of illumination using filaments (for incandescent lamps) or gas (for arc or discharge lamps).  It did not include light-emitting diode (LED) lamps, which function differently, *i.e.*, by use of a rectifying semiconductor device which converts electrical energy into electromagnetic radiation when current is applied.  *See* Pl.'s R. 56.3 Statement of Material Facts Not In Dispute ("Pl.'s SUMF"), ECF No. 73-2, at ¶ 7 (June 20, 2024); CBP Headquarters Ruling (HQ) H024762 (Feb. 12, 2014).  In 2013 and until 2017 when heading 8539 was amended, CBP classified an LED light bulb under heading 8543, a residual heading, and specifically under subheading 8543.70.70, as "electric luminescent lamps." *See* H024762.  The relevant provision for Target's entries made during 2013, is heading 8543 which provides for:

> 8543          Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof[.]

But effective January 1, 2017, the World Customs Organization (WCO) amended heading 8539 to cover "light-emitting diode (LED) lamps" to reflect the development of LED lamps that were not previously covered by that heading.  No changes were made to heading 9405 in 2017.  Thus, the relevant provision to consider for Target's entries made in 2017, is heading 8539,[4] which provides for:

> 8539          Electrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof[.]

---

[4]  In the 2022 amendment to the HTS, the WCO, once again, changed heading 8539 to provide for, *inter alia*, "light-emitting diode (LED) *light sources*," and subdivided this provision with a subheading for "LED modules" and another for "LED lamps."  *See* Heading 8539 (emphasis added); Subheadings 8539.51 & 8539.52, HTSUS (2022).

## B.  Description of the Subject Merchandise

Target challenges the classification of 162 models of its imported products, which fall generally into seven categories of merchandise: (1) candles, (2) string lights, (3) table lights, (4) nightlights, (5) path lights, (6) lanterns, and (7) artificial Christmas trees.  *See* Pl.'s Mot. for Summ. J. ("Pl.'s Br.") at 8, ECF No. 73 (June 20, 2024); Pl.'s SUMF ¶¶ 11–55, Ex. C, E;[5] Defendant's Statement of Additional Undisputed Material Facts ("Def.'s SUMF") ¶¶ 1, 2.  From March 24, 2013 through May 14, 2013 (the "2013 period"), Target imported candles, string lights, table lights, nightlights, path lights, and lanterns (product categories 1 through 6).  *See* Protests and Entries received from the Port, ECF No. 5 (Apr. 17, 2015); *see also* Pl.'s SUMF ¶¶ 13, 23, 34, 40, 45, 50.  From August 16, 2017 through November 27, 2017 (the "2017 period"), Target imported string lights and artificial Christmas trees (product categories 2 and 7).  *See* Protests and Entries from the Port of Savannah, GA for Court No. 19-00199, ECF No. 28-1 (Jan. 22, 2020); *see also* Pl.'s SUMF at ¶¶ 23, 40, 54 & Ex. F.[6]  The string lights (product category 2) are the only category of products imported during both the 2013 and 2017 periods.

---

[5]  To the extent that the entries at issue in Civil Action Nos. 15-00069 and 19-00199 contain merchandise not identified by Target in this action, either in its motion for summary judgment or statement of facts (including Exhibits C and D, which identify the merchandise at issue), Target has waived its claims with respect to such merchandise.  *See Sigvaris, Inc. v. United States*, 211 F. Supp. 3d 1353, 1364 (Ct. Int'l Trade 2017).

[6]  Plaintiff incorrectly identifies the two relevant periods as from February 7, 2014 through March 28, 2014 and from September 7, 2018 through October 12, 2018.  Those date ranges, however, are the dates of liquidation of the entries.  Pl.'s SUMF ¶¶ 4, 6.  The rate of duty applicable to imported merchandise—and therefore the relevant HTSUS provisions at issue—are those in effect at the time of entry.  *See* 19 U.S.C. § 1315 ("[T]he rate or rates of duty . . . on any article entered for consumption . . . shall be the rate or rates in effect when the documents comprising the entry for consumption . . . and any estimated or liquidated duties then required to be paid have been deposited with the Customs Service[.]"); 19 C.F.R. § 141.69 ("The rates of duty applicable to merchandise shall be the rates in effect at time of entry, as specified in § 141.68[.]").  The differing date ranges are not material for purposes of this classification dispute.

For each individual model, Target has assigned a unique item number referred to as the Department Class Item (DPCI) number.  Pl.'s SUMF ¶ 9; Def.'s SUMF ¶ 2.  The DPCI numbers contain three sets of numbers, separated by hyphens, and represent the department, class, and item number for each model of products sold by Target.  *See* Def.'s SUMF ¶ 3.  Target's imported merchandise is categorized into multiple departments, such as for seasonal or outdoor living products.  Def.'s SUMF ¶ 2.  Each of the seven categories of merchandise is described below.

### 1. Candles

There are 37 models of the candles at issue.  Pl.'s SUMF ¶ 14.  The candles consist of an LED light source in a plastic and/or wax housing, are powered by batteries, and are sold in different sizes and colors.  Pl.'s SUMF ¶ 14.  Some candles are scented; some have timers.  *Id.* The candles serve both utilitarian and decorative purposes.  *Id.* ¶ 15.

Four models are solar-powered, flameless LED candles contained in variously shaped rattan housings and are sold in Target's patio/grill department.  *Id.* ¶¶ 14, 17.  Two models are battery-powered, flameless LED candles contained in a metal lantern, sold in Target's candles department.  Def.'s SUMF ¶ 6; Pl.'s SUMF Ex. C at Bates 1321–1333.  Two models are battery-operated, flameless LED tea lights, in packs of 12 or 24, sold in Target's candles department. Pl.'s SUMF ¶¶ 14, 18.  The remaining 29 models are battery-powered, flameless LED candles resembling, in shape and size, pillar candles.  *Id.* ¶¶ 14, 21, Ex. C at Bates 1317–1320, 1323– 1326, 1328–1342.  Of the 29 LED pillar candles, six are described as being for outdoor use and are sold in Target's patio/grill department.  *See* Pl.'s SUMF Ex. C at Bates 1228–1231, Ex. E. The other 23 are intended for indoor use and sold in Target's candles department.

The following is an example of Target's LED candles, the LED Pillar Candle Ivory 3"x4" – Threshold (DPCI 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):



Pl.'s SUMF Ex. C at Bates 1325.[7]

2. <u>String Lights</u>

There are 93 models of string lights at issue.  Pl.'s SUMF ¶ 22.  The string lights are composed of LED light sources arranged at measured intervals along the length of a wire.  Pl.'s SUMF ¶ 24, Ex. A Response 4 at 4; Jarvis Dep. 18:22-19:10.  The string lights are solar powered, battery powered, and/or powered through an external power source by use of a wire with an electrical power connector.  Pl.'s SUMF ¶¶ 24, 25.  The string lights can be further divided into three categories: "single" string lights, net lights, and icicle (dangling) lights.  The single string lights have LED light sources arranged along a continuous strand.  *See* Def.'s SUMF ¶ 7; *see, e.g.*, Pl.'s SUMF Ex. C at Bates 1226–1227.  Icicle lights have a lead string, but also multiple strings that branch off from the lead, such that when the lead string is hung horizontally, the branched strings hang vertically, providing the effect of looking like icicles.  Def.'s SUMF ¶ 8.  One model of the icicle light has caps in the shape of icicles.  Pl.'s SUMF ¶ 28.  Another model has bulbs arranged within a plastic snowflake on the branched string.  *See*

---

[7] For a complete list of products and images at issue in this litigation, *see* Pl.'s SUMF Ex. C.

Pl.'s SUMF Ex. C at Bates 1309.  Net lights are LED light sources arranged along wires connected to form a grid in the shape of netting.  Def.'s SUMF ¶7.  These lights are used to decorate bushes or other outdoor structures or plants.  *Id.*; Jarvis Dep. 82:9-14.

The light bulbs for the string lights at issue come in a variety of colors, shapes, and sizes. Some of the string lights have lighting effects while others provide constant lighting.  *See, e.g.*, Pl.'s SUMF Ex. C at Bates 1301, 1302, 1303.  The colors of the plastic sheeting of the string lights are also sold in a variety of colors, such as green, white, clear, and black.  *See* Pl.'s SUMF Ex. C.

Target sells the string lights within its patio/grill, trim-a-tree, and seasonal departments. Pl.'s SUMF Ex. C at Bates 1226–1228, 1233–1283.  The "trim-a-tree" department is for Target's holiday and more specifically Christmas assortment of items.  Def.'s SUMF ¶ 10.  The patio/grill string lights are sold under Target's Room Essentials and Threshold brands.  *See* Pl.'s SUMF Ex. C at Bates 1226–1228.  The trim-a-tree string lights are Philips brand (the majority of the string lights at issue) and also Target's Wondershop brand.  Pl.'s SUMF Ex. C at Bates 1233–1283. For the string lights sold in the seasonal section, the light bulbs are all Halloween themed, with light bulbs in orange or purple colors, or with LED light sources contained within plastic shaped like bats, ghosts, jack-o-lanterns, or spiders.  *See* Pl.'s SUMF Ex. C at Bates 1356–1366.  For classification purposes, there are no material differences between the string lights imported in 2013 and 2017.

The following is an example of Target's string lights, the 50Lt Solar Mini String Lights - Threshold (DPCI 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):



Pl.'s SUMF Ex. C at Bates 1226–1227.

### 3.   Table Lights

There are ten models of the table lights at issue.  Pl.'s SUMF ¶ 33.  Nine models are

designed to be placed on a desk or table, while one model is a grill light, designed to be clipped

onto the side of a grill and provide light while cooking.  Pl.'s SUMF ¶¶ 35–37, Ex. C. at Bates

1222, 1344–1352.  The table lights consist of an LED light source at the top of a metal or plastic

body, a base or clip, a light switch, and an electrical power cord and plug.  Pl.'s SUMF ¶¶ 35–36,

Ex. C at Bates 1344–1352.  Most table lights are between 5 to 17 inches tall and most contain a

mechanism to position the light for a specific task, which are also referred to as task lights.  Pl.'s

SUMF ¶¶ 35, 37; Def.'s SUMF ¶ 11.  Target sold the table lights in its lighting and wall decor

department, and the grill light in its patio/grill department.  Pl.'s SUMF ¶ 38; Def.'s SUMF ¶ 11.

The following is an example of Target's table lights, the LED Desk Lamp Black – Room

Essentials (DPCI 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):



Pl.'s SUMF Ex. C at Bates 1344.

4.  Nightlights

There is one model of the nightlights at issue.  Pl.'s SUMF ¶ 39.  The item is the "Flower LED Nightlight" sold under the Target label "Circo," Target's former children's home products brand.  Pl.'s SUMF ¶ 43; Jarvis Dep. 105:11-16.  It is a pink flower-shaped light, of plastic, designed to emit a soft glow dim enough to permit a person to sleep while it remains lit, for use in a bedroom.  *See* Def.'s SUMF ¶ 13; Jarvis Dep. 104:20-23; Pl.'s SUMF Ex. C at Bates 1343. It contains an LED lighting source, a plastic cap, and electrical plug to connect into a wall socket.  Pl.'s SUMF ¶ 41.   Target sold the nightlights in its domestics/bedding department. Def.'s SUMF ¶ 14.

The following is the Circo Flower LED Nightlight (DPCI: 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):



Pl.'s SUMF Ex. C at Bates 1343.

11

5.  Path Lights

There are at least[8] sixteen models of the path lights at issue.  Pl.'s SUMF Ex. C at Bates 1353–1355.  The path lights contain a solar-powered LED light source within a sheeting, with a top, and base or stake for insertion into the ground.  Pl.'s SUMF ¶ 46; Jarvis Dep. 111:25-26. The path lights are intended to illuminate a path outdoors automatically at night.  Pl.'s SUMF ¶ 48; Def.'s SUMF ¶ 15.  Target sold the path lights in its lawn and garden department.  Def.'s SUMF ¶ 15.

The following is an example of Target's path lights, the Solar Plastic Pathlight (DPCI: 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):



Pl.'s SUMF Ex. D.

6.  Lanterns

There are two models of metal lanterns at issue.  Pl.'s SUMF ¶ 49.  The lanterns contain an LED light source housed in a square or cylindrical metal frame, with plastic or glass windows. Pl.'s SUMF ¶ 51; Def.'s SUMF ¶ 16.  The lanterns are 13 to 18 inches tall and about seven inches wide, designed for outdoor use, such as on a patio, outdoor table, or doorstep, and are both solar and battery powered.  Pl.'s SUMF Ex. C at Bates 1232–1233; Def.'s SUMF ¶ 16. Target sold the lanterns in its outdoor living department.  Pl.'s SUMF ¶ 52.

---

[8] One of the DPCI numbers is descripted as being a set assortment of path lights.  Pl.'s SUMF Ex. C at Bates 1355.  It is not clear which models of the path lights are included in this assortment.  Jarvis Dep. 114:11-115:11.

The following is an example of Target's lanterns, the Smith & Hawken Metal Lantern Square (DPCI: 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):



Pl.'s SUMF Ex. C at Bates 1232.

### 7.  Artificial Christmas Trees

There are two models of artificial Christmas trees at issue.  Pl.'s SUMF ¶ 53.  The Christmas trees measure 16 or 21 inches in height and 11 or 14 inches in diameter and are shaped like a twig Christmas tree.  Pl.'s SUMF Ex. C at Bates 1314–1315.  They are made of Polyvinyl Chloride (PVC), copper, paper, iron, and plastic with faux foliage as the pine needles.  *Id.*  Both trees are designed for indoor use, such as on a tabletop, and are powered by AA batteries.  *Id.*  They are sold seasonally with other assortment of Christmas articles in Target's trim-a-tree department.  Def.'s SUMF ¶ 17.

The following is an example of Target's artificial Christmas trees, the 16-inch Lit Pine Twig Tree (DPCI: 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):



Pl.'s SUMF Ex. C at Bates 1314.

***

All of the merchandise at issue, including the artificial Christmas trees, emit light via an LED light source.  Pl.'s SUMF ¶¶ 7, 10; Def.'s SUMF ¶ 4.  Each product is either solar powered, battery powered, and/or powered through an external power source by use of a wire with an electrical power connector.  Def.'s SUMF ¶ 5.  Target describes all categories of its merchandise as LED "lamps."  Pl.'s SUMF ¶¶ 3, 5; Jarvis Dep. 36:7-10.

## QUESTIONS PRESENTED

(1)    Whether the imported LED lights (product categories 1 through 6) are correctly classified as "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included" of heading 9405, HTSUS (2013 & 2017);

(2)    Whether the imported LED lights (product categories 1 through 6) are correctly classified as "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter" of heading 8543, HTSUS (2013) or "Light-emitting diode (LED) lamps" of heading 8539, HTSUS (2017).

(3)     Whether the imported artificial Christmas trees (product category 7) are correctly classified as "festive articles" of heading 9505, HTSUS (2017).

## SUMMARY OF ARGUMENT

Under General Rule of Interpretation 1, Target's LED lights (product categories 1 through 6) are "lamps … not elsewhere specified or included" of heading 9405.  As standalone items designed to provide illumination, these items meet the meaning of the term "lamp" in heading 9405 as informed by reliable lexicographic sources, the Explanatory Notes, and as confirmed by judicial precedent.  Target's LED lights and are also not specified or included in any other provision of the HTSUS.

Heading 8543, which covers "electrical machines and apparatus" does not describe any of Target's LED lights.  The Federal Circuit recently explained in *Gerson* that a "machine" or "apparatus" is a "complex device or machine for a specific use," and held that "lamps" such as battery-powered LED candles do not meet that definition.  898 F.3d at 1236.  Indeed, Target concedes that its candles must be classified as heading 9405 lamps under *Gerson*.  Pl.'s Br. at 25, 28.  The remaining Target LED lights imported during the 2013 period—string lights, table lights, nightlights, path lights, and lanterns—which have similar features as the LED candles, are similarly not "machines" or "apparatus," or "complex devices or machines," of heading 8543.

Nor are the LED lights "light-emitting diode (LED) lamps" of heading 8539 as that term is understood in the tariff schedule.  As explained by the Federal Circuit in *Gerson*, lamps of heading 8539 consists of what are commonly described as electric light bulbs.  The LED string lights, the only LED lights imported by Target during the 2017 period, after the provision for LED lamps was added to the HTSUS, are not electric light bulbs.  Accordingly, heading 8539 does not apply to Target's LED lights.

Finally, the artificial Christmas trees (product category 7) are classified under heading 9505, as "festive articles" because they are decorative articles intrinsically linked to the Christmas holidays.

## ARGUMENT

### I. Legal Framework

#### A. Standard of Review

On a motion for summary judgment, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex*, 477 U.S. at 322-23.  The Court must view the evidence in the light most favorable to the non-movant and may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted); USCIT R. 56(a).

#### B. Applicable Law

"The [C]ourt's review of a classification dispute involves two steps.  First, it must determine the meaning of the relevant tariff provisions, which is a question of law."  *RKW Klerks Inc. v. United States*, 592 F. Supp. 3d 1349, 1354 (Ct. Int'l Trade 2022), *aff'd*, 94 F.4th 1374 (Fed. Cir. 2024) (citing *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998)).  "Second, it must determine whether the merchandise at issue falls within a particular tariff provision, as construed, which is a question of fact."  *Id.* (citations omitted).  When, as here, "no factual dispute exists regarding the merchandise, resolution of the classification turns solely on the first step," a "question of law" that the court determines *de novo*.  *Id.* (citations

omitted).  That question of law is governed by the HTSUS's General Rules of Interpretation (GRIs).  *Id.* at 1355.

The GRIs provide the analytical framework for the classification of goods under the HTSUS.  *Gerson*, 898 F.3d at 1235.  A classification analysis begins with applying GRI 1, which requires that classification be "determined according to the terms of the headings and any relative section or chapter notes" as HTSUS chapter and section notes are considered binding statutory law.  GRI 1; *Minnetonka Brands, Inc. v. United States*, 110 F. Supp. 2d 1020, 1025 (Ct. Int'l Trade 2000); *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed Cir. 2011); *see also RKW*, 592 F. Supp. 3d at 1354–5 ("The HTSUS is designed so that most classification questions can be answered by GRI 1.") (citation omitted).  When determining which heading is the more appropriate for classification, "a court should compare only the language of the headings and not the language of the subheadings" and  only "after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise."  *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998) (citing GRI 1 and 6).

HTSUS terms generally are construed "according to their common commercial meanings."  *Millennium Lumber Distribution Ltd. v. United States*, 558 F.3d 1326, 1329 (Fed. Cir. 2009).  "Courts may rely upon their own understanding of terms or consult dictionaries, encyclopedias, scientific authorities, and other reliable information" in ascertaining common meaning.  *RKW Klerks*, 592 F. Supp. 3d at 1355 (citations omitted).  That includes the Explanatory Notes to the Harmonized Tariff Schedule, drafted by the WCO, which "are 'generally indicative' of the proper interpretation of a tariff provision."  *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008); *see also Otter Products, LLC v. United States*, 834

17

F.3d 1369, 1375 ("After consulting the headings and section or chapter notes, we may also consult the World Customs Organization's Explanatory Notes, which accompany each chapter of the HTSUS."). Courts credit "the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it." *Drygel*, 541 F.3d at 1134.

### C.  Competing Tariff Provisions

Target imported the subject merchandise during two time periods, and the classification of the merchandise is subject to two HTSUS versions, one in effect in 2013 and the other in effect in 2017. *See* 19 U.S.C. § 1315.

### 1.  2013 HTSUS Provisions

For the time period covering March 24, 2013 through May 14, 2013, the relevant headings are as follows:

| 8543 | Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: |
|---|---|
| 8543.70 | Other machines and apparatus: |
| 8543.70.70 | Electric luminescent lamps. |

*** 

| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: |
|---|---|

In addition, note 1(f) to chapter 94 provides that "[t]his chapter does not cover: . . . Lamps . . . of chapter 85[.]" Note 1(f), Ch. 94, HTSUS (2013).

### 2.  2017 HTSUS Provisions

For the time period covering August 16, 2017 through November 27, 2017, the relevant headings are as follows:

| 8539 | Electrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof |

***

| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included |

In addition, note 1(f) to chapter 94 provides that "[t]his chapter does not cover: . . . Lamps . . . of chapter 85[.]"  Note 1(f), Ch. 94, HTSUS (2017).

***

| 9405 | Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof |

## II.  Target's LED Lights Are "Lamps" of Heading 9405

Under GRI 1, Target's LED lights are "lamps," as that word is commonly understood in heading 9405.  A "lamp" is "any of various devices for producing light or sometimes heat: such as (1): a vessel with a wick for burning an inflammable liquid (such as oil) to produce light (2): a glass bulb or tube that emits light produced by electricity (such as an incandescent light bulb or fluorescent lamp) [or] a decorative appliance housing a lamp that is usually covered by a shade." *See* lamp, *Merriam-Webster Dictionary*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/lamp; *Gerson*, 254 F. Supp. 3d at 1275 n.6 (citing the *Merriam-Webster Dictionary*); *see also* Pl.'s Br. at 19 (same).  The *Cambridge Dictionary* also defines "lamp" as "a device for giving light, especially one that has a covering or is contained within something: an electric/oil/gas lamp[,] a street lamp[,] a table/bedside lamp."  *See* lamp, *Cambridge Dictionary*, Dictionary.Cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/lamp.

19

The Explanatory Note to heading 9405 further explains that lamps of heading 9405 can be "constituted of any material" and "use any source of light." *Gerson*, 898 F.3d at 1237 (quoting EN 94.05(I)); *see also Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385–86 (Ct. Int'l Trade 2008). Lamps of heading 9405 may also "be equipped with lamp-holders, switches, flex and plugs, transformers, etc., or, as in the case of fluorescent strip fixtures, a starter or a ballast." EN 94.05(I). The Explanatory Note provides an expansive list of lamps covered by heading 9405:

> (1) Lamps and lighting fittings normally used for the illumination of rooms, e.g.: hanging lamps; bowl lamps; ceiling lamps; chandeliers; wall lamps; standard lamps; *table lamps*; bedside lamps; *desk lamps*; *night lamps*; water-tight lamps.
>
> (2) Lamps for exterior lighting, e.g.: *street lamps*; *porch and gate lamps*; special illumination lamps for public buildings, monuments, parks.
>
> (3) Specialised lamps, e.g.: darkroom lamps; machine lamps (presented separately); photographic studio lamps; inspection lamps (other than those of heading 85.12); non-flashing beacons for aerodromes; shop window lamps; *electric garlands* (including those fitted with fancy lamps for carnival or entertainment purposes or *for decorating Christmas trees*).

EN 94.05(I) (bold omitted; italics added). The Explanatory Note specifically lists table lamps, desk lamps, night lamps, street lamps, porch and gate lamps, and electric garlands such as those used for decorating Christmas trees. *Id.* The ENs indicate that articles classified under heading 9405 are electric lamps "that are self-contained, i.e., independently used." *Gerson*, 254 F. Supp. 3d at 1278–79; *Gerson*, 898 F.3d at 1237 (explaining that the Explanatory Note "suggest that chapter 94 was intended to include at least finished, standalone electric lamps used in the home.").

The *Gerson* case before the Court of International Trade, and affirmed by the Court of

Appeals, addressed the meaning of "lamps" as used in heading 9405. *Gerson*, 254 F. Supp. 3d

1271 (Ct. Int'l Trade 2017), *aff'd*, 898 F.3d 1232 (Fed. Cir. 2018). The *Gerson* court considered

the classification of various models of LED candles and tea lights comprised of wax or plastic

made to resemble ordinary candles such as votives, pillar, taper, and tea lights. *Id.* at 1273. In

determining the correct classification, the CIT in *Gerson* held that the LED candles and tea lights

were lamps of heading 9405 because they were "self-contained, independently-used" lamps that

have "a decorative as well as an illuminating function." *Id.* at 1278, 1280 (citing EN 94.05(I)).

The CIT emphasized that the candles are "stand-alone items, not components within a larger

system" and that "they perform both decorative and illuminating functions." *Id.* at 1276. The

Federal Circuit affirmed, holding that the candles undisputedly qualified as "lamps" of heading

9405. *Gerson*, 898 F.3d at 1236.

Here, the candles (product category 1) are classified under heading 9405, as conceded by

Target and held in *Gerson*. *See* Pl.'s Br. at 25, 28; *Gerson*, 254 F. Supp. 3d at 1280 ("[B]y

operation of GRI 1, HTSUS, Gerson's [LED] "candles" and "tea lights" . . . fall within the scope

of heading 9405, HTSUS as "[l]amps . . . not elsewhere specified or included"), *aff'd,* 898 F.3d

1232. Target's LED candles are materially similar to the *Gerson* candles—they are LED candles

and tea lights comprised of an LED light source within a plastic and wax housing in the shape of

votive, pillar, and tea light candles, intended for utilitarian and decorative illumination. Pl.'s

SUMF ¶ 14, 15, 21. The LED candles are thus classifiable as lamps of heading 9405.

Target's remaining LED lights are all "lamps" within the common meaning of that term,

and as informed by the Explanatory Note and the previous CIT and Federal Circuit decisions in

*Gerson*. All of the products emit light by use of an LED and are finished, standalone electric

21

lamps used for utilitarian or decorative illumination in or around the home. Pl.'s SUMF ¶ 10, Ex. A Response 6 at 5. They are all either powered by use of batteries or solar panels, or function by plugging the article into an outlet, and are not used in conjunction with other electrical equipment. Def.'s SUMF ¶ 5; *see Gerson*, 898 F.3d at 1238.

Specifically, the string lights (product category 2) are also classified under heading 9405. The EN explicitly lists "electric garlands," including those of a kind used on Christmas trees, as falling within heading 9405. An electric garland is "an article . . . able to be hung or displayed and is composed of a string of light bulbs which are powered by an electrical source either attached by a battery, cord, or plug."[9] HQ 963311 (Oct. 19, 2000); *see also* New York Ruling (NY) N233353 (Sep. 28, 2012). The single string lights, net lights, and icicle lights are all lighting strings with LED bulbs arranged along the length of a wire. Pl.'s SUMF ¶ 24. Although the color, shape, and size of the string lights may vary, they all meet the common definition of "lamps" as devices that provide illumination and are specifically identified in the EN as "electric garlands." EN 94.05(I)(3).

Moreover, the CIT has previously classified string lights under heading 9405 in *Primal Lite v. United States*, 15 F. Supp. 3d 915 (Ct. Int'l Trade 1998), *aff'd,* 182 F.3d 1362 (Fed. Cir. 1999) and *Target General Merchandise, Inc. v. United States*, 392 F. Supp. 3d 1326 (Ct. Int'l Trade 2019). In both *Primal Lite* and *Target*, the Court held that string lights were undisputedly classified as a "lamp" under heading 9405. The merchandise in *Primal Lite* consisted of stringed

---

[9] As part of the 2022 changes to heading 9405, the EN to heading 9405 now describes these products as "lighting strings." *See* EN 94.05(I)(3). We note that in 2013 and 2017, subheading 9405.30.00 referred to "lighting sets of a kind used for Christmas trees." Subheading 9405.30.00, HTSUS (2013); Subheading 9405.30.00, HTSUS (2017). Subheading 9405.30.00 now provides for "Lighting strings of a kind used for Christmas trees." Subheading 9405.30.00, HTSUS (2024). These changes are not material to the classification of string lights in heading 9405.

lights with translucent plastic light bulb covers in the form of fruits, vegetables, hearts, rearing horses, guitars, and American flags.  Relevant here, the Court noted that the EN to heading 9405 "indicates that the general class of lights on strings should be covered under Heading 9405."  *Id.* at 917; *see also Target*, 392 F. Supp. 3d at 1332, 1340–1 (relying on *Primal Lite* to classify black-corded and white-corded LED string lights under heading 9405).  Target's string lights are materially similar to those at issue in *Primal Lite* and *Target*.  Accordingly, the string lights at issue are classified under heading 9405.[10]

The table lights (product category 3) and nightlights (product category 4) are lamps of heading 9405 because they are used for the illumination of rooms (or areas of a room).  Both articles are also specifically listed in the EN.  *See* EN 94.05 (listing "table lamps" or "desk lamps" and "bedside lamps" or "night lamps").  The nightlights provide soft illumination in the bedroom at night and the table lights provide illumination of an area on a desk or table.  Def.'s SUMF ¶¶ 11–14.  Moreover, the table lamps were sold in the Lighting and Wall Decor department, the same department in which Target sells its floor lamps, novelty lighting, and wall and ceiling lights.  Pl.'s SUMF ¶ 38; Def.'s SUMF ¶¶ 11–12.

The path lights (product category 5) and lanterns (product category 6) similarly fall under this heading because they are lamps used for exterior lighting.  *See* EN 94.05 (listing "street lamps" and "gate or porch lamps").  The path lights illuminate a walking path outside and are sold in one of Target's outdoor living departments—Lawn and Garden.  Def.'s SUMF ¶ 15.  The

---

[10]  String lights are not classified under heading 9505.  Note 1(t) to chapter 95 excludes "Electric garlands of all kinds (heading 9405)" from classification under the festive articles provision of heading 9505.  Note 1(t), Ch. 95, HTSUS (2017).  Note 1(t) was renumbered and changed in 2022 to exclude "Lighting strings of all kinds (heading 9405)."  Note 1(u), Ch. 95, HTSUS.

lanterns also serve to illuminate an external area, including a patio or doorstep, and are also sold in one of Target's outdoor living departments.  Pl.'s SUMF ¶ 52; Def.'s SUMF ¶ 16.

Accordingly, Target's LED lights (product categories 1 through 6) imported during the both the 2013 and 2017 period are all classified as "lamps" of heading 9405, HTSUS.

**III.    Target's LED Lights Are Not Classifiable under Heading 8543 as "Electrical Machine or Apparatus" or under Heading 8539 as "Light-Emitting Diode (LED) Lamps"**

Target's LED lights are also classifiable under heading 9405 because they are lamps "not elsewhere specified or included."  *See* Heading 9405, HTSUS.  An article is "elsewhere specified or included" in the HTSUS if another heading "expressly provide[s]" for that article.  *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992).  Target claims that its merchandise is elsewhere specified or included under heading 8543 as electrical machines or apparatus, for those articles imported before January 1, 2017 (Target's 2013 entries), and under heading 8539 as light-emitting diode lamps, for those articles imported after January 1, 2017 (Target's 2017 entries).  *See* Pl.'s Br. at 14–24, 25–29.  For the reasons below, Target's claimed classification is incorrect.

**A.    The Candles, String Lights, Table Lights, Nightlights, Path Lights, and Lanterns Imported During the 2013 Period Are Not "Electrical Machines or Apparatus" of Heading 8543**

Heading 8543 provides for "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter."  Heading 8543, HTSUS (2013).  Although the tariff schedule does not define "machines" or "apparatus" of heading 8543, the Federal Circuit explained that "the 'terms 'machine' and 'apparatus' generally connote equipment designed specifically to carry out a particular function."  *Gerson* 898 F.3d at 1236 (citing *Webster's New World College Dictionary* 67, 860 (4th ed. 2009) (defining "apparatus" to mean "any complex device or machine for a specific use" and "machine" to mean "a structure

24

consisting of a framework and various fixed and moving parts, for doing some kind of work" and "any device thought of as functioning in such a way, as . . . an electronic computer")). The Explanatory Notes further explain that chapter 85 includes "[c]ertain electrical goods not generally used independently, but designed to play a particular role as components, in electrical equipment," and that heading 8543 covers "[e]lectro-luminescent devices, generally in strips, plates or panels, and based on electro-luminescent substances (e.g., zinc sulphide) placed between two layers of conductive material." EN to Ch. 85; EN 85.39.

The terms of heading 8543 do not cover any of the 6 categories of Target's LED lights imported in 2013. It is fundamental that the terms of the heading must be met before consideration of the subheading. *See Orlando Food*, 140 F.3d at 1440. The Federal Circuit's reasoning in *Gerson*, in which the Court classified battery-powered LED candles as "lamps" of heading 9405 rather than "electrical machines and apparatus" of heading 8543, instructs that Target's lamps are not "machines" or "apparatus" of that heading. *See generally Gerson*, 898 F.3d 1232. In *Gerson*, the Federal Circuit explained that although the LED candles at issue "use[d] electricity to operate and therefore arguably qualif[ied] as 'electrical machines and apparatus' in a 'hyper-technical sense,'" the words "machines" and "apparatus" "generally connote equipment designed specifically to carry out a particular function." *Id.* at 1236. Those terms, therefore, "would seem *not* to cover" LED candles, which are "decorative articles that also serve an illuminative function." *Gerson*, 898 F.3d at 1236. The Federal Circuit further concluded that, if heading 8543's description of "machine" and "apparatus" were broad enough to encompass "lamps," then heading 9405 would be limited to non-electric lamps. *Id.* at 1236–37. That would be a "nonsensical" limitation on heading 9405 not supported by its plain language or its Explanatory Note, given that lamps may be "constituted of *any* material" and use

25

"*any* source of light." *Id.* (quoting Explanatory Note 94.05(I)). The Federal Circuit thus held that the LED candles at issue there were "lamps" of heading 9405, and not "machines" or "apparatus" of heading 8543.

Target nonetheless argues that its LED lights imported during the 2013 period are classified under heading 8543, and more specifically under subheading 8543.70.70, which provides for "electric luminescent lamp." *See* Pl.'s Br. at 25–29. Target's argument fails principally for two reasons. First, Target misconstrues the holding in *Gerson* and the meaning of the term "lamp" in heading 9405. Second, just as the plaintiff in *Gerson*, Target provides a "bottom-up" classification analysis, beginning with a subheading and then proceeding upward to the heading.

Rather than address the *Gerson* decision head-on, Target claims, without citation, that the Federal Circuit's decision stands for the proposition that "where a Chapter Note excludes a named article or class of articles, those named articles must be specifically mentioned in the text of a tariff provision in order for the exclusionary note to be operative." Pl.'s Br. at 25. There is no basis for this extraordinary reading. Contrary to Target's claim, the Federal Circuit in *Gerson* interpreted the scope of heading 8543 by reviewing definitions of "machine" and "apparatus" and "in context of the HTSUS as a whole" *Gerson*, 898 F.3d at 1237–38. The *Gerson* court also looked to the ENs to chapter 85 and 94, noting that chapter 85 covers "[c]ertain electrical goods *not generally used independently*, but designed to play a particular role as components in electrical equipment[.]" *Id.* at 1237.

In doing so, the Federal Circuit in *Gerson* did not violate any canons of statutory interpretation as Target asserts. *See* Pl.'s Br. at 27. To determine whether the subject LED candles were "not elsewhere specified or included" or were precluded from classification in

chapter 94 by note 1(f), the Court was required to determine whether the products fell under

heading 8543.  Classification under the GRIs "must take a 'top-down' approach, beginning, 'as it

must, with the language of the headings,' and ending with the language of the subheadings."  *Id.*

at 1240 (citing *Orlando Food*, 140 F.3d at 1440 ("[W]hen determining which heading is the

more specific, and hence the more appropriate for classification, a court should compare only the

language of the headings and not the language of the subheadings."")).  A court must first

determine, therefore, "whether the merchandise is correctly classified under a particular heading

of the HTSUS."  *Id.*  (citing *Otter Products, LLC v. United States*, 834 F.3d 1369, 1375 (Fed.

Cir. 2016)).  The Federal Circuit explained as follows:

> The reason for this analytic approach is simple—it ensures that the
> more specific subheading characterizations are informed by the
> more general headings in which they appear. Beginning the
> analysis with the subheading, as Gerson urges, would effectively
> divorce the analysis from the necessary context provided by the
> higher-level headings. Further, Gerson's insistence that we
> consider only subheading 8543.70.70 would allow that provision to
> expand the scope of heading 8543, which would correspondingly
> diminish the scope of heading 9405. Such a reading is
> impermissible, as headings are to be evaluated without reference to
> their subheadings, which cannot be used to expand the scope of
> their respective headings.

*Id.* (citations and quotations omitted).

Target's claim that its merchandise is classifiable under subheading 8543.70.70, which

covers "electric luminescent lamps," rests on the very analytical fallacy explicitly rejected by

*Gerson*.  *See* Pl.'s Br. at 26, 28–29.  To determine whether note 1(f) applied, the Court was

required to determine whether the products were classified under chapter 85, and, more

specifically within heading 8543, before proceeding to determine the proper eight-digit

classification.  That is precisely what the Court did in *Gerson*.

The *Gerson* decision's interpretation of the meaning of "electrical machines and apparatus" of heading 8543 is sound, applies directly to the LED candles at issue,[11] and equally applies to the other LED lights imported during the 2013 period. Like the LED candles, the string lights, table lights, nightlights, path lights, and lanterns are all electric lamps that are "self-contained" and "independently used" and fall within heading 9405. *See Gerson*, 254 F. Supp. 3d at 1277; *Gerson*, 898 F.3d at 1239. They are not "electrical goods *not generally used independently*" and are not "designed to play a particular role as components, in electrical equipment." EN to Ch. 85; EN 85.43.

Moreover, as noted in *Gerson*, if one were to read heading 8543 as covering Target's LED lights, heading 8543 "would cover every electric lamp, because all such lamps use electricity to generate light. And, by operation of Note 1(f), such lamps could not be classified under heading 9405." *Gerson*, 898 F.3d at 1237. Classifying the other LED lights under heading 8543 would create the same atextual and unsupported limitation on heading 9405 that *Gerson* rejected, and would be in direct conflict with the list of lamp articles of heading 9405 explicitly noted in the Explanatory Note. Finally, *Gerson* found the argument that subheading 8543.70.70 would be emptied of content and meaning, also advanced by Target in this case, Pl.'s Br. at 28, "both exaggerated and unpersuasive." *Gerson*, 898 F.3d at 1240–41 (citing the EN 85.43(16) and noting that although "those products that would fall within subheading 8543.70.70 are not before us, we are satisfied that the Trade Court's holding leaves ample room in that subheading for certain electric luminescent devices that fall within the scope of heading 8543"); *see* EN 85.43(16) (listing as examples "[e]lectro-luminescent devices, generally in strips, plates,

---

[11] Target concedes that its LED candles cannot be classified under heading 8543 in light of the *Gerson* decision. Pl. Br. at 25, 28.

or panels, and based on electro-luminescent substances (e.g., zinc sulphide) placed between two layers of conductive material")).

Accordingly, Target's candles, string lights, table lights, nightlights, path lights, and lanterns imported during the 2013 period are not classified under heading 8543.

### B.    The String Lights Imported During the 2017 Period Are Not "Light-Emitting Diode (LED) Lamps" of Heading 8539

Target's string lights, imported in 2017 and implicating the change to heading 8539 of the HTSUS, are not LED lamps of heading 8539.  The provision for LED lamps in heading 8539, along with filament and discharge lamps, refers to "various classes of goods that commonly may be described as electric light bulbs[.]"  *Gerson*, 254 F. Supp. 3d at 1279 (citing EN 85.39 (2012)).  The CIT in *Gerson* explained that articles of Chapter 85 "are designed to play a particular role as components, in electrical equipment, e.g., . . . lamps."  While referencing the ENs in effect at the time (before the addition of the "LED lamps" provision), *Gerson* noted that the reference to "lamps" in heading 8539 "encompass[es] what are commonly referred to as 'light bulbs,' including incandescent ('filament') and fluorescent ('discharge') light bulbs."  *Id.* at 1278.  Moreover, elsewhere in the tariff, references to lamps of heading 8539 further suggests that these articles are light bulbs.  *See* Heading 9006 (covering, inter alia, "photographic flashlight apparatus and flashbulbs other than discharge lamps of heading 8539"); Note 1(h) to Ch. 90 (excluding, inter alia, "sealed beam lamp units of heading 8539").

The use of the term "lamp" in heading 8539 to refer to light bulbs is also consistent with the Explanatory Note to heading 8539 issued in 2017, which applies to the HTSUS in effect here. The EN to heading 85.39 (2017), under the caption for LED lamps, states that:

> such lamps consist of a glass or plastic envelope, one or more
> light-emitting diodes (LED), circuitry to rectify AC power and to
> convert voltage to a level useable by the LEDs, and a base (e.g.,

> screw, bayonet or bi-pin type) for fixing in the lamp-holder.
> Certain lamps may also contain a heat sink. These lamps are of
> various shapes, e.g., spherical (with or without a neck); pear or
> onion shaped; flame shaped; tubular (straight or curved); special
> fancy shapes for illuminations, decorations, Christmas trees, etc.

EN 85.39(F) (2017).  The EN description of LED lamps clearly refers to LED bulbs: LED diodes

encased in a "glass or plastic envelope" of traditionally light bulb shapes, such as spherical, pear,

or flame, with a base "for fixing in the lamp-holder."  *See* EN 85.39(F).[12]

Consistent with the decision in *Gerson* and the Explanatory Notes, CBP has explained

that the term "lamp" in heading 8543 is an international term that may be understood as "bulbs"

in the United States.  *See* HQ H301947 (Jan. 15, 2020) (stating that heading 8539 covers

"replacement incandescent or filament bulbs, as well as the next generation of these products,

LED bulbs").  Accordingly, "LED lamps" of heading 8539 are what may commonly be referred

to as LED light bulbs.

The string lights at issue, the only LED lights imported during the 2017 period, are not

light bulbs.  The string lights are complete lighting units, *incorporating light bulbs*, which are

arranged along the length of a copper wiring harness with plastic or rubber sheeting, and contain

---

[12]  The 2022 amendment to subheading 8539.50 does not support plaintiff's claim that the 2017 version of the heading "covered both LED light sources intended for luminaire installation and modular-style LED light sources."  Pl. Br. at 23 n.13.  Rather, in 2022, the WCO added a provision for "LED light source" which would cover both LED modules and LED lamps.  The intent was to create a provision for the LED module, the component that emits light within an LED lamp.  *See* Note 11, Ch. 85, HTSUS (2022) (defining LED modules as "electrical light sources based on light-emitting diodes (LED) arranged in electrical circuits and containing further elements like electrical, mechanical, thermal or optical elements [and] discrete active [and] passive elements . . . for the purposes of providing power supply or power control" and LED lamps as "electrical light sources containing one or more LED modules containing further elements like electrical, mechanical, thermal or optical elements . . . [and] have a cap designed to allow easy installation or replacement in a luminaire and ensure mechanical and electrical contact.").  The definition of LED lamps in the 2022 HTSUS mirrors the definition of LED lamps in the 2017 Explanatory Notes, as does the definition in the 2022 Explanatory Notes.  *See* EN 85.39 (2022).

either an electrical power plug at one end or a battery case. *See* Pl.'s SUMF ¶ 24, 25, Ex. A

Response 4 at 4, Ex. C. The available product descriptions for each of the string lights models

specifically identify the number, type, and color of bulbs used in each string light, and also

describe wire type and color, the power supply mechanism, and other features that make the

article a complete light set of heading 9405. *See* Pl.'s SUMF Ex. C. Target admits that its

imported string lights *contain* LED bulbs but are not bulbs themselves. Pl.'s SUMF ¶ 24.

Because the string lights are not LED bulbs, the string lights are not encompassed by heading

8539 as LED lamps.

Target's argument fails to acknowledge the distinction between lamps of heading 8539

and lamps of heading 9405. Instead, Target provides definitions of the term "lamp," and argues

that such definitions broadly apply to its merchandise. *See* Pl.'s Br. at 19–21. As an initial

matter, merely looking to definitions of "lamp" absent other indications from the HTSUS or

elsewhere is not helpful. The term is provided in both heading 8539 and 9405. The *Collins

Dictionary* definition of "a light that works by using electricity or by burning oil or gas" or

Target's claim that the "common element" in the definitions is that a lamp is "a device that emits

light," Pl.'s Br. at 19, for example, apply to lamps of both heading 8539 and 9405.

Rather, the issue here is the determination of *which* definition of lamp applies to each of

the two uses of that term in the headings of the HTSUS. In that respect, the decisions in *Gerson*,

the structure of the tariff, and the ENs provide better guidance. The *Merriam-Webster

Dictionary*, cited above and by the CIT in *Gerson*, provides two definitions: "a: any of various

devices for producing light or sometimes heat: such as (1): a vessel with a wick for burning an

inflammable liquid (such as oil) to produce light (2): a glass bulb or tube that emits light

produced by electricity (such as an incandescent light bulb or fluorescent lamp) b: a decorative

appliance housing a lamp that is usually covered by a shade." *See Gerson*, 254 F. Supp. 3d at 1275 n.6. This definition reflects both uses of the term reflected in the tariff: light bulbs or similar devices to be incorporated in another machine (heading 8539) and stand-alone illumination devices (heading 9405).

Nevertheless, Target argues that the term "lamp" in the HTSUS "clearly" encompasses not merely light bulbs, but light bulbs in lamp holders connected by wiring and electrical connectors. Pl.'s Br. at 21. But as explained above, light bulbs are classified as lamps of heading 8539 and independent lighting units, or luminaires, like the string lights at issue, are classified in heading 9405. Moreover, the cases cited by Target do not provide a definition of "lamps" for heading 8539 that covers Target's LED lights. Pl.'s Br. at 20–21. On the contrary, they support the Government's position. In *Trijicon v. United States*, the Court considered whether certain tritium-powered gun sights were classified as lamps *of heading 9405*. 686 F. Supp. 3d 1336 (Ct. Int'l Trade 2024). There, the Court concluded that the definition of "lamp" in heading 9405 covered "any of various devices for producing light" and included devices of "any material" that use "any source of light," including gun sights that use beta radiation. *Id.* at 1347. Likewise, in *Primal Lite*, the Court held that string lights—identical to the ones at issue— are classified in heading 9405. 182 F.3d at 1364–65; *cf Trumpf Med. Sys., Inc. v. United States*, 753 F. Supp. 3d 1297, 1309 (Ct. Int'l Trade 2010) (holding that certain surgical lights are classified under heading 9018, as surgical instruments, and not as lamps of heading 9405). Finally, Target's citation to a footnote in the Federal Circuit *Gerson* decision is unavailing. *See* Pl.'s Br. at 24. In a footnote, the Federal Circuit noted that plaintiff had not argued that its LED candles were classified under heading 8539. Target's speculation that Gerson did not make this argument because there was no LED lamp provision in heading 8539 at the time is unavailing.

First, the footnote indicates that note 1(f) may not have been implicated at all by heading 8543, which did not refer to "lamps" in the heading. But the footnote does not open the door to a claim that mere reference to the term "lamp" in heading 8539 is sufficient to classify its string lights under that heading, as explained above. Second, Gerson may have been well aware that heading 8539 covers light bulbs, and not self-contained, complete lighting units.

Similarly, the Customs rulings cited by Target are consistent with the above explanation of the use of the term "lamp" in headings 8539 and 9405, and do not support Target's proffered classification.[13] Pl.'s Br. at 19–22; *compare* New York Ruling (NY) N299720 (Aug. 13, 2018) (classifying Christmas LED replacement bulbs under heading 8539); NY N297843 (June 29, 2018) (classifying an LED light bulb under heading 8539) *with* HQ H024878 (Mar. 31, 2010) (classifying certain light products under heading 9504 because they were "stand-alone illumination devices"); NY N286276 (June 6, 2017) (classifying incandescent string lights under heading 9405); NY N280074 (Oct. 25, 2016) (same); NY N262787 (Apr. 7, 2015) (classifying string lights under heading 9405); HQ H095035 (Mar. 31, 2010) (classifying handlebar LED light sets in heading 9405); HQ H042586 (Jan. 26, 2009) (classifying fiber optic lamps in heading 9405); HQ 966952 (Aug. 18, 2004) (classifying freezable ice cube lights under heading 9405). *But see* HQ H024762 (Feb. 12, 2014) (classifying an LED light bulb in heading 8543; heading 8539 did not provide for LED lamps at that time); HQ H024874 (Mar. 31, 2010) (classifying LED modules in heading 9405 because heading 8541, which provides for light emitting *diodes* does not cover LED modules; heading 8539 did not provide for LED modules at that time).

---

[13] Target cites HQ H254047 (Nov. 4, 2014), but that ruling concerned the classification of chemical compounds.

Accordingly, Target's String Lights imported during the 2017 period are not classified under heading 8539, HTSUS.

**IV.    Target's Artificial Christmas Trees Are "Festive Articles" of Heading 9505**

Although CBP liquidated Target's Christmas trees under heading 9405, these articles are more properly classified under heading 9505, HTSUS, which provides for "[f]estive, carnival, or other entertainment articles," and more specifically under subheading 9505.10.25, which provides for "Articles for Christmas festivities and parts and accessories thereof: . . . Christmas ornaments: . . . Other," duty free.

Classification of merchandise as a "festive article" of chapter 95 "requires that the article satisfy two criteria: (1) it must be closely associated with a festive occasion and (2) the article is used or displayed principally during that festive occasion." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 927 (Fed. Cir. 2003).  To qualify as "festive articles," the item must be "closely associated with a festive occasion" to the degree that "the physical appearance of an article is so intrinsically linked to a festive occasion that its use during other time periods would be aberrant." *Id.*  The term "festive articles" in heading 9505 may also include utilitarian articles.  *Id.* at 927–28.

Target's artificial Christmas trees are shaped like twig Christmas trees.  Although they are less dense than traditional Christmas trees, they otherwise contain features of a traditional pine tree.  There are but few motifs more closely related to the specific festive occasion of Christmas than the Christmas tree.  Moreover, the artificial trees are sold in Target's Christmas holiday department and are only sold seasonally with other assortment of Christmas articles. The Christmas trees may serve the utilitarian function of providing some illumination, but that

function does not remove them from classification within heading 9505.  *See id* at 927.  They thus meet the terms of "festive articles" of heading 9505.[14]

The artificial Christmas trees are further classified under subheading 9505.10.25, HTSUS, as "Articles for Christmas festivities and parts and accessories thereof: . . . Christmas ornaments: . . . Other."  The artificial trees are purely decorative articles for the Christmas holidays and more specifically "Christmas ornament" of subheading 9505.10.25.  *See Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1427–28 (Fed. Cir. 1997) (holding that "Christmas ornaments" are not limited to "Christmas tree ornaments"); *see also Midwest of Canon Falls Inc. v. United States*, 20 C.I.T. 123, 124 (1996), *aff'd in part, rev'd in part*, 122 F.3d 1423 (Fed. Cir. 1997) (defining "ornament" to mean "something that lends grace or beauty: a decorative part or addition" (citing *Webster's Third New International Dictionary* 1592 (Unabridged, 1986)) and as "anything serving to adorn; decoration; embellishment") (citing *Webster's New World Dictionary* 955 (3rd College ed., 1988))).

Accordingly, product category 7, Christmas trees, are neither products of heading 9405, heading 8543, or heading 8539, but are correctly classified as festive articles under subheading 9505.10.25, duty free.

---

[14]    The WCO issued a Classification Opinion classifying an article of plastic made to resemble Santa Claus as a festive article of heading 9505.  The article at issue was illuminated from the inside by 104 LEDs and was designed for outdoor use.  Although the WCO's opinion was adopted in 2024, it reflects the intention of the drafters that festive articles include Christmas decorations that are illuminated with LEDs.

## <u>CONCLUSION</u>

For these reasons, the Court should grant the Government's cross-motion for summary judgment, deny Target's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel:*                                                    /s/ Mathias Rabinovitch
                                                                        MATHIAS RABINOVITCH
VALERIE SORENSEN-CLARK                    Trial Attorney
Office of the Assistant Chief Counsel      U.S. Department of Justice, Civil Division
International Trade Litigation                  Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
                                                                        New York, New York 10278
                                                                        (212) 264-0484
November 7, 2024                                   *Attorneys for Defendant*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

|  |  |  |
|---|---|---|
| | : | |
| TARGET GENERAL MERCHANDISE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Consol. Court No. 15-00069 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **CERTIFICATE OF COMPLIANCE**

I, MATHIAS RABINOVITCH, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief in support of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 10,345 words.

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH