UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

---------------------------------------------------------------------- X
                                                                       :
**TARGET GENERAL MERCHANDISE, INC.**                                   :
                                                                       :
      **Plaintiff,**                     :
                                                                       :
      *v.*                                :    **Consol. Court No. 15-69**
                                                                       :
**UNITED STATES OF AMERICA**                                           :
      **Defendant.**                      :
---------------------------------------------------------------------- :
                                                                       ·X


## PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLANITIFF'S MOTION FOR SUMMARY JUDGMENT


                                         NEVILLE PETERSON LLP
                                         *Counsel for Plaintiff*

                                         John M. Peterson
                                         Richard F. O'Neill
                                         Patrick B. Klein
                                         One Exchange Plaza
                                         55 Broadway, Suite 2602
                                         New York, NY 10006
                                         (212) 635-2730
                                         jpeterson@npwny.com

Dated: February 20, 2025

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT ...................................................................................................................................1

I.    Plaintiff Will Not Oppose Classification of Artificial Christmas Trees in Subheading 9505.10.25, HTSUS. ...........................................................................................................1

II.   Period Two Products are Properly Classified in Subheading 8539.50, HTSUS. .................2

      A.    The Products Fall within the Common Meaning of "Lamp." ..................................3

      B.    The *Gerson* Decision is Irrelevant to Classification of the Articles Imported after Enactment of Subheading 8539.50, HTSUS. ................................................10

      C.    Explanatory Notes Do Not Support the Government Position. ............................12

III.  Period One Products are Properly Classified in Heading 8543.70.70, HTSUS. ...............14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*3V, Inc. v. United States*, 23 C.I.T. 1047 (1999)............................................................................. 2
*Agfa Corp. v. United States*, 520 F.3d 1326 (Fed. Cir. 2008)...................................................... 8, 12
*Airflow Techs, Inc. v. United States*, 35 C.I.T. 1540 (2011)............................................................ 9
*Aromont USA Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012);............................................. 3
*Blue Sky the Color of Imagination, LLC v. United States*, 698 F. Supp. 3d 1243 (Ct. Int'l
  Tr. 2024). ................................................................................................................................ 9, 12
*C.J. Tower & Sons of Buffalo v. United States*, 48 C.C.P.A. 87 (1961). ......................................... 5
*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999).................................................. 4
*Cerwanka v. Department of Veteran's Affairs*, 915 F.3d 1351 (Fed Cir. 2019)............................. 9
*Chemtall, Inc. v. United States*, 878 F.3d 1012 (Fed. Cir. 2017).................................................. 10
*Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5th Cir. 1987)............................................... 14
*Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33 (1948)................................................... 3
*Deckers Outdoor Corp. v. United States*, 714 F.3d 1363 (Fed. Cir. 2013) ............................... 8, 12
*DMV United States v. United States*, 25 C.I.T. 790 (2001). ........................................................... 9
*Dofasco Inc. v. United States*, 31 C.I.T. 1592 (2007).................................................................... 13
*Floral Trade Council v. United States*, 23 C.I.T. 20 (1999)........................................................... 7
*Gerson Co. v. United States*, 898 F.3d 1232 (Fed. Cir. 2018)..................................... 4, 10, 11, 14
*Hy-Glow Co. v. United States*, 58 Cust. Ct. 481 (1967) ................................................................. 5
*ICC Industries, Inc. v. United States*, 812 F.2d 694 (Fed. Cir. 1987)............................................. 7
*Jarvis Clark Inc. v. United States*, 733 F.2d 873 (Fed, Cir. 1984) ................................................. 2
*Kelly v. Robinson*, 479 U.S. 36 (1986) ............................................................................................ 8
*Medellin v. Texas*, 552 U.S. 491 (2008). ......................................................................................... 9
*Midwest of Cannon Falls, Inc.*, 122 F.3d 1423 (Fed. Cir. 1997).................................................... 2
*Mobilite Inc. v. United States*, 70 Cust. Ct. 359 (1973)............................................................... 5, 6
*Nidec Corp. v. United States*, 68 F.3d 1333 (Fed. Cir. 1995)......................................................... 3
*Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183 (Ct. Int'l Tr. 1988)........... 13
*Nootka Packing Co. v. United States*, 22 C.C.P.A. 464 (1935)...................................................... 3
*Norman G. Jensen v. United States*, 84 Cust. Ct. 76 (1980)......................................................... 13
*Outer Circle Products Inc. v. United States*, 602 F. Supp. 2d 1294 (Ct. Int'l Trade 2009). ........... 3
*Park B. Smith Ltd. v. United States,* 347 F.3d 922 (Fed. Cir. 2003)............................................... 2
*Phila. Energy Sols. Refin & Mktg. LLC v. United States*, 89 F.4th 1364 (Fed. Cir. 2024) .......... 13
*Pustet & Co.*, v. United States, 13 Ct. Cust. 530 (1926)................................................................ 13
*Rubin v. United States*, 449 U.S. 424 (1981) .................................................................................. 7
*Russ Berrie & Co. v. United States,* 381 F.3d 1334 (Fed. Cir. 2004)............................................. 2
*Sabritas v. United States*, 22 C.I.T. 59 (1998) ................................................................................ 3
*Second Nature Designs Ltd. v. United States*, 660 F. Supp. 3d 1352 (Ct. Int'l Tr. 2023). ............. 3
*Simko Constr., Inc. v. United States,* 852 F.2d 540 (Fed. Cir. 1988)............................................... 7
*Sorensen v. Sec'y Treasury*, 475 U.S. 851 (1986) ........................................................................ 13
*T.M. Duche & Sons, Inc. v. United States*, 44 C.C.P.A. 60 (1957) ................................................ 3
*Trujicon Inc. v. United States*, 686 F. Supp. 3d 1336 (Ct. Int'l Tr. 2024)................................. 7, 9
*United States v. Borden & Co.*, 308 U.S. 188 (1939).................................................................... 14
*United States v. Bruckmann*, 65 C.C.P.A. 90 (1978)....................................................................... 3

*United States v. Percheman*, 32 U.S. 51 (1833). ................................................................. 9
*Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011) ................................. 15

**Statutes**

19 U.S.C. § 3004 ............................................................................................................. 10
28 U.S.C. § 1581 ............................................................................................................... 1

**Other Authorities**

Cambridge Dictionary, definition of "lamp," dictionary.cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/lamp. .................................... 5
English Oxford Dictionaries, definition of "lamp," en.oxforddictionaries.com. https://en.oxforddictionaries.com/definition/lamp ........................................................ 4
Merriam-Webster Dictionary, definition of "lamp," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/lamp ..................................................... 4
*New York Customs Ruling A8521 of June 12, 1996* ......................................................... 2
*New York Customs Ruling J84198 of Jun 24, 2003* .......................................................... 2
*New York Customs Ruling M86619 of October 24, 2006* ................................................ 2

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 18; .............................................................................................. 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

------------------------------------------------------------------ X
TARGET GENERAL MERCHANDISE, INC.

      **Plaintiff,**

      *v.*                                        Consol. Court No. 15-69

UNITED STATES OF AMERICA
      **Defendant.**
------------------------------------------------------------------ X

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLANITIFF'S MOTION FOR SUMMARY JUDGMENT**

In accordance with Rules 7 and 56 of the Rules of the United States Court of International Trade ("*"USCIT R."*"), plaintiff, Target General Merchandise, ("Target"), hereby responds to the Government's Cross-Motion for Summary Judgment in this consolidated 28 U.S.C. § 1581(a) protest action, and replies in support of Plaintiff's Motion for Summary Judgment. In accordance with USCIT R. 56.3, Plaintiff submits the attached Response to the Defendant's Statement of Material Facts Not in Dispute.

**ARGUMENT**

**I.     Plaintiff Will Not Oppose Classification of Artificial Christmas Trees in Subheading 9505.10.25, HTSUS.**

Plaintiff agrees with the Government's position regarding the classification of certain artificial Christmas trees. In its Cross Motion for Summary Judgment, the Government argues for classification of Target's imported artificial Christmas trees under Subheading, 9505.10.25, HTSUS, a duty-free provision. *See* Government Brief at 34-36. Plaintiff had argued that these products imported from September 7, 2018, through October 12, 2018 ("Period Two") were

classified in subheading 8539.50, HTSUS; and from February 7, 2014, through March 28, 2014 ("Period One"), under subheading 8543.70.70, HTSUS.

Based on the Government's motion for classification under subheading 9505.10.25, HTSUS, a duty-free provision, no further litigation is necessary with respect to the subject product styles in this Category. The conclusion that decorative products which are thematically associated with a festive holiday or occasion should be classified as "festive articles" of Heading 9505, HTSUS, is well-established in this Circuit. *See, e.g., Russ Berrie & Co. v. United States,* 381 F.3d 1334 (Fed. Cir. 2004); *Park B. Smith Ltd. v. United States,* 347 F.3d 922 (Fed. Cir. 2003); *Midwest of Cannon Falls, Inc.*, 122 F.3d 1423 (Fed. Cir. 1997).[1] There is no remaining case or controversy where the parties agree on the classification of the goods, or the dispute is between two tariff items bearing the same rate of duty. *See 3V, Inc. v. United States*, 23 C.I.T. 1047, 1049-1050 (1999).[2] If, after performing the analysis required by *Jarvis Clark Inc. v. United States*, 733 F.2d 873 (Fed. Cir. 1984) the Court agrees with classification of these products under subheading 9505.10.25, HTSUS, it should enter summary judgment for plaintiff on these goods, and direct the entries be reliquidated duty free as "festive articles" of Heading 9505, HTSUS.

II.     **Period Two Products are Properly Classified in Subheading 8539.50, HTSUS.**

Contrary to the Government's arguments, the merchandise from entered in Period Two is properly classified in Subheading 8539.50, HTSUS, which provides for "Electrical filament or

---

[1] Classifying miniature lighted Christmas trees as "festive articles" also comports with numerous well-established Customs rulings. *See, e.g., New York Customs Ruling M86619 of October 24, 2006; New York Customs Ruling J84198 of Jun 24, 2003; New York Customs Ruling A8521 of June 12, 1996*

[2] The lack of constitutional standing noted in the *3V, Inc*. case does not arise here, as plaintiff's Christmas tree products were liquidated under a dutiable provision and assessed with duty.

2

discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof: Light emitting diode lamps." The merchandise is provided for *eo nomine* in Heading 8539, HTSUS. An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known in commerce. *United States v. Bruckmann*, 65 C.C.P.A. 90 (1978). *Eo nomine* designations are to be construed according to their common and commercial meanings, which are presumed to be the same. *Outer Circle Products Inc. v. United States*, 602 F. Supp. 2d 1294, 1306 (Ct. Int'l Trade 2009). Of prime importance here, an *eo nomine* designation, absent contrary legislative intent, is to be interpreted to include all forms of the named article. *Nootka Packing Co. v. United States*, 22 C.C.P.A. 464, 470 (1935); *Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33, 35 (1948); *T.M. Duche & Sons, Inc. v. United States*, 44 C.C.P.A. 60, 63 (1957); *Sabritas v. United States*, 22 C.I.T. 59, 63 (1998); *Aromont USA Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012); *Second Nature Designs Ltd. v. United States*, 660 F. Supp. 3d 1352, 1366 (Ct. Int'l Tr. 2023). The subject LED products are lamps and clearly fall under subheading 8539.50, HTSUS—an *eo nomine* provision for "light-emitting diode" ("LED") lamps. In the absence of a contrary legislative intent, an *eo nomine* provision covers all forms of the article described. *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995). The merchandise from this period is properly classified in subheading 8539.50, HTSUS, as "Light emitting diode (LED lamps)."

    **A.    The Products Fall within the Common Meaning of "Lamp."**

The products imported in Period Two are classified in subheading 8539.50, HTSUS. The Government argues that because plaintiff's lamps are not "electric light bulbs" they should be not be classified in subheading 8539.50, HTSUS. Government's Brief ("Gov.'s. Br.") at 15, ECF 78. However, the Government still argues for the common meaning of the term "lamp" as "devices

3

that provide illumination." Gov. Br. at 22, 28, ECF 78. The Government's proposed definition of "lamps" from *Gerson Co. v. United States*, 898 F.3d 1232 (Fed. Cir. 2018), still supports plaintiff's arguments.

The merchandise at issue falls within the common meaning of the term "lamp." "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The Government puts forth the Cambridge Dictionary definition of lamp as "a device for giving light, especially one that has a covering or is contained within something," and the Merriam Webster definition provides that a lamp is "any of various devices for producing light … such as … a glass bulb or tube that emits light produced by electricity (such as an incandescent light bulb or fluorescent lamp)." Gov. Br. at 19 (dictionary citations omitted). These definitions do not contradict, but rather support plaintiff's arguments.[3]

---

[3] These definitions are supplemented and supported by others. The *Oxford Dictionary* defines "lamp" as:

> a device for giving light, either one consisting of an electric bulb together with its holder and shade or cover or one burning gas or liquid fuel and consisting of a wick or mantle and a class shade.

*See* English Oxford Dictionaries, definition of "lamp," en.oxforddictionaries.com. https://en.oxforddictionaries.com/definition/lamp (last accessed February 20, 2024).

The *Merriam-Webster Dictionary* defines a "lamp" as:

> a. Any of various devices for producing light or sometimes heat; such as:
> 1. A vessel with a wick for burning an inflammable liquid (such as oil) to produce light;
> 2. A glass bulb or tube that emits light produced by electricity (such as an incandescent bulb or fluourescent lamp;
> b. A decorative appliance housing a lamp that is usually covered by a shade.

*See* Merriam-Webster Dictionary, definition of "lamp," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/lamp (last accessed February 20, 2024).

The *Cambridge English Dictionary* defines a "lamp" as "a device for giving light, especially one that has a covering or is contained within something"," providing as examples, "an

4

In its motion for summary judgement, plaintiff Target argued that the common meaning of lamp was as a "light that works by using electricity or by burning oil or gas." Plaintiff's Brief ("Pl.'s Br.") at 19, ECF 73. Plaintiff supported this with the Collins Dictionary definition of lamp and the Merriam Webster definition of the term. *Id.* at 19-20 (dictionary citations omitted). In addition, plaintiff highlighted the administrative definition used by Customs in Rulings of a lamp as a "a device which provides an isolated source of heat or light." *Id.* at 19. All of the above definitions, including the Cambridge and Merriam Webster definitions,[4] leave open the variety of shapes and forms LED "lamps" can be found in. Considering the above-definitions of the term "lamp," all subject LED products, from all categories, are devices that give off light or provide an isolated source of light. Such devices are commonly known and referred to as "lamps," and are therefore provided for *eo nomine* under subheading 8539.50, HTSUS.

In *Mobilite Inc. v. United States*, 70 Cust. Ct. 359 (1973), the Customs Court indicated that the term "lamps" included more than "bulbs." The question presented was whether certain light bulbs packed with lamps, but intended to be sold separately, were classifiable as "entireties." The court noted:

> From plaintiff's undisputed statement of facts, it appears: the bulbs and lamps were packed together when shipped but were unassembled; **the bulbs imported with lamp items 101, 116, 122 and 126, if separately considered, are electric luminescent lamps;** the bulbs imported with lamp items 311 and 313, if separately considered, are electric filament lamps designed for operating at 100 volts or more; the luminescent and filament lamps are standard bulbs, such as are manufactured

---

electric/oil/gas lamp"," a "street lamp" and a "table/bedside lamp"," and further noting that a "lamp" is any of various devices that produce particular types of light. *See* Cambridge Dictionary, definition of "lamp," dictionary.cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/lamp. (last accessed February 20, 2024). Plaintiff's merchandise at bar falls within all of these definitions of the term "lamp"."

[4] Where no commercial designation is established — and none is suggested here — the "common meaning" resolves the definition of a term. In establishing a common meaning, courts turn primarily to lexicons. *See Hy-Glow Co. v. United States*, 58 Cust. Ct. 481 (1967); *see also C.J. Tower & Sons of Buffalo v. United States*, 48 C.C.P.A. 87 (1961).

5

> and merchandised separately in the United States; the bulbs are not specially designed for or dedicated to use with the lamp items enumerated above; lamps (including lampstands) and bulbs of the type involved here are bought and sold as separate articles, and each have separate commercial values.

Thus, the term "lamps," as used in common parlance, encompasses something more than light "bulbs."

Further, in *Mobilite*, the Court noted that when Congress intended to provide for "light bulbs," as opposed to lamps, it knew how to do so, as it did in the Tariff Schedules of the United States ("TSUS"):

> Hence, defendant's position is that both the "*power* source" (lamp) and "illuminating factor" (bulb) comprise an illuminating article and thus are a single entity when imported together.
>
> I am clear that the bulbs are not classifiable with the lamps as entireties. The facts that the bulbs were standard filament and luminescent bulbs, not specially designed for or dedicated to use with the imported lamp that they were the same types of bulbs which were bought and sold in the United States as separate articles having separate commercial values; and that **Congress provided eo nomine for such filament and luminescent bulbs in the tariff schedules**, are persuasive that such bulbs, although packed together and shipped with the lamps, retain their separate tariff identities as filament and luminescent bulbs, and are properly classifiable under the eo nomine provisions claimed by plaintiff. Cf. *Torch Mfg. Co., Inc. v. United States*, 57 Cust. Ct. 521, C.D. 2863 (1966), and cases cited therein; and *Craig Panorama, Inc. v. United States*, 59 Cust. Ct. 97, C.D. 3085 (1967).
>
> Significantly, when Congress intended to make light bulbs dutiable in combination with other articles, it employed appropriate language to express that intent. Thus, under item 688.10, TSUS, Christmas tree lighting sets are dutiable "with or without their bulbs," such bulbs having been otherwise provided for eo nomine under item 686.30, TSUS.

70 Cust. Ct. at 364-365.

Thus, if the drafters of the tariff had intended to limit subheading 8539.50, HTSUS to "Light emitting diode (LED) **bulbs**" they would have done so.

Instead, in using the term "bulbs" with reference to lighting products, the HTSUS defines "bulb" as being the glass envelope in which a light-producing element is placed. *See e.g.,* Heading

6

7010, HTSUS (Glass envelopes (including **bulbs** and tubes), open, and glass parts thereof, without fittings, for electric lamps, cathode-ray tubes or the like"); and subheading 7011.10.10, HTSUS (For electric lighting: **bulbs** for incandescent lamps.[5]).

Indeed, throughout the HTSUS, the term "lamps" includes items which contain more than just the bulb or light source. *See, e.g.,* subheading 8513.10.20, HTSUS: Lamps; flashlights, subheading 8543.70.71, HTSUS: Electric luminescent lamps; Heading 9405, HTSUS: Lamps … including searchlights and spotlights; subheading 9405.20, HTSUS: Electric table, desk bedside or floor-standing lamps. The defendant provides no reason why a similar reading should not be given to the term "lamps" in subheading 8539.50, HTSUS.

It is well-established that the "Court presumes that the same words used twice in the same act have the same meaning. *See ICC Industries, Inc. v. United States*, 812 F.2d 694, 700 (Fed. Cir. 1987); *Floral Trade Council v. United States*, 23 C.I.T. 20, 32 (1999). Here, there is no need or justification for further judicial inquiry that might render the statute in conflict with itself. *Rubin v. United States*, 449 U.S. 424, 430 (1981); *Simko Constr., Inc. v. United States,* 852 F.2d 540, 542 (Fed. Cir. 1988).

The relatively expansive definition of the term "lamps" in the HTSUS was recently noted by this Court in *Trujicon Inc. v. United States*, 686 F. Supp. 3d 1336, 1347 (Ct. Int'l Tr. 2024). The question in *Trujicon* was whether certain "tritium lamps," also known as "tritium sight inserts," used in gun sights, were "lamps" for purposes of the HTSUS. Holding that they were indeed "lamps," the Court said:

> It is clear from the definition of lamp and the description of the subject imports that the subject imports are readily classified as lamps. A lamp is "any of various devices for producing light." Def.'s Ex. 7 (quoting Lamp, WEBSTER'S NEW

---

[5] *See also* subheading 8475.10, HTSUS (Machines for assembling electric or electronic lamps, tubes or flashbulbs, in glass envelopes.).

7

> WORLD COLLEGE DICTIONARY (3d ed. 1988)). It is undisputed that the subject imports produce illumination. Pl.'s SOF ¶ 26; *see* Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant part). The Explanatory Note confirms that lamps "can be constituted of any material … and use any source of light." Def.'s Ex. 8 at XX-9405-1. Thus, a lamp can readily include one that involves beta radiation. It makes no difference that the Explanatory Notes do not specify tritium-powered lamps because the list is exemplary, not exhaustive. Moreover, Trijicon regularly refers to the subject imports as tritium lamps in various documents within the organization and with government agencies. *See* Def.'s Confid. Exs. 2-5, ECF Nos. 32-4, 32-5, 32-6, 32-7. At least one science journal also refers to the item used to illuminate the aiming point of a gun as a "lamp." See Def.'s Ex. 7 (reproducing Gunsights, MCGRAW-HILL ENCYCLOPEDIA OF SCI. AND TECH. at 305 (9th ed. 2002) (". . . the reticle may be illuminated by a small lamp to permit night use."). Meanwhile, Trijicon's averment that the "general public" would not consider the subject imports to be lamps is unsupported. The documented usage of the term "lamp" to describe the subject imports suggests that they meet the "common and commercial meaning[]" of lamps. *See Carl Zeiss* [Inc. v. United States], 195 F.3d [1375] at 1379.

*Id.* at 1347. This Court has thus used lexicons and other sources in determining the common meaning of the term "lamps" as used in the HTSUS. A "lamp" may be "constituted of any material … and use any source of light." *Id.*

The Explanatory Notes to the Harmonized System nomenclature, issued by the World Customs Organization ("WCO"), and WCO decisions, cannot be invoked to overcome the plain meaning of a statutory term. Explanatory Notes are "generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1239 (Fed. Cir. 2008) (citation omitted). However, "[u]nlike Chapter Notes, Explanatory Notes are not legally binding." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n. 1 (Fed. Cir. 2013). The Section and Chapter Notes must be consulted and applied before the Explanatory Notes may be consulted, as must the headings and subheadings of the nomenclature.

As with any other statute, the construction of the HTSUS begins with the language of the statute itself. *Kelly v. Robinson*, 479 U.S. 36, 43 (1986); *Cerwanka v. Department of Veteran's*

*Affairs*, 915 F.3d 1351 (Fed Cir. 2019), *Airflow Techs, Inc. v. United States*, 35 C.I.T. 1540 (2011). The term "lamps" as used in subheading 8539.50, HTSUS, is unambiguous, and its common meaning has already been pronounced in this Court. *See Trujicon, supra*.

The Government relies on the CIT's opinion in the *Gerson* litigation, and, what they refer to as an, "international term" understanding of lamps as light bulbs to support its argument. Gov. Br. at 30. However, these definitions stray from the common and commercial meaning of "lamp." Generally, the "common meaning" of a tariff term is based on the term's understanding in the United States. *DMV United States v. United States*, 25 C.I.T. 790 (2001). On rare occasions, this Court has consulted the use of terms in the French language version of the Harmonized System (one of the nomenclature's two official languages of publication to determine if English and French understandings conform. *See Blue Sky the Color of Imagination, LLC v. United States*, 698 F. Supp. 3d 1243 (Ct. Int'l Tr. 2024). Where the terms conform, that can be helpful to the construction of the statutory term. *See United States v. Percheman*, 32 U.S. 51 (1833). But we aware of no case where a term's foreign or "international" definition which does not conform to the established common meaning of the same term in the United States has been adopted to interpret a tariff term.[6]

The Government's proposed definition of "lamps" from the *Gerson* case still supports plaintiff's arguments. The LED lamps imported after adoption of subheading 8539.50, HTSUS, are properly classified in that subheading.

Finally, we note that Statistical Note 8 to Chapter 85, HTSUS, contains a number of statistical reporting provisions for "lamps" of subheading 8539.50, HTSUS, which are in fact

---

[6] Congress may diverge from the international meaning. Regardless of U.S. treaty obligations, Congress always retains the right to adopt whatever laws it thinks are "necessary and proper." U.S. Const. art. I, § 8, cl. 18; *see also Medellin v. Texas*, 552 U.S. 491, 509 n.5 (2008).

imported in the form of what are commonly referred to as "bulbs." However, it is well-established that statistical headings and notes are not part of the legal text of the HTSUS, and may not be consulted to determine the meaning of Headings and subheadings. Indeed, HTSUS Statistical Note 2 indicates that the legal text of the tariff schedule does not incorporate "statistical suffixes and any article descriptions applicable thereto." The suffixes provide subdivisions for statistical analytical purposes, but are not intended to change the substantive tariff schedule." *See Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017). *See also* 19 U.S.C. § 3004 (c).[7]

### B. The *Gerson* Decision is Irrelevant to Classification of the Articles Imported after Enactment of Subheading 8539.50, HTSUS.

The Government relies heavily on *Gerson* to support its classification of plaintiff's LED lamp entries made in Period Two. The Government argues that "the provision for LED lamps in Heading 8539, HTSUS, along with filament and discharge lamps, refers to "various classes of goods that commonly may be described as electric light bulbs[.]" Gov. Br. at 29. As the Government noted "the CIT in *Gerson* explained that articles of Chapter 85 'are designed to play a particular role as components, in electrical equipment, e.g., … lamps.'" *Id.*[8]  However, as

---

[7] 19 U.S.C. § 3004(c) provides:

**(c) Status of Harmonized Tariff Schedule**

(1) The following shall be considered to be statutory provisions of law for all purposes:

(A) The provisions of the Harmonized Tariff Schedule as enacted by this chapter.

(B) Each statutory amendment to the Harmonized Tariff Schedule.

(C) Each modification or change made to the Harmonized Tariff Schedule by the President under authority of law (including section 604 of the Trade Act of 1974 [19 U.S.C. 2483]).

[8] This is clearly not true in the case of flashlights, with self-contained power sources, of a kind classified in Heading 8513, HTSUS. These devices are obviously more than light "bulbs.".

10

explained above, the enactment of subheading 8539.50, HTSUS, changed this analysis to include the phrase LED lamps *eo nomine* in heading 8539, HTSUS.

The tariff provision at issue for Period Two entries was enacted after the *Gerson* case was already pending this Court and were not at issue in that litigation. The enactment of subheading 8539.50, HTSUS, eliminates the problems the *Gerson* court detected with regard to subheading 8543.70.71, HTSUS. Subheading 8539.50 provides *eo nomine* for "light-emitting diode (LED) lamps," and this subheading is positioned below a four-digit Heading 8539, HTSUS, which also specifies that "LED lamps," are covered within its scope. The appellate court in *Gerson* itself admitted that the availability of a classification in heading 8539 would change its analysis:

> Given that heading 8543 does not refer to "lamps," it is questionable whether the plain language of heading 9405 and chapter 94's Note 1(f)—which each exclude from chapter 94's scope only "lamps" specified elsewhere—preclude classification of Gerson's lamps in heading 9405. In contrast to heading 8543, headings 8513 (certain "[p]ortable electric lamps designed to function by their own source of energy") and 8539 ("[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps") do refer to "lamps." Gerson does not argue on appeal that its candles are classifiable under either of these headings, however.

*Gerson Co.*, 898 F.3d 1237, n.3 (Fed. Cir. 2018). With the enactment of subheading 8539.50, HTSUS, classification thereunder is not dependent on the lamps being considered "electrical machines or apparatus."[9]

The enactment of subheading 8539.50, HTSUS, thus meaningfully changed the classification of LED lighting under the HTSUS. Lamps no longer need to meet the definition of "machines" or "apparatus" to be classified under subheading 8539.50, HTSUS. These lamps are squarely excluded from classification under Chapter 94, HTSUS, by operation of Note 1(f) to

---

[9] Enactment of Heading 8539.50 would also preclude classification of LED lamps under subheading 8543.70.71, HTSUS, since the latter provision only applied to articles not elsewhere described in Chapter 85, HTSUS.

Chapter 94. What remains is a determination of the meaning of the word "lamp" as used in Heading 8539, and in subheading 8539.50 (providing for LED lamps). As explained above, the merchandise entered during Period Two meets the common meaning of LED lamp; and accordingly, the products are properly classified in subheading 8539.50, HTSUS.

### C.  Explanatory Notes Do Not Support the Government Position.

The Government relies on various Explanatory Notes to support its position that the term "lamps" in Heading 8539.50, HTSUS applies to "light bulbs." "Unlike Chapter Notes, Explanatory Notes are not legally binding." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n. 1 (Fed. Cir. 2013). However, Explanatory Notes are "generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1239 (Fed. Cir. 2008).[10] The Government interprets the language of EN 85.39(f) incorrectly. The note provides for:

**(F) LIGHT-EMITTING DIODE (LED) LAMPS**

> The light from these lamps is produced by one or more light-emitting diodes (LED). These lamps consist of a glass or plastic envelope, one or more light emitting diodes (LED), circuitry to rectify AC power and to covert voltage to a level useable by the LEDs, and a base (e.g., screw, bayonet or bi-pin type) for fixing in the lamp-holder. Certain lamps may also contain a heat sink.

---

[10] As noted recently in *Blue Sky the Color of Imagination LLC v. United States*, 698 F. Supp. 3d 1243 (Ct. Int'l Tr. 2024):

> When it implemented the HS into U.S. law, Congress was mindful that the ENs, unlike the HS, were not part of the terms of the Convention's agreement and thus the ENs were not binding on the United States in the same way that the agreement to adopt the HS nomenclature was. See H. R. Rep. No. 100–576, at 549 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1582 ("Although generally indicative of proper interpretation of the various provisions of the Convention, the Explanatory Notes, like other similar publications of the Council, are not legally binding on contracting parties to the Convention. Thus, while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive.").

12

> These lamps are of various shapes, e.g., spherical (with or without a neck); pear or onion shaped; flame shaped; tubular (straight or curved); special fancy shapes for illuminations, decorations, Christmas trees, etc.

EN 85.39(f) indicates that the coverage of the Heading is intended to be broad. Contrary to the Government's position, nowhere does the EN limit the interpretation of LED Lamp to be a light bulb. The drafters of the HTSUS intentionally did not limit Heading 8539.50, HTSUS, to only LED bulbs, but qualified the tariff heading by adding "lamp." Where Congress specifies the things which fall within the scope of an enactment, and fails to include others, the exclusion must be presumed intentional and respected. *See Pustet & Co.*, v. United States, 13 Ct. Cust. 530, 532 (1926); *see also Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183, 1186 (Ct. Int'l Tr. 1988), aff'd, 884 F.2d 1375 (Fed. Cir. 1989). There is no possible reading of the tariff which would permit classification under Heading 8539.50, HTSUS, to be limited to LED bulbs. This *eo nomine* provision reads "lamps" and, absent contrary intent, must be read to include all forms of lamps, as understood in common meaning.

It is a natural presumption that identical words used in different parts of the same law are intended to have the same meaning. *Sorensen v. Sec'y Treasury*, 475 U.S. 851, 860 (1986); *Phila. Energy Sols. Refin & Mktg. LLC v. United States*, 89 F.4th 1364 (Fed. Cir. 2024); *Dofasco Inc. v. United States*, 31 C.I.T. 1592 (2007). The same rule applies to the construction of tariff schedules. *Norman G. Jensen v. United States*, 84 Cust. Ct. 76 (1980). There is no legislative intent for the term "lamp"—as used in subheading 8539.50, HTSUS—to be interpreted more narrowly than in Heading 9405, HTSUS. The merchandise at issue meets the commonly understood definition of lamp and are therefore provided for *eo nomine* under subheading 8539.50, HTSUS.

**III.    Period One Products are Properly Classified in Heading 8543.70.70, HTSUS.**

The products imported in Period One, are classified in subheading 8543.70.70, HTSUS, which provides for:

> 8543    Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof:
>
> ***
>
> 8543.70           Other machines and apparatus:
>
> ***
>
> 8543.70.70           Electric luminescent lamps

The Government argues that Target's products meet the common meaning of lamp, but because they are not "elsewhere specified" in the tariff, they are properly classified in Heading 9405, HTSUS. This argument is incorrect because Target's products are specifically provided for in subeading 8543.70.7070, HTSUS.

The Government argues that plaintiff "misconstrues the holding in *Gerson* and the meaning of the term lamp in heading 9405, HTSUS[,]" and that plaintiff "provides a 'bottom-up' classification analysis, beginning with a subheading and then proceeding upward to the heading." Gov. Br. at 26. This is not the case. However, while we appreciate the precedential and binding impact the Federal Circuit's *Gerson* decision, we believe it was wrongly decided, as it effected a repeal by implication of subheading 8543.70.71, HTSUS, leaving no merchandise classifiable thereunder.

Conflicting statutes should be construed harmoniously, with every provision of both statutes given effect if possible. *United States v. Borden & Co*., 308 U.S. 188, 198 (1939). Where there are two acts upon the same subject, the rule is to give effect to both if possible. *Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5th Cir. 1987). "Repeal by implication" is strongly

14

disfavored. It may only be allowed to occur where a latter statute cannot be construed harmoniously with an earlier statute. *Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011). The statutes can be interpreted harmoniously to include LED lamps in subheading 8543.70.71, HTSUS, while leaving others classified in Heading 9405, HTSUS, and giving full effect to the admonition in Note 1(f) to Chapter 94 that lamps described in Chapter 85 are not to be classified therein.

## CONCLUSION

For the reasons set out herein, plaintiff submits that summary judgment should be entered in its favor and its protest sustained and the Cross Motion for Summary Judgment by the Government should be denied.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff Target General Merchandise Inc.*

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: February 20, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LISA W. WANG, JUDGE**

---------------------------------------------------------------------- X
                                                                       :
**TARGET GENERAL MERCHANDISE, INC.**                                   :
                                                                       :
      **Plaintiff,**                     :
                                                                       :
      *v.*                                :    **Consol. Court No. 15-69**
                                                                       :
**UNITED STATES OF AMERICA**                                           :
      **Defendant.**                     :
---------------------------------------------------------------------- X


## CERTIFICATE OF COMPLIANCE

    Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 4,718 words.

                                            Respectfully submitted,

                                            /s/ Patrick B. Klein
                                            Patrick B. Klein