UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

_____

|  |  |
|---|---|
| | : |
| TARGET GENERAL MERCHANDISE, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Consol. Court No. 15-00069 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

_____ :

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

*Of Counsel:*

VALERIE SORENSEN-CLARK
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MATHIAS RABINOVITCH
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0484
*Attorneys for Defendant*

April 23, 2025

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    THE INTERPRETATION OF THE TERM "LAMP" MUST BE READ IN
CONJUNCTION WITH OTHER PROVISIONS OF THE HTSUS ............................ 2

II.    LAMPS OF HEADING 9405 AND LAMPS OF HEADING 8539 COVER
DIFFERENT PRODUCTS ....................................................................... 4

    A.  The Term "Lamp" Has Two Meanings That Are Reflected in the HTSUS
under Separate Tariff Provisions .............................................................. 4

    B.  The Explanatory Notes Support the Government's Interpretation of the Term
"Lamps" in Headings 8539 and 9405 ........................................................ 7

    C.  Target's Assertions Are Flawed Because They Fail to Recognize the
Distinction in the Use of the Term "Lamp" in Each Tariff Provision ................... 10

    D.  The New Provision for "Light-Emitting Diode (LED) Lamps" in Heading 8539
Does Not Alter the Classification Analysis Because the Distinction Between
Lamps of Chapters 85 and 94 Remains Unchanged .................................... 13

III.    THE INTERPRETATION OF HEADING 8543 IN *GERSON* IS SOUND AND
BINDING ON THIS COURT ................................................................... 15

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Cleaners & Dyers, Inc. v. United States,*
286 U.S. 427 (1933)....................................................................................... 11

*Bausch & Lomb, Inc. v. United States,*
148 F.3d 1363 (Fed. Cir. 1998)................................................................... 2, 3

*General Dynamics Land Systems, Inc. v. Cline,*
540 U.S. 581 (2004)....................................................................................... 11

*Gerson Co. v. United States,*
254 F. Supp. 3d 1271 (Ct. Int'l Trade 2017)
*aff'd* 898 F.3d 1232 (Fed. Cir. 2018) .....................................................*passim*

*King v. Burwell,*
576 U.S. 473 (2015)......................................................................................... 3

*La Crosse Technology, Ltd. v. United States,*
723 F.3d 1353 (Fed. Cir. 2013)...................................................................... 3

*Mobilite Inc. v. United States,*
10 Cust. Ct. 359 (1973).................................................................................. 12

*Nidec Corp. v. United States,*
68 F.3d 1333 (Fed. Cir. 1995)....................................................................... 11

*Orlando Food Corp. v. United States,*
140 F.3d 1437 (Fed. Cir. 1998)...................................................................... 3

*Pomeroy Collection, Ltd. v. United States,*
559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) ............................................... 9

*RKW Klerks Inc. v. United States,*
592 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ......................................... 3, 11

*Robinson v. Shell Oil Co.,*
519 U.S. 337 (1997)....................................................................................... 11

*Trijicon Inc. v. United States,*
686 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) ............................................. 12

**Harmonized Tarriff Schedule Of The United States**

General Rule of Intepretation 1..................................................................................................11, 16

General Rule of Interpretation 3 ..............................................................................................11

**Chapter 85**

Heading 8539 ......................................................................................................................*passim*

Subheading 8539.50.................................................................................................................13

EN 85.39 (2012)................................................................................................................7, 14

EN 85.39 (2017)................................................................................................................7, 14

EN 85.39(F) ...............................................................................................................7, 8, 9, 10

Heading 8543 .......................................................................................................2, 3, 15, 16

Subheading 8543.70.70.........................................................................................3, 15, 16

EN 85.43(16)...........................................................................................................................16

**Chapter 94**

Heading 9405 ....................................................................................................................*passim*

EN 94.05(I) .......................................................................................................................9, 10

Note 1 (f)..........................................................................................................2, 3, 13, 15

**Chapter 95**

Heading 9505

Subheading 9505.10.25................................................................................................. 1

## Other Authorities

A Guide to the Harmonized Tariff Schedule (HTS) of the United States: Purpose of the
HTS, U.S. International Trade Commission,
https://learning.usitc.gov/hts-guide/#/lessons/5kiXmXPbgruFfnpCpdpg-1gkCkaQ3c6 ............ 11

About the IES: The Lighting Authority,
IES.org, https://www.ies.org/about ................................................................................. 5

About Us: Advancing Knowledge and Providing Standardization to Improve the Lighted
Environment, The International Commission on Illumination (CIE)
https://cie.co.at/about-cie ............................................................................................... 6

Arc Lamp, Encyclopedia Britannica,
https://www.britannica.com/ technology/arc-lamp ...................................................... 14

Bulb, The Lighting Library (IES),
https://www.ies.org/definitions/bulb ................................................................................. 9

Bulb Shapes and Sizes, Lightopedia,
https://www.lightopedia.com/bulb-shapes-sizes ........................................................... 8

Cap, International Lighting Vocabulary (CIE),
https://cie.co.at/eilvterm/17-28-015 ............................................................................... 6

Electric Discharge Lamp, Encyclopedia Britannica,
https://www.britannica.com/technology/electric-discharge-lamp ............................... 14

Electric Lamp, International Lighting Vocabulary (CIE)
https://cie.co.at/eilvterm/17-27-008 ............................................................................... 6

Energy Star Program Requirement Product Specification for Lamps (Light Bulbs),
https://www.energystar.gov/sites/default/files/Lamps%20Version%202.0%20Updated%20Spec.
pdf ..................................................................................................................................... 8

Filament Lamp, Encyclopedia Britannica,
https://www.britannica.com/technology/ filament-lamp .......................................... 14

Lamp, American Heritage Dictionary of the English Language,
available at https://www.thefreedictionary.com/LAMPS .............................................. 5

Lamp, Collins Dictionary,
https://www.collinsdictionary.com/us/dictionary/english/lamp ............................. 5, 13

Lamp, DarkSky,
https://darksky.org/resources/glossary .......................................................................... 5

Lamp, Merriam-Webster Dictionary,
merriam-webster.com/dictionary/lamp ................................................................ 4, 13

Lamp, The Lighting Library (IES),
https://www.ies.org/definitions/lamp ...................................................................... 5

Lamp Size Reference, Lightopedia,
https://www.lightopedia.com/lamp-size-reference ................................................. 8

LED, Encyclopedia Britannica,
https://www.britannica.com/technology/LED ...................................................... 14

LED lamp non-integrated, The Lighting Library (IES),
https://www.ies.org/definitions/led-lamp-non-integrated .................................... 9

LED Luminaire, The Lighting Library (IES),
https://www.ies.org/definitions/led-luminaire .................................................... 10

Light Bulb, Cambridge English Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/light-bulb .............................. 7

Light Bulb, Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/light%20bulb ..................................... 8

Light Bulb, Oxford English Dictionary,
https://www.oed.com/dictionary/light-bulb_n? ......................................................... 8

Luminaire, The Lighting Library (IES),
https://www.ies.org/definitions/luminaire .......................................................... 6, 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

_____

|                                              |   |                          |
|----------------------------------------------|---|--------------------------|
| TARGET GENERAL MERCHANDISE, INC.,            | : |                          |
|                                              | : |                          |
|                    Plaintiff,                | : |                          |
|                                              | : |                          |
|                    v.                        | : | Consol. Court No. 15-00069 |
|                                              | : |                          |
| UNITED STATES,                               | : |                          |
|                                              | : |                          |
|                    Defendant.                | : |                          |
|                                              | : |                          |

_____

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), submits this reply memorandum in

opposition to plaintiff's, Target General Merchandise, Inc. (Target), motion for summary

judgment and in further support of our cross-motion for summary judgment.

**INTRODUCTION**

As more fully set forth in our cross-motion for summary judgment, this consolidated

action concerns U.S. Customs and Border Protection (CBP)'s classification of a variety of light-

emitting diode (LED) lights imported by Target under heading 9405 of the Harmonized Tariff

Schedule of the United States (HTSUS).  Target imported six categories of LED lights in 2013

and 2017.[1]  The parties do not dispute what the categories of merchandise are or how they

function.  Rather, there are two classification disputes that this Court must decide.

_____

[1]  The first six categories of imported merchandise contain various types of illuminating
devices: electric candles (category 1), string lights (category 2), table lights (category 3),
nightlights (category 4), path lights (category 5), and lanterns (category 6).  The seventh category
contains artificial Christmas trees, which the parties agree are classifiable as festive articles of
subheading 9505.10.25, HTSUS, duty free.  *See* Defendant's Cross-Motion for Summary
Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 78
*(cont'd)*

The first dispute, for Target's merchandise entered in 2017, centers on the meaning of the term "lamp" as used in heading 8539, HTSUS, which provides for light-emitting diode lamps, and in heading 9405, HTSUS, which provides for lamps and lighting fittings.  Target's LED lights are not "lamps" of heading 8539, which refers to light sources used as components in electrical equipment—what are commonly referred to as light bulbs.  Rather, Target's products are stand-alone items that fall within "lamps" of heading 9405.  This is further supported by note 1(f) to chapter 94, which explicitly states that products covered by chapter 94 are not covered by chapter 85.  *See* Note 1(f), Ch. 94, HTSUS (2013 & 2017).

The second dispute, for Target's merchandise entered in 2013, considers classification under heading 9405 as lamps versus heading 8543 covering electrical machines and apparatus. The decisions in *Gerson Co. v. United States*, 254 F. Supp. 3d 1271 (Ct. Int'l Trade 2017), *aff'd*, 898 F.3d 1232 (Fed. Cir. 2018), settle this question as *Gerson* held that LED lights were correctly classified as lamps of heading 9405.

We provide a fulsome discussion of these issues below.

## ARGUMENT

## I.    THE INTERPRETATION OF THE TERM "LAMP" MUST BE READ IN CONJUNCTION WITH OTHER PROVISIONS OF THE HTSUS

In a classification case, the "ultimate question" is "whether the merchandise is properly classified under one *or another* classification heading."  *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (emphasis added).  A classification dispute is thus one "over which of two or more tariff classifications particular merchandise falls under."  *Id.*

---

(Nov. 7, 2024) ("Gov. Br."); Plaintiff's Response to Defendant's Cross Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment, ECF No. 85 (Feb. 20, 2025) ("Pl. Resp. Br.").

Therefore, the Court's task is to compare and decide which of two or more provisions is the more appropriate for classification of merchandise, using the General Rules of Interpretation (GRIs). *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). In doing so, the Court may rely on its "own understanding of terms or consult dictionaries, encyclopedias, scientific authorities, and other reliable information." *RKW Klerks Inc. v. United States*, 592 F. Supp. 3d 1349, 1354 (Ct. Int'l Trade 2022). Moreover, tariff provisions "do[] not exist in a vacuum, and [] must be read in conjunction with other relevant provisions to discern its meaning." *Gerson Co. v. United States*, 898 F.3d 1232, 1236–37 (Fed. Cir. 2018) (citing *La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353, 1361 (interpreting headings "together and viewed in light of their respective Explanatory Notes") and *King v. Burwell*, 576 U.S. 473, 486 (2015) ("[O]ftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . [W]e must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions.") (citations and internal quotation marks omitted)).

Here, there are two headings from the 2017 HTSUS that provide for "lamps"—in heading 8539 (LED lamps) and heading 9405 (Lamps and lighting fittings).[2] Significantly, note 1(f) to chapter 94 excludes lamps specified elsewhere and demonstrates that lamps of chapter 85 cannot fall within chapter 94. Accordingly, the Court must determine the meaning of each provision

---

[2] Although subheading 8543.70.70, HTSUS, provides for electric luminescent lamps, the subheading is found under heading 8543, which provides for electrical machines and apparatus, not elsewhere specified or included. As discussed in the following section, plaintiff claims that its merchandise entered in 2013 falls under subheading 8543.70.70. For the reasons stated in our cross-motion and in this reply, plaintiff erroneously compares tariff provisions at different hierarchical levels. *See Gerson*, 898 F.3d at 1240. Therefore, the meaning of the term "lamps" in subheading 8543.70.70 is not at issue.

individually as a matter of law. *Bausch & Lomb*, 148 F.3d at 1365. Only then can the Court determine whether the subject merchandise falls under heading 8539 or heading 9405.

Target's position is flawed because it interprets heading 8539 in a vacuum, without consideration of any other tariff provision and their place in the overall scheme of the HTSUS. Plaintiff has merely identified a provision for "lamps" in heading 8539, supported its interpretation of that term with dictionary definitions, and simply ended its inquiry. Plaintiff even identifies other headings that include the term lamp, including heading 9405, *see* Pl. Resp. Br. 7, but makes no attempt to explain the meaning of "lamp" in heading 9405 or to explain why its merchandise does not fall under that heading. Indeed, plaintiff's entire common-meaning argument applies equally to the term "lamp" in heading 9405 as it would to the term "lamp" in heading 8539. *See* Pl. Resp. Br. 3–10. However, as discussed below, the term "lamp" in the headings at issue cover different products. Thus, it is not a question of whether the subject merchandise meets a definition for the term "lamp." It is whether the subject merchandise appropriately falls within one tariff provision for lamps (heading 9405) or the other (heading 8539).

## II.    LAMPS OF HEADING 9405 AND LAMPS OF HEADING 8539 COVER DIFFERENT PRODUCTS

As discussed in our cross-motion and further below, Target's LED lights fall within the tariff provision for lamps of heading 9405 and not lamps of heading 8539.

### A.    The Term "Lamp" Has Two Meanings That Are Reflected in the HTSUS under Separate Tariff Provisions

The tariff term "lamp" carries two meanings: (1) a device for providing light, such as a light-emitting glass bulb or tube and (2) a decorative appliance housing a lamp that is usually covered by a shade. *See* lamp, *Merriam-Webster Dictionary*, merriam-

webster.com/dictionary/lamp (last accessed Apr. 23, 2025); Pl. Resp. Br. 4 (relying on the

*Merriam-Webster Dictionary* definition).  Other dictionaries similarly provide two definitions of

the term.  *See* lamp, *American Heritage Dictionary of the English Language*, available at

https://www.thefreedictionary.com/LAMPS (last accessed April 23, 2025) ("a. An electric

device having a socket for a light bulb, especially a free-standing piece of furniture. . . . c. A light

bulb"); lamp, *Collins Dictionary*, https://www.collinsdictionary.com/us/dictionary/english/lamp

(last accessed Apr. 23, 2025) ("2. any of various devices for producing light or heat, as an

electric light bulb or a gas jet[;] 3. a holder, stand, or base for such a device").

The difference in the meaning of lamp is apparent in technical and scientific authorities,

which differentiate the term "lamps" for light-emitting devices (such as light bulbs) and "lamps"

for standalone illumination appliances.  For example, the Illuminating Engineering Society

(IES)[3] defines a lamp as a "generic term for a manufactured source created to produce optical

radiation" and notes that:

> [t]hrough popular usage, a portable luminaire consisting of a lamp
> with shade, reflector, enclosing globe, housing, or other accessories
> is also called a "lamp."  In such cases, in order to distinguish
> between the assembled unit and the light source within it, the latter
> is often called a "bulb" or "tube," if it is electrically powered.  [See
> also *luminaire (light fixture)*.].

*See* lamp, *The Lighting Library (IES)*, https://www.ies.org/definitions/lamp (last accessed Apr.

23, 2025) (italics in original).  Other lexicographic sources also identify the distinction in the two

---

[3]  "Established in 1906, the Illuminating Engineering Society is the recognized technical
and educational authority on illumination. . . . Through [its] American National Standards
Institute (ANSI) accredited process, [the IES] publish[es] and maintain[s] the Lighting Library,
with over 100 standards written by subject matter experts in our technical committees."  About
the IES: The Lighting Authority, IES.org, https://www.ies.org/about (last accessed Apr. 23,
2025).  The IES "defines illumination engineering terms in ANSI/IES LS-1-22," *i.e.*, the
Lighting Library, which is available online at https://www.ies.org/standards/definitions.

uses of the term "lamp." *See, e.g.*, lamp, *DarkSky*, https://darksky.org/resources/glossary ("The source of light in an electric light fixture or luminaire. To be distinguished from the whole assembly (see luminaire). *Lamp* often is used to denote the bulb and its housing.") (italics in original).

As noted, the term "lamp" is also commonly defined as a standalone illumination appliance, sometimes referred to as "luminaire." The IES defines a luminaire as a "complete lighting unit consisting of a light source(s) and ballast(s) or driver(s) (when applicable), together with the parts designed to distribute the light, to position and protect the light source(s), and to connect the light source(s) to the power supply." *See* luminaire, *The Lighting Library (IES)*, https://www.ies.org/definitions/luminaire (last accessed Apr. 23, 2025). The International Commission on Illumination, another reliable technical and scientific authority,[4] makes clear that the technical term "lamp" means the light source that is then fixed to a light fixture with a cap or base. *See* electric lamp, *International Lighting Vocabulary (CIE)*, https://cie.co.at/eilvterm/17-27-008 (defining a lamp as a "light source provided with at least one cap") (last accessed Apr. 23, 2025); *see also* cap, *International Lighting Vocabulary (CIE)*, https://cie.co.at/eilvterm/17-28-015 (last accessed Apr. 23, 2025) (a cap, or base, is "part of an electric lamp which provides connection to the power supply by means of a lampholder or lamp connector[.]").

---

[4] The International Commission on Illumination (CIE, from its French title), founded in 1913, is an independent, professional organization that is "devoted to worldwide cooperation and the exchange of information on all matters relating to the science and art of light and lighting, colour and vision, photobiology and image technology." About Us: Advancing Knowledge and Providing Standardization to Improve the Lighted Environment, CIE.co.at, https://cie.co.at/about-cie (last accessed Apr. 23, 2025). The CIE has "been accepted as representing the best authority on the subject and as such is recognized by ISO [the International Organization for Standardization] as an international standardization body." *Id.* The CIE publishes the international standard "CIE S 017:2020 ILV: International Lighting Vocabulary," available at https://cie.co.at/publications/ilv-international-lighting-vocabulary-2nd-edition-0.

There are thus two uses of the term "lamp." The first refers to a device that provides light (such as a light bulb or gas tube that contains a light source) and the second refers to a standalone, portable, or decorating lighting unit that typically consist of a light source (which itself might be a light bulb or tube), structural support for the light source, and a shade or diffuser. The latter is often defined in technical and scientific literature as a luminaire. As we explained in our cross-motion, the first sense of the term "lamp" is provided in heading 8539, a provision in chapter 85 that covers "electrical machinery and equipment and parts thereof." *See* Ch. 85, HTSUS. The second sense is provided in heading 9405, a provision in chapter 94 that covers "lamps and lighting fittings" along with "bedding," "mattresses," and other household furnishings. *See* Ch. 94, HTSUS. Therefore, a standalone lamp (*i.e.,* a luminaire) can also contain an electric lamp (*i.e.,* a light bulb, tube, or other light source).

## B. The Explanatory Notes Support the Government's Interpretation of the Term "Lamps" in Headings 8539 and 9405

Contrary to plaintiff's argument, *see* Pl. Resp. Br. 12–13, our interpretation of the two meanings of "lamp" is entirely consistent with the Explanatory Notes and further supports classification of Target's products in heading 9405. According to the ENs, the lamps of heading 8539 cover what are generally referred to as light bulbs, while the lamps of heading 9405 cover standalone illuminated appliances, consistent with the two meanings of "lamp."

The ENs describe the merchandise classified in heading 8539 as "[e]lectric light lamps consist[ing] of glass or quartz containers, of various shapes, containing the necessary elements for converting electrical energy into light rays." *See* EN 85.39 (2012 & 2017). The EN further describes an LED lamp as consisting of "a glass or plastic envelope, one or more [LEDs], circuitry to rectify AC power [for use with the LEDs], and a base . . . for fixing in the lamp-holder." *See* EN 85.39(F).

7

This description comports with definitions of light bulbs. *See* light bulb, *Cambridge English Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/light-bulb ("[A] glass or transparent container, usually rounded, with something inside that produces light when an electric current passes through it, such as an electric filament (= a thin thread of metal) or an LED (= an electronic device).") (last accessed Apr. 23, 2025); *see also* light bulb, *Oxford English Dictionary*, https://www.oed.com/dictionary/light-bulb_n? ("Originally: a glass bulb containing a wire filament inside a vacuum or inert gas, designed to provide light when electricity is passed through the filament to make it incandescent, typically by inserting it into a socket through which current is supplied. Now also: any of several similar compact devices designed to produce light when an electric current is applied.") (last accessed Apr. 23, 2025); light bulb, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/light%20bulb ("[A]n electric lamp: such as a.: one in which a filament gives off light when heated to incandescence by an electric current . . . c.: one using LEDs to generate light.") (last accessed Apr. 23, 2025).

The EN also describes lamps of heading 8539 as having various shapes: spherical, pear, onion, flame, tubular, or special fancy shapes. *See* EN 85.39(F). These enumerated shapes match ANSI standardized shapes for light bulbs: A series (standard/pear), PS series (pear), G series (globe/spherical), CA series (candle), F series (flame), and T series (tubular). *See* Lamp Size Reference, *Lightopedia*, https://www.lightopedia.com/lamp-size-reference (last accessed Apr. 23, 2025); Bulb Shapes and Sizes, *Lightopedia*, https://www.lightopedia.com/bulb-shapes-sizes (last accessed Apr. 23, 2025); *see also* Energy Star Program Requirement Product Specification for Lamps (Light Bulbs), *Energy Star*, https://www.energystar.gov/sites/default/files/Lamps%20Version%202.0%20Updated%20Spec.pdf (last accessed Apr. 23, 2025).

Moreover, technical and scientific authorities also use the term "lamp" to refer to what are commonly called light bulbs.  For example, the IES definition of a light bulb redirects the reader to the term for lamp.  *See* bulb, *The Lighting Library (IES)*, https://www.ies.org/definitions/bulb (last accessed Apr. 23, 2025).  The IES then defines an LED lamp as "an assembly composed of a light emitting diode (LED) array (module) or LED packages (components), and an ANSI standard base. The device is intended to connect to the LED driver of an LED luminaire through an ANSI standard lamp-holder (socket)."  LED lamp non-integrated, *The Lighting Library (IES)*, https://www.ies.org/definitions/led-lamp-non-integrated (last accessed Apr. 23, 2025); *cf.* EN 85.39(F) (2017).  In addition, an LED lamp "cannot be connected directly to the branch circuit."  *Id.*  In other words, the article connects to a lamp holder or other device, and not directly into an outlet.

Conversely, the Explanatory Note to heading 9405 describe "lamps" of heading 9405 as encompassing standalone illuminated appliances.  That EN describes the categories of articles of heading 9405 as "Lamps and lighting fittings normally used for the illumination of rooms," "Lamps for exterior lighting," "Specialised lamps" (including string lights), "Lamps and lighting fittings for vehicles of Chapter 86, for aircraft or for ships or boats," "Portable Lamps," and "Candelabra."  EN 94.05(I).  The EN specifically identify table lamps, desk lamps, night lamps, porch and gate lamps, and electric garlands (string lights) as falling under heading 9405.  *Id.*; *see also Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1386 (Ct. Int'l Trade 2008) (noting that heading 9405 also covers "candle holders and candle lamps").  These descriptions are in line with what technical and scientific sources refer to as a luminaire.  *See* luminaire, *The Lighting Library (IES)*, https://www.ies.org/definitions/luminaire ("A complete lighting unit consisting of a light source(s) . . . together with the parts designed to distribute the

light, to position and protect the light source(s), and to connect the light source(s) to the power supply.") (last accessed Apr. 23, 2025); *see also* LED luminaire, *The Lighting Library (IES)*, https://www.ies.org/definitions/led-luminaire ("A complete lighting unit consisting of light emitting diode (LED)-based light emitting elements[.]  The LED-based light emitting elements may take the form of . . . LED lamps.  The LED luminaire is intended to connect directly to a branch circuit.") (last accessed Apr. 23, 2025).  The Explanatory Notes therefore track the two meanings of the term "lamp" discussed above.[5]

Here, none of Target's imported LED lights fit within the Explanatory Note description of an LED lamp of heading 8539.  The LED lights are not glass or plastic envelopes of various shapes that contain a light source and a base for screwing into a lamp holder.  *See* EN 85.39(F).  Rather, Target's products are standalone lamps or lighting fittings that *contain* LED lamps or LED modules.  In other words, Target's products are complete lighting units.  Such standalone illumination appliances fall within the article description of the Explanatory Note to heading 9405, as string lights, table lamps, desk lamps, night lamps, porch and gate lamps, etc.  *See* EN 94.05(I).  Accordingly, Target's products correctly fall within heading 9405, as described by the ENs.

## C.    Target's Assertions Are Flawed Because They Fail to Recognize the Distinction in the Use of the Term "Lamp" in Each Tariff Provision

Having established that there are two meanings for "lamp," Target erroneously argues that identical words in different parts of the same statute bear the same meaning.  *See* Pl. Resp. Br. 7, 13.  While this general presumption may be valid in certain situations, the presumption is

---

[5]  To clarify the distinction between lamps of heading 8539 and 9405, the WCO amended the HTS in 2022 to provide for "Luminaires and lighting fittings" in heading 9405, which more technically describes decorative appliances that provides illumination.  *See* Heading 9405, HTSUS (2022).

not rigid, and "readily yields when there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1933); *see e.g.*, *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 594–95 (2004) (word "age" means "old age" when included in the term "age discrimination" in the Age Discrimination in Employment Act even though it is used in its primary sense elsewhere in the act); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342–43 (1997) (holding that the term "employees" means only current employees in some sections of Title VII of Civil Rights Act, but in other sections includes former employees based on the context). This is the case here, where the term "lamp" is used to describe two different products covered by different chapters of the HTSUS.

Similarly, this Court should reject Target's assertion that "lamp" in heading 8539 is an *eo nomine* term that encompasses all forms of the article. *See* Pl. Resp. Br. 3–5. Although in general usage a term may carry more than one meaning, an *eo nomine* term in the tariff intends to apply only to one product (or only to a class of products).[6] *See Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995) ("[A]n *eo nomine* provision "describes a commodity by a specific name, usually one common in commerce."); *see also* A Guide to the Harmonized Tariff Schedule (HTS) of the United States: Purpose of the HTS, U.S. International Trade Commission, https://learning.usitc.gov/hts-guide/#/lessons/5kiXmXPbgruFfnpCpdpg-1gkCkaQ3c6- ("The HTS is designed so that each article falls into only one category.") (last accessed Apr. 23, 2025).

---

[6] Plaintiff has not argued that its lamps are *prima facie* classifiable under both headings 8539 and heading 9405 under General Rule of Interpretation 3. Regardless, as we explained in our cross-motion for summary judgment, classification of Target's LED lights can be resolved by GRI 1. *See RKW*, 592 F. Supp. 3d at 1354–5 ("The HTSUS is designed so that most classification questions can be answered by GRI 1."). In any case, GRI 3 only applies when the article description of two headings equally describes the subject merchandise. Here, the article description for "LED lamps," when properly construed, does not cover Target's LED lights.

Because the term "lamp" is used in two headings of the HTSUS to cover two different products, the term "lamp" cannot be an *eo nomine* term that carries the same meaning in both headings, or two meanings in one heading.

Historically, this distinction between the two different types of products has been true since at least the Tariff Schedule of the United States (TSUS). This is evident from the decision in *Mobilite Inc. v. United States*, 10 Cust. Ct. 359 (1973), which plaintiff misconstrues to support its argument. *See* Pl. Resp. Br. 5–6. In *Mobilite*, the issue was whether certain lamps and bulbs were classified as an entirety or under separate provisions of the TSUS. *See Mobilite*, 10 Cust. Ct. at 359, 363. The court held that the two items were classified separately, classifying the *bulbs* under the provision for "[e]lectric filament lamps and . . . [e]lectric luminescent lamps" and the *lamps* under the provision for "[i]lluminating articles." *See id.* at 364–65. Contrary to plaintiff's argument, the decision in *Mobilite* regarding the TSUS further supports the Government's position.

Plaintiff's analysis of *Trijicon Inc. v. United States*, 686 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) is equally unpersuasive. *See* Pl. Resp. Br. 7. Plaintiff highlights that the court in *Trijicon* noted a relatively expansive definition of the term "lamps," relying on a definition of the term that describes a lamp as "any of various devices for producing light" and an Explanatory Note that describes a lamp as "constituted of any material . . . and use any source of light." *Trijicon*, 686 F. Supp. 2d at 1347; Pl. Resp. Br. 7–8. But the court there was interpreting the provision for "lamps" in heading 9405, and the Explanatory Note to heading 9405, not heading 8539. Thus the "expansive" interpretation of the tariff term for "lamps" does not apply to lamps of heading 8539.

Indeed, plaintiff's expansive and uniform interpretation of the term "lamp," citing definitions from the *Merriam-Webster* and *Collins* Dictionaries, taken to its logical conclusion, would lead to absurd results.  *See* Pl. Resp. Br. 4–5 (arguing that lamps are any "devices that give off light or provide an isolated source of light").  As we explained above, note 1(f) to chapter 94 excludes from that chapter lamps specified elsewhere.  If the term "lamp" anywhere in the tariff bears the same meaning, as plaintiff suggests, note 1(f) to chapter 94 would exclude all lamps from heading 9405, despite the fact that the heading explicitly covers "lamps."  Therefore, this Court cannot, as plaintiff has, ignore the multiple meanings of the term "lamp" in lexicographic sources and in the HTSUS.

### D.    The New Provision for "Light-Emitting Diode (LED) Lamps" in Heading 8539 Does Not Alter the Classification Analysis Because the Distinction Between Lamps of Chapters 85 and 94 Remains Unchanged

Despite the reference of "lamp" to two distinct products falling within different tariff provisions, Plaintiff next argues that *Gerson*'s holding is irrelevant as a result of the 2017 amendment to heading 8539 that added a provision for LED lamps.  *See* Pl. Resp. Br. 10–12.  Specifically, plaintiff claims that the "enactment of subheading 8539.50, HTSUS, meaningfully changed the classification of LED lighting under the HTSUS."  Pl. Resp. Br. 11.  Plaintiff asserts that the change alters the classification analysis of the merchandise in *Gerson*—and the merchandise at issue here—such that they are now included in the phrase "LED lamps" of heading 8539, HTSUS.  *Id.*  But the addition of the "LED lamps" provision in heading 8539 made no such change.  Both before and after the 2017 amendment, articles classified in heading 8539 cover what are commonly referred to as light bulbs.

As the Court in *Gerson* held in interpreting heading 8539, lamps of that heading include "various classes of goods that commonly may be described as electric light bulbs."  254 F. Supp. 3d at 1279; *see also id.* at 1278 (stating that the provision covers incandescent and fluorescent

light bulbs); *Gerson*, 898 F.3d at 1239 (affirming the CIT's decision that the LED candles were classified under heading 9405 and finding its analysis "proper"). At the time of the *Gerson* decision, heading 8539 covered filament, discharge, and arc lamps. These lamps differ in their source of illumination. Similarly, an LED lamp simply describes another source of illumination but does not change the category of "lamp" covered by chapter 85.

To compare the items of heading 8539, a filament lamp operates by means of a "fine electrical conductor heated by the passage of current," which emits light. *See* filament lamp, *Encyclopedia Britannica*, https://www.britannica.com/technology/filament-lamp (last accessed Apr. 23, 2025). A discharge lamp emits lights by means of a gas that is "energized by an applied voltage[.]" *See* electric discharge lamp, *Encyclopedia Britannica*, https://www.britannica.com/ technology/electric-discharge-lamp (last accessed Apr. 23, 2025). And an arc lamp produces light "by maintaining an electric arc across a gap between two conductors[.]" *See* arc lamp, *Encyclopedia Britannica*, https://www.britannica.com/ technology/arc-lamp (last accessed Apr. 23, 2025). With the advent of LED technology, the HTSUS was amended in 2017 to provide for LED lamps that emit light by charging an electrical current through a light-emitting diode, which is a semiconductor device. *See* LED, *Encyclopedia Britannica*, https://www.britannica.com/ technology/LED (last accessed Apr. 23, 2025).

It is clear that the "lamps" of heading 8539 differ mainly in their *source* of illumination (*i.e.*, filaments, gas, or LEDs). Thus, the provision for "lamps," regardless of the source of light, remained the same even after the addition of LED-type lamps, as evident by both the pre- and post-2017 Explanatory Notes to heading 8539, which each describe the articles therein as "[e]lectric light lamps consist[ing] of glass or quartz containers, of various shapes, containing the necessary elements for converting electrical energy into light rays." *See* EN 85.39 (2012 &

2017).  The 2017 change to the HTSUS merely added another light source category for lamps of 8539 and does not affect the analysis in *Gerson*.

Finally, plaintiff again cites a footnote in *Gerson* to manufacture a "problem" that the *Gerson* court allegedly "detected."  *See* Pl. Resp. Br. 11.  This argument fails for the same reasons it did in plaintiff's motion.  *See* Plaintiff's Motion for Summary Judgment, ECF No. 73 at 24 (June 20, 2024); Gov. Br. 29.  In footnote 3, the Court in *Gerson* expressed doubt that note 1(f)—which exclude from chapter 94 lamps specified elsewhere—is applicable to heading 8543 because that heading does not, on its face, refer to "lamps."  But the Court's statement as to the applicability of note 1(f) does not change the types of articles classified in heading 8539, a provision that Gerson did not propose for its LED candles on appeal and that the Court did not meaningfully consider.  Accordingly, *Gerson*'s interpretation of chapter 85 and heading 9405 was not undermined by the 2017 amendment to the tariff schedule.

Consequently, heading 8539 covers light bulbs or similar components of electrical equipment that are often parts of lamps of heading 9405, which cover standalone illumination devices.  Target's LED candles, string lights, desk lights, nightlight, path lights, and lanterns operate independently of any other equipment as plug-and-play illumination devices used in and around the home.  Moreover, each of Target's products is specifically identified as an article of heading 9405 by the Explanatory Notes.  Therefore, Target's products are all correctly classified in heading 9405.

## III.    THE INTERPRETATION OF HEADING 8543 IN *GERSON* IS SOUND AND BINDING ON THIS COURT

Target's products imported in 2013 are correctly classified under heading 9405, covering lamps and lighting fittings, and not subheading 8543.70.70, covering electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter:

15

electric luminescent lamps. The Court in *Gerson* held that LED-powered votive and tea lights are classified as "lamps" of heading 9405 and not "electrical machines and apparatus" of heading 8543. Plaintiff now requests that this Court depart from the decision in *Gerson* because it "was wrongly decided, as it effected a repeal by implication of subheading 8543.70.7[0]." Pl. Resp. Br. 14. But the *Gerson* Court already considered this argument and readily rejected it:

> Gerson and its amici next suggest that, under the Trade Court's logic, no electric luminescent lamp would ever be classifiable under subheading 8543.70.70 because such lamps would not be considered "electrical machines and apparatus" as contemplated by heading 8543. They assert that subheading 8543.70.70 "becomes a nullity, into which no product can ever fall." We find this argument both exaggerated and unpersuasive. While those products that would fall within subheading 8543.70.70 are not before us, we are satisfied that the Trade Court's holding leaves ample room in that subheading for certain electric luminescent devices that fall within the scope of heading 8543. *See* EN 85.43(16) (listing as examples "[e]lectro-luminescent devices, generally in strips, plates, or panels, and based on electro-luminescent substances (e.g., zinc sulphide) placed between two layers of conductive material").

*Gerson*, 898 F.3d at 1240–41 (internal citations omitted).

Moreover, plaintiff fails to explain how its argument is not a "bottom-up" classification analysis admonished by the Court in *Gerson*. *See* Pl. Resp. Br. 14; *Gerson*, 898 F.3d at 1240. Although plaintiff argues that the tariff can be interpreted "harmoniously" to include LED lamps in subheading 8543.70.70, HTSUS, doing so violates GRI 1, which requires that a court "first determine whether the merchandise is correctly classified under a particular heading of the HTSUS." *See Gerson*, 898 F.3d at 1240 (citations omitted). As *Gerson* correctly found, the subject votive and tea lights are not "electrical machines and apparatus" of heading 8543 because they are not "equipment designed specifically to carry out a particular function." 898 F.3d at 1236. Moreover, when read in conjunction with heading 9405 and its Explanatory Notes, it "is clear that [such merchandise] belong in heading 9405 rather than in heading 8543." *Id.*

16

A similar outcome is warranted here.  The analysis in the *Gerson* decision is sound and equally applies to Target's other LED lights imported in 2013.  Like the votive and tea lights in *Gerson*, the string lights, desk lights, nightlights, path lights, and lanterns at issue here are all self-contained, independently-used household-type "lamps" of heading 9405, and not "electrical machines and apparatus" of heading 8543, HTSUS.  *See Gerson*, 254 F. Supp. 3d at 1280.

## CONCLUSION

For the reasons above, and those set forth in our cross-motion for summary judgment, we respectfully request that this Court grant our cross-motion for summary judgment and dismiss this action.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel:*

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH
VALERIE SORENSEN-CLARK          Trial Attorney
Office of the Assistant Chief Counsel          U.S. Department of Justice, Civil Division
International Trade Litigation          Commercial Litigation Branch
U.S. Customs and Border Protection          26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0484
April 23, 2025          *Attorneys for Defendant*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

—————————————————————————
                                                            :

TARGET GENERAL MERCHANDISE, INC.,    :

                                      :

                      Plaintiff,        :

                                        :

                          v.            :      Consol. Court No. 15-00069

                                        :

UNITED STATES,                           :

                                        :

                      Defendant.     :
—————————————————————————:

## <u>CERTIFICATE OF COMPLIANCE</u>

      I, MATHIAS RABINOVITCH, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief in support of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 5,203 words.

                                          /s/ Mathias Rabinovitch
                                          MATHIAS RABINOVITCH