Slip Op. 25-104

## UNITED STATES COURT OF INTERNATIONAL TRADE

TARGET GENERAL MERCHANDISE,
INC.,

      Plaintiff,

v.

UNITED STATES,

      Defendant.

Before: Lisa W. Wang, Judge

Consol. Court No. 15-00069

## <u>OPINION AND ORDER</u>

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross
motion for summary judgment.]

Dated:  August 13, 2025

<u>Patrick B. Klein</u>, Neville Peterson, LLP, of New York, NY, argued for Plaintiff Target
General Merchandise, Inc. With him on the brief were <u>Richard F. O'Neill</u> and <u>John M.
Peterson</u>.

<u>Luke Mathers</u>, Trial Attorney, U.S. Department of Justice, International Trade Field
Office, of New York, NY, argued for Defendant United States. With him on the brief
were <u>Mathias Rabinovitch</u>, Trial Attorney, <u>Justin R. Miller</u>, Attorney-In-Charge, <u>Yaakov
M. Roth</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Aimee
Lee</u>, Assistant Director. Of Counsel on the brief was <u>Valerie Sorensen-Clark</u>, Office of
the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border
Protection.

      Wang, Judge: Before the court are cross motions for summary judgment. Pl.'s

Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 73; Def.'s Cross Mot. for Summ. J. and Resp.

in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 78. Plaintiff Target General

Merchandise, Inc. ("Plaintiff" or "Target") challenges U.S. Customs and Border

Protection's ("Customs") classification of 162 different light-emitting diode ("LED") lamps (collectively "imported merchandise"). Plaintiff challenges Customs' 2013 classification of imported merchandise under subheadings 9405.20.60, 9405.20.80, 9405.40.60, and 9405.40.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"), arguing that the proper classification of the imported merchandise is subheading 8543.70.70. Pl.'s Mot. at 2. Plaintiff challenges Customs' 2017 classification of imported merchandise under subheadings 9405.30.00, 9405.40.60, and 9405.40.8410 of the HTSUS, arguing that the proper classification of the imported merchandise is subheading 8539.50. Id. at 2–4. The United States ("Defendant" or "government") cross moves for summary judgment, arguing that the imported merchandise in both periods is properly classified under heading 9405. Def.'s Mot. at 2.

For the following reasons, Plaintiff's motion for summary judgment is denied and Defendant's cross motion for summary judgment is granted.

## BACKGROUND

### I.    Procedural Background

Plaintiff is the importer of record for certain LED lamps imported between March 24, 2013 and May 14, 2013 ("Period 1"). Pl.'s Consol. Compl. ("Consol. Compl.") ¶ 14, ECF No. 29. Customs classified the merchandise under subheading 9405.20.60 or 9405.20.80 as "[e]lectric table, desk, bedside or floor-standing lamps"; 9405.30.00 as "[l]ighting sets of a kind used for Christmas trees"; or 9405.40.60/9405.40.80 as "[o]ther electric lamps and lighting fittings: Of base metal: Other." Id. ¶ 15. Plaintiff filed timely protests concerning the imported merchandise between August 18, 2014 and

September 16, 2014. Summons, ECF No. 1. Customs denied Plaintiff's timely protests

concerning the imported merchandise during the period between October 1, 2014 and

October 22, 2014. Id. Plaintiff contested the denial of the protest pursuant to 28 U.S.C.

§ 1581(a) on March 18, 2015. Id. (Civil Action No. 15-00069).

      Plaintiff is the importer of record for certain LED lamps imported between August

16, 2017 and November 27, 2017 ("Period 2"). Consol. Compl. ¶ 17. Customs classified

the merchandise under subheading 9405.30.00 as "[l]ighting sets of a kind used for

Christmas trees"; 9405.40.60 as "[o]ther electric lamps and lighting fittings: Of base

metal: Other"; or 9405.40.8410 as "[l]amps and lighting fittings including searchlights

and spotlights and parts thereof, not elsewhere specified or included; illuminated signs,

illuminated nameplates and the like, having a permanently fixed light source, and parts

thereof not elsewhere specified or included: Other electric lamps and lighting fittings: Of

base metal: Other: Other lighting sets." Id. ¶ 18. Plaintiff filed a timely protest concerning

the imported merchandise on February 28, 2019. Summons, Court No. 19-00199, ECF

No. 1. Customs denied Plaintiff's timely protest concerning the imported merchandise

on October 22, 2019. Id. Plaintiff contested the denial of the protest pursuant to 28

U.S.C. § 1581(a) on November 6, 2019. Id. (Civil Action No. 19-00199).

      The cases were consolidated on December 31, 2019. See Protests and Entries

from the Port of Savannah, GA for Count No. 19-00199, ECF No. 28. Plaintiff filed its

consolidated complaint on January 24, 2020, requesting that the court order: (1)

reliquidation of the imported merchandise under HTSUS subheading 8539.50.00,

8543.70.70, or 9405.40.80 as appropriate; and (2) a refund of excess duties paid, with interest. Consol. Compl. at 6–7.

## II.     Description of the Imported Merchandise

The imported merchandise consists of 162 LED lighting products. Pl.'s Mot. at 8; Def.'s Mot. at 6. Both parties agree that the models of merchandise can be grouped into seven categories: (1) candles; (2) string lights; (3) table lights; (4) nightlights; (5) path lights; (6) lanterns; and (7) artificial Christmas trees. Pl.'s Mot. at 8; Def.'s Mot. at 6. During Period 1, Plaintiff imported candle models, string light models, table light models, a nightlight model, path light models, and lantern models (product categories 1 through 6). Pl.'s R. 56.3 Statement of Material Facts Not In Disp. ("Pl.'s Facts") ¶¶ 11–52, ECF No. 73-2; Def. Resp. to Pl.'s R. 56.3 Statement of Material Facts Not In Disp. ("Def.'s Facts") ¶¶ 11–52, ECF No. 78-1. During Period 2, Plaintiff imported string light models and artificial Christmas tree models (product categories 2 and 7). Pl.'s Facts ¶¶ 22–32, 53–55; Def.'s Facts ¶¶ 22–32, 53–55.

All of the products at issue emit light via an LED light source. Pl.'s Facts ¶ 10; Def.'s Facts ¶ 10. The products are either solar-powered, battery-powered, and/or powered through an external power source by use of a wire with an electrical power connector. Pl.'s Facts ¶¶ 11–55; Def.'s Facts ¶¶ 11–55. They are all used for utilitarian or decorative illumination in or around the home. Pl.'s Ex. A, at 5, ECF No. 73-3; Def.'s Mot. at 21–22.

Target assigns each product a unique item number referred to as the Department Class Item ("DPCI") number. Pl.'s Facts ¶ 9; Def.'s Facts ¶ 9. A DPCI contains three

sets of numbers, separated by hyphens, and represents the department, class, and item number for each model of products sold by Target. Pl.'s Ex. B, Jarvis Dep. at 36:11–37:8, ECF No. 73-3. Target's imported merchandise is categorized into multiple departments such as outdoor living, bedroom, or seasonal products. Pl.'s Facts ¶ 8; Pl.'s Ex. A, at 6. The seven categories of merchandise are:

(1) LED candle models, candle set models, tea light models, and votive models

There are 37 LED candle models imported during Period 1. Pl.'s Facts ¶¶ 13–14; Def.'s Facts ¶¶ 13–14. The products consist of an LED lighting element in a plastic and/or wax housing and are sold in various sizes and colors. Pl.'s Facts ¶¶ 14–16; Def.'s Mot. at 7. The candle models can come with or without added scents or timers for indoor or outdoor use. Pl.'s Facts ¶ 21; Def.'s Mot. at 7.

Four models are solar-powered LED candles contained in various sizes of rattan housing and sold in Target's patio/grill department. Pl.'s Facts ¶¶ 14, 17; Def.'s Facts ¶ 17. There are two battery-powered packs of LED tea-light candle models sold in Target's candles department. Pl.'s Facts ¶ 18; Def.'s Facts ¶ 18. Two of the models are battery-powered LED candles contained in metal lanterns sold in the candles department. Def.'s Facts ¶ 18; Pl.'s Ex. C, Part 2, at 1321–22, ECF No. 73-5. There are 31 individual battery-operated LED candle models which resemble, in shape and size, pillar candles. Pl.'s Facts ¶ 19; Def.'s Facts ¶ 19. Of the 31 LED pillar candle models, six are described as being for outdoor use and are sold in Target's patio/grill department. Pl.'s Ex. C, Part 1, at 1229–1231, 1233; Def.'s Mot. at 7.

(2) String light models

There are 93 string light models imported during Period 1 and Period 2. Pl.'s Facts ¶¶ 22–23; Def.'s Facts ¶¶ 22–23. The string light models are composed of LED lighting elements arranged along a length of wire and utilize solar power, batteries, or an external power source via an electrical power connector. Pl.'s Facts ¶¶ 24–25; Def.'s Facts ¶¶ 24–25. The string light models can be divided into three categories: (1) "single" string lights; (2) icicle lights; and (3) net lights. Pl.'s Facts ¶ 22; Def.'s Mot. at 8. Single string light models have LED light sources arranged along a continuous strand of wire. Pl.'s Facts ¶ 24; Def.'s Mot. at 8; e.g., Pl.'s Ex. C, Part 1, at 1227–28. Icicle light models have a lead string but also multiple strings which branch off from the lead such that when the lead string is hung horizontally, the branched strings hang vertically and resemble icicles. Pl.'s Facts ¶ 28; Def.'s Facts ¶ 28; e.g., Pl.'s Ex. C, Part 1, at 1235–36. Net light models are LED light sources arranged along interconnected wires to form a grid in the shape of netting, often used to decorate bushes or other outdoor structures. Pl.'s Facts ¶ 29; Def.'s Facts ¶ 29; e.g., Pl.'s Ex. C, Part 1, at 1246–47.

The light bulbs used on the string light models come in a variety of colors, shapes, and sizes ranging from multi-colored and pear-shaped to plastic ghosts. See, e.g., Pl.'s Ex. C, Part 2, at 1307, 1357. The string light models' wire cording comes in a variety of colors such as green, white, clear, and black. See, e.g., Pl.'s Ex. C, Part 1. Some of the string light models have lighting effects while others provide constant lighting. See, e.g., Pl.'s Ex. C, Part 2, at 1301–03. Most of the string light models were branded and sold under Phillips, a third-party brand, with the remaining lights belonging to Target's private label brands: "Room Essentials"; "Wondershop"; and "Hyde and

EEK! Boutique". Pl.'s Facts ¶ 31; Def.'s Facts ¶ 31. Room Essentials is Target's home goods value brand. Jarvis Dep. at 65:16–66:9. Wondershop is Target's Christmas and winter holiday brand. Id. at 87:06–88:14. Hyde and EEK! Boutique is Target's Halloween merchandise brand, containing seasonal Halloween-based items. Id. at 117:9–18.

(3) Table light models

There are 10 table light models at issue in this litigation imported during Period 1. Pl.'s Facts ¶¶ 33–34; Def.'s Facts ¶¶ 33–34. Nine of the light models are designed to be placed on a desk or table, while one model is a grill light, designed to be clipped onto the side of a grill. Pl.'s Ex. E, at 9, ECF No. 73-6; Pl.'s Facts ¶ 37. The light models consist of an LED lighting element, a plastic or metal body, a base or clip, and an electrical power cord and plug. Pl.'s Facts ¶ 36; Def.'s Mot. at 10. The light models provide utilitarian lighting to a person working at a desk or grill. Pl.'s Facts ¶ 37; Def.'s Mot. at 10. The light models were sold in Target's lighting and wall décor department, except for the grill light model which was sold in the patio/grill department. Pl.'s Facts ¶ 38; Def.'s Mot. at 10; see Pl.'s Ex. C, Part 1, at 1222.

(4) Nightlight model

There is one nightlight model at issue in this litigation imported during Period 1. Pl.'s Facts ¶¶ 39–40; Def.'s Facts ¶¶ 39–40. The product consists of an LED lighting element, a plastic cap, and an electrical plug to connect into a wall socket. Pl.'s Facts ¶ 41; Def.'s Mot. at 11. It is a pink, flower-shaped light designed to provide local lighting in a person's bedroom while he or she sleeps. Pl.'s Facts ¶ 42; Jarvis Dep. at 104:20–

105:5. The nightlight model was sold under Target's private label "Circo," a former children's home products brand. Pl.'s Facts ¶ 43; Jarvis Dep. at 105:17–20.

(5) Path light models

There are at least[1] 16 path light models imported during Period 1. Pl.'s Facts ¶¶ 44–45; Def.'s Facts ¶¶ 44–45. The products consist of a solar-powered LED lighting element, a copper wire harness with a rubber or plastic sheeting, and a base or stake for insertion into the ground. Pl.'s Facts ¶ 46; Jarvis Dep. at 111:16–113:10. The path light models, sold in Target's outdoor living department, are intended to illuminate an outdoor walkway or sidewalk automatically at night. Pl.'s Facts ¶ 48; Jarvis Dep. at 111:16–113:10.

(6) Lantern models

There are two LED metal lantern models imported during Period 1. Pl.'s Facts ¶¶ 49–50; Def.'s Facts ¶¶ 49–50. The lantern models contain an LED light source housed in a square or cylindrical metal frame with plastic or glass windows. Pl.'s Facts ¶ 51; Def.'s Mot. at 12. The lantern models are approximately 12 or 18 inches tall and 7 inches wide. Pl.'s Ex. C, Part 1, at 1232–33; Def.'s Mot. at 12. Target sold the lantern models in its outdoor living department, under its private label brand, "Smith and Hawken." Pl.'s Facts ¶ 52; Def.'s Mot. at 12. The lantern models are intended to be

---

[1] One of the DPCI numbers is described as a "set assortment" of path lights. Pl.'s Ex. C, Part 2, at 1355. It is not clear which of the path light models are included in this assortment. Jarvis Dep. at 114–15.

used in an outdoor living space, such as on a patio or front doorstep. Jarvis Dep. at

70:19–71:25.

    (7) Artificial Christmas tree models

    There are two LED Christmas tree models imported during Period 2. Pl.'s Facts

¶¶ 53–54; Def.'s Facts ¶¶ 53–54. The models measure 16 or 21 inches in height, 11 or

14 inches in diameter, and are constructed of polyvinyl chloride, copper, paper, iron,

plastic, and faux foliage. Pl.'s Ex. C, Part 2, at 1314–15. They are used for indoor home

décor and sold seasonally with Christmas articles. Pl.'s Facts ¶ 55; Def.'s Facts ¶ 55;

Jarvis Dep. At 98:9–17.

<b>JURISDICTION &amp; STANDARD OF REVIEW</b>

    The court has jurisdiction over this action. 28 U.S.C. § 1581(a) ("The Court of

International Trade shall have exclusive jurisdiction of any civil action commenced to

contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of

1930.").

    Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." CIT R. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

Specifically, "[i]n a tariff classification dispute, summary judgment is appropriate only

when 'there is no genuine dispute as to the nature of the merchandise and the

classification determination turns on the proper meaning and scope of the relevant tariff

provisions.'" Second Nature Designs Ltd. v. United States, 660 F. Supp. 3d 1352, 1373

(CIT 2023) (quoting Deckers Outdoor Corp. v. United States, 714 F.3d 1363, 1371 (Fed.

Cir. 2013)); see also Tyco Fire Prods. L.P. v. United States, 918 F. Supp. 2d 1334, 1339 (CIT 2013).

Faced with cross motions for summary judgment, the court will "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Second Nature Designs, 660 F. Supp. 3d at 1365 (quoting Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## I.    Judicial Review in Tariff Classification Cases

The court must "reach a correct result" in a tariff classification dispute. Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). The court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." Id. The plaintiff bears the burden of establishing that Customs' classification of the imported merchandise was incorrect:

> Specifically, the importer must produce evidence (the burden of production portion of the burden of proof) that demonstrates by a preponderance (the burden of persuasion portion of the burden of proof) that Customs' classification decision is incorrect. The presumption of correctness certainly carries force on any factual components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision, because facts must be proven via evidence.

Universal Elecs., Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997) (emphases in original); see also Jarvis Clark, 733 F.2d at 878.

Once the plaintiff has met its burden, the court undertakes a two-step process to ascertain the correct result. Faus Group, Inc. v. United States, 581 F.3d 1369, 1371

(Fed. Cir. 2009). As the United States Court of Appeals for the Federal Circuit has

explained:

> First, we ascertain the meaning of the terms within the relevant tariff
> provision and, second, we determine whether the merchandise fits within
> those terms. The first step presents a question of law that we review de
> novo, whereas the second involves a question of fact that we review for
> clear error. When, as here, no genuine dispute exists as to the nature of the
> subject merchandise, the two-step inquiry "collapses into a question of law
> [that] we review de novo."

Well Luck Co. v. United States, 887 F.3d 1106, 1110 (Fed. Cir. 2018) (citations

omitted).

Where "there is no factual dispute regarding the merchandise, its structure and

use, the resolution of the classification issue turns on the first step, determining the

proper meaning and scope of the relevant tariff provisions." Faus Group, 581 F.3d at

1372. The General Rules of Interpretation ("GRIs") "govern the classification of goods

within the HTSUS." Well Luck Co., 887 F.3d at 1111. In order "[t]o determine the

meaning of an HTSUS provision, the court applies the GRIs in numerical order,

beginning with GRI 1 and reaching subsequent GRIs if analysis under the preceding

GRI does not yield proper classification of the subject merchandise." Amcor Flexibles

Kreuzlingen AG v. United States, 560 F. Supp. 3d 1326, 1330 (CIT 2022). Under GRI 1,

"classification shall be determined according to the terms of the headings and any

relative section or chapter notes." GRI 1; see also Orlando Food Corp. v. United States,

140 F.3d 1437, 1440 (Fed. Cir. 1998).

HTSUS terms "shall be considered to be statutory provisions of law for all

purposes." Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, §

1204(c)(1), 102 Stat. 1107, 1149; Libas, Ltd. v. United States, 193 F.3d 1361, 1364

(Fed. Cir. 1999) ("[The] HTSUS is indeed a statute but is not published physically in the

United States Code."). When "a tariff term is not defined in either the HTSUS or its

legislative history, the term's correct meaning is its common or dictionary meaning in the

absence of evidence to the contrary." Russell Stadelman & Co. v. United States, 242

F.3d 1044, 1048 (Fed. Cir. 2001); see also Carl Zeiss, Inc. v. United States, 195 F.3d

1375, 1379 (Fed. Cir. 1999) ("Absent contrary legislative intent, HTSUS terms are to be

construed according to their common and commercial meanings, which are presumed

to be the same."). The court may interpret the terms of a tariff provision by "rely[ing]

upon its own understanding of the terms used and may consult lexicographic and

scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss,

Inc., 195 F.3d at 1379. The court may also consult Explanatory Notes ("ENs") published

by the World Customs Organization ("WCO") "[f]or additional guidance on the scope

and meaning of tariff headings and chapter and section notes." DIS Vintage LLC v.

United States, 456 F. Supp. 3d 1323, 1329 (CIT 2020). ENs are "not binding law," but

they are "generally indicative of the proper interpretation of a tariff provision." Id.

(quoting Agfa Corp. v. United States, 520 F.3d 1326, 1329 (Fed. Cir. 2008)).

## DISCUSSION

Faced with a tariff classification dispute as a matter of law, the court must determine

the proper meaning of the tariff provisions' terms, as well as whether the imported

merchandise properly falls within the scope of the tariff provision. Well Luck Co.,, 887

F.3d at 1110. Here, the parties do not dispute the terms of the tariff provisions, nor do

they dispute the nature of the imported merchandise. Pl.'s Ex. A, at 5; Pl.'s Mot. at 19;

Def.'s Mot. at 19, 21–22. Instead, the parties' dispute is limited to whether the imported

merchandise falls within the scope of the tariff provisions. Pl.'s Mot. at 21, 25; Def.'s

Mot. at 24.

The Federal Circuit has previously examined the scope of the disputed tariff

provisions in <u>Gerson Co. v. United States</u> ("<u>Gerson II</u>"), 898 F.3d 1232 (Fed. Cir. 2018).

Plaintiff acknowledges that the court "needs to follow the applicable case law from the

Federal Circuit, but [Plaintiff] would just like to make a record for potential appeal." Oral

Arg. at 16:39–17:52.[2] As part of its duty to reach the correct result, the court continues

in its analysis of the relevant tariff provisions' scope. <u>See</u> <u>Jarvis Clark</u>, 733 F.2d at 878.

---

[2] At oral argument, Plaintiff was asked to explain for each model of imported merchandise, "why <u>Gerson [II]</u>'s analysis and logic and rationale are not applicable." Plaintiff responded that "the <u>Gerson [II]</u> case errored in that case in disregarding its analysis under heading 8543. The court in that case said 'you know that it was a mere technicality that these terms were described by heading 8543 as machines and apparatus … technically yes. This describes these items' but then [it] just said, 'it's a mere technicality' and moved on past it. We think that was an error and that the court should have done a more complete analysis." When asked: "Your argument is that the Federal Circuit was wrong. Is that the argument?", Plaintiff responded: "We realize that this court needs to follow the applicable case law from the Federal Circuit, but we would just like to make a record for potential appeal on that issue." The court concluded by asking: "You have no facts distinguishing these other models, or anything else besides 'the Federal Circuit erred'? Is that correct? I just want that to be understood." Plaintiff responded: "Yes, your honor." Oral Arg. at 16:39–17:52.

Consol. Court No. 15-00069                                          Page 14

I.      **Period 1**

The imported merchandise during Period 1 includes what the parties have

categorized as: 37 candle models, 93 string light models,[3] 10 table light models, 1

nightlight model, 16 path light models, and 2 lantern models. Consol. Compl. ¶¶ 7, 8;

Pl.'s Mot. at 8; Def.'s Mot. at 6. The commonality between the different models of

imported merchandise is that each article provides illumination by means of an internal

LED semiconductor. Consol. Compl. ¶¶ 7, 8.

Customs classified the imported merchandise under heading 9405, dutiable at

rates between 3.9% and 8% <u>ad valorem</u>. Customs' classified heading is:

**9405 (HTSUS 2013)**
Lamps and lighting fittings including searchlights and
spotlights and parts thereof, not elsewhere specified or
included; illuminated nameplates and the like, having a
permanently fixed light source, and parts thereof not
elsewhere specified or included:

Def.'s Mot. at 2.

Plaintiff contends that the imported merchandise is instead classifiable under

heading 8543:

**8543 (HTSUS 2013)**
Electrical machines and apparatus, having individual
functions, not specified or included elsewhere in this chapter;
parts thereof:

Pl.'s Mot. at 2.

---

[3] The parties do not establish which of the 93 string light models were imported during
Period 1 as compared to Period 2.

**A.     The imported merchandise is properly classified under heading 9405.**

GRI 1 requires that classification be determined in the first instance "according to the terms of the headings and any relative section or chapter notes." For a lamp to be classifiable under heading 9405, it must "not elsewhere [be] specified or included." Similarly, chapter 94 note 1(f) provides that "[l]amps or lighting fittings of chapter 85" are excluded from chapter 94's scope. Because Plaintiff bears the burden of establishing that Customs' classification of the imported merchandise is incorrect, the court must determine whether Plaintiff has met its burden of showing that the merchandise is classifiable under chapter 85. See Universal Elecs., 112 F.3d at 492; see also Jarvis Clark, 733 F.2d at 876.

Plaintiff argues that the imported merchandise is classifiable under heading 8543, "[e]lectrical machines and apparatus, having individual functions …." The Federal Circuit explained that while the definitions of machine and apparatus "[are] not free of ambiguity," the terms refer to "equipment designed specifically to carry out a particular function." Gerson II, 898 F.3d at 1236 (citing Webster's New World College Dictionary 67 (4th ed. 2009) definition of "apparatus," as "any complex device or machine for a specific use," and of "machine," as "a structure consisting of framework and various fixed and moving parts, for doing some kind of work," and "any device thought of as functioning in such a way, as ... an electronic computer.").

Additionally, the court has held, and the parties do not dispute, that a "lamp" is "any of various devices for producing light or sometimes heat…." Gerson Co. v. United States ("Gerson I"), 254 F. Supp. 3d 1271, 1275 n.6 (CIT 2017); Trijicon, Inc. v. United

States, 686 F. Supp. 3d 1336, 1344 (CIT 2024); Pl.'s Mot. at 19; Def.'s Mot. at 19;

Webster's New World College Dictionary (3d ed. 1988). In examining the definition of

"machine" and "apparatus," lamps "serve a particular or specific use or function [of] …

illumination." Trijicon, 686 F. Supp. 3d at 1344; see also Gerson I, 254 F. Supp. 3d at

1276 ("As does any electric lamp, each [imported] article depends for illumination on the

operation of electricity. Also, it can be argued that these articles have 'individual

functions.'").

          The Federal Circuit explained that heading 8543's provision "does not exist in a

vacuum, and [the court] must read it in conjunction with other relevant provisions to

discern its meaning," including any relevant ENs. Gerson II, 898 F.3d at 1236–37. After

viewing the language of headings 8543 and 9405 "in their context and with a view to

their place in the overall statutory scheme," the Federal Circuit found that electrical LED

tea-light candles, despite meeting the definition of machine or apparatus, cannot be so

broadly classified under the terms of heading 8543. Id. at 1237. Specifically, the court

found that:

> If one were to read heading 8543 as covering [the plaintiff's electrical LED
> tea-light] candles, it would cover every electric lamp, because all such
> lamps use electricity to generate light. And, by operation of Note 1(f), such
> lamps could not be classified under heading 9405. In other words, heading
> 9405 would be constrained to only non-electric lamps. That reading, as the
> Trade Court noted, "would impose a specific, and drastic, limitation on the
> scope of heading 9405, HTSUS that the article description for that heading
> does not express or suggest." Gerson [I], 254 F. Supp. 3d at 1278. In fact,
> such a reading would effectively remove electric "searchlights" and
> "spotlights" from heading 9405 even though those devices are expressly
> provided for in that heading. See HTSUS [heading] 9405 ("Lamps and
> lighting fittings including searchlights and spotlights and parts thereof"
> (emphasis added)). We agree with the Trade Court, therefore, that [the

plaintiff's electrical LED tea-light] candles do not fall within the heading 8543.

Id. (emphases in original).

The Federal Circuit further examined chapter 85's ENs to determine that heading 8543 is not a broad classification provision for all electrical lamps that serve the function of illumination. Id. at 1237–38 ("Chapter 85's ENs, by contrast, state that chapter 85 includes '[c]ertain electrical goods not generally used independently, but designed to play a particular role as components, in electrical equipment,' ... EN 85(A)(6) (emphasis added)"). In comparison, the Federal Circuit examined chapter 94's ENs to find that "chapter 94 was intended to include at least finished, standalone electrical lamps used in the home." Id. (emphases in original) ("[EN] 94.05(I), for example, states that the term 'lamps' in heading 9405 refers to lamps 'constituted of any material' and that use 'any source of light,' including 'electricity.' … That EN also provide examples of lamps that fall within the heading and includes those that are 'normally used for the illumination of rooms; ….'").

When "read in conjunction with other relevant provisions to discern its meaning," the court finds that chapter 85's scope is generally limited to electrical lamps that are components within equipment, rather than those used independently in the home. See Gerson I, 254 F. Supp. 3d at 1278–79 (finding that "[i]n short, the 'lamps' that may be described as light bulbs and similar such electrical devices not used independently are classified generally within … chapter 85, and those that are used independently are classified generally within … chapter 94."). In contrast, lamps that are "independently

used," "suitable for household use," or "decorative" are classified under heading 9405.
Id. at 1279.

Here, Plaintiff has not met its burden of showing that Customs' classification
under heading 9405 was incorrect. The imported merchandise, including various lamps
that the parties have categorized as candle models, string light models, table light
models, a nightlight model, path light models, and lantern models, provide illumination
by means of an internal LED. Consol. Compl. ¶¶ 7, 8; Pl.'s Mot. at 8; Def.'s Mot. at 6.
The parties agree that the models are not used as individual components within larger
machines. Pl.'s Ex. A, at 5; Def.'s Mot. at 21–22. Instead, each model of light is:
independently used with solar-power, battery-power, and/or an external power source;
suitable for household use; and used for utilitarian or decorative illumination. Pl.'s Ex. A,
at 5; Def.'s Mot. at 21–22. As such, Customs' Period 1 classification of the merchandise
was correct under heading 9405.[4] See Gerson I, 254 F. Supp. 3d at 1279; see also
Gerson II, 898 F.3d at 1237–38.

**II.    Period 2**

---

[4] The court concludes that no other heading classification is appropriate after
independently considering other tariff classifications. See Jarvis Clark, 733 F.2d at 878;
Trijicon, Inc. v. United States, 686 F. Supp. 3d 1336, 1341 n.4 (CIT 2024).

The imported merchandise during Period 2 includes what the parties have categorized as two LED artificial Christmas tree models[5] and 93 string light models.[6] Pl.'s Facts ¶¶ 5, 6, 22, 23. The string lights are described as LED lighting elements with plastic caps, copper wiring harnesses with plastic or rubber sheeting, long wires with LED light bulbs arranged along the wire, and powered by either an electrical power cord or solar energy. Pl.'s Facts ¶¶ 24, 25. String lights can be used for decorative lighting and in connection with Christmas or other holidays. Id. at 26.

Customs classified the imported merchandise under heading 9405, dutiable at rates between 3.9% and 8%, ad valorem:

**9405 (HTSUS 2017)**
> Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included.

---

[5] Customs classified the imported Christmas trees under heading 9405. Consol. Compl. ¶ 18. In its cross motion for summary judgment, however, Defendant argues that the trees are more properly classified under subheading 9505.10.25, "[f]estive, carnival, or other entertainment articles … Articles for Christmas festivities and parts and accessories thereof: … Christmas ornaments … Other," duty free. Def.'s Mot. at 34. Plaintiff agrees. Pl.'s Resp. to Def.'s Cross Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. at 1–2, ECF No. 85. Because the trees, as decorative articles for Christmas holidays, meet heading 9505's terms, "festive articles," and subheading 9505.10.25 term, "ornament," the court concurs. See Midwest of Cannon Falls, Inc. v. United States, 122 F.3d 1423, 1427–28 (Fed. Cir. 1997). As such, summary judgment is entered for Defendant as to the artificial Christmas trees and they shall be reliquidated duty free as "festive articles" under subheading 9505.10.25.

[6] The parties do not establish which of the 93 string light models were imported during Period 2 as compared to Period 1.

Def.'s Mot. at 2.

Plaintiff contends that the imported merchandise is classifiable under heading 8539:

**8539 (HTSUS 2017)**
                          Electrical filament or discharge lamps, including sealed beam
                          lamp units and ultraviolet or infrared lamps; arc lamps; light-
                          emitting diode (LED) lamps; parts thereof.
Pl.'s Mot at 4.

### A.    The imported merchandise is properly classified under heading 9405.

GRI 1 requires that classification be determined in the first instance "according to the terms of the headings and any relative section or chapter notes." Plaintiff argues that the imported merchandise is classifiable under heading 8539, "[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; light-emitting diode (LED) lamps; parts thereof."[7] Pl.'s Mot. at 4 (emphasis added). For a lamp to be classifiable under heading 9405, "[l]amps and lighting fittings," the language requires that it is "not elsewhere specified or included." Similarly, chapter 94 note 1(f) provides that "[l]amps or lighting fittings of chapter 85" are excluded from chapter 94's scope. Because Plaintiff bears the burden of establishing that Customs' classification of the imported merchandise is incorrect, the court must determine whether Plaintiff has met its burden of showing that the merchandise is classifiable

---

[7] Prior to the January 1, 2017 WCO amendment, heading 8539 only covered "[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps; parts thereof." HTSUS 8539 (2014). Therefore, the only change to the heading term following the amendment was the inclusion of "[l]ight-emitting diode (LED) lamps." HTSUS 8539 (2017).

under chapter 85. See Universal Elecs., 112 F.3d at 492; see also Jarvis Clark, 733

F.2d at 876.

As discussed above, "the 'lamps' that may be described as light bulbs and similar

such electrical devices not used independently are classified generally within HS

chapter 85, and those that are used independently are classified generally within HS

chapter 94." Gerson I, 254 F. Supp. 3d at 1279; see also Home Depot, U.S.A., Inc. v.

United States, 427 F. Supp. 2d 1278, 1283 n.5 (CIT 2006), aff'd, 491 F.3d 1334 (Fed.

Cir. 2007); Target Gen. Merch., Inc. v. United States, 392 F. Supp. 3d. 1326, 1334 (CIT

2019) ("[H]eading 9405 properly classifies the [LED string lights] as 'lamps and lighting

fittings.'").

Contrary to Plaintiff's assertions, the 2017 HTSUS amendment to heading 8539

does not alter the heading's scope to include independent, self-contained lamps.

Instead, the 2017 amendment adding "light-emitting diode (LED) lamps" provides for

LED light bulbs to be classifiable under heading 8539. See Gerson I, 254 F. Supp. 3d at

1279 (finding that heading 8539 "uses the term 'electric filament or discharge lamps' to

refer to various classes of goods that commonly may be described as electric light

bulbs").

In Gerson II, the Federal Circuit found that classifying electrical LED candle lights

under chapter 85 "would impose a specific, and drastic, limitation on the scope of

heading 9405." 898 F.3d at 1237. There, the plaintiff's electrical LED tea-light candles

could have "plausibl[y] [fell]" under a chapter 85 heading. Id. at 1236. However, by doing

so, "heading 9405 would be constrained to only non-electric lamps." Id. at 1238.

Consol. Court No. 15-00069                                                      Page 22

Similarly, here, the 2017 amendment cannot be read to increase the scope of heading

8539 to include lamps "commonly … described as electric light bulbs," as such an

interpretation would drastically limit heading 9405 "to only non-electric" and non-LED

lamps. Gerson II, 898 F.3d at 1237 (emphasis in original); see also Gerson I, 254 F.

Supp. 3d at 1278. Because "[the court] must read [heading 8539] in conjunction with

other relevant provisions to discern its meaning," it is clear that the types of lamps

classifiable under heading 8539 are those commonly referred to as light bulbs. See

Gerson II, 898 F.3d at 1236. In comparison, heading 9405 includes "decorative articles

that also serve an illuminative function" and "finished, standalone electric lamps used in

the home." Id. at 1236, 1238.

Here, Plaintiff has not met its burden of showing that Customs incorrectly

classified Plaintiff's various string light models under heading 9405. It is undisputed that

Plaintiff's string light models are "standalone electric lamps," as each model is

composed of LED lighting elements and utilizes solar power, batteries, or an external

power source via an electrical power connector. Gerson II, 898 F.3d at 1237; Pl.'s Facts

¶¶ 24–25; Def.'s Facts ¶¶ 24–25. Plaintiff further provides that the string light models

"are used for decorative lighting in connection with Christmas or other holiday activities"

and come in a variety of colors, shapes, and sizes ranging from multi-colored and pear-

shaped to plastic ghosts. Pl.'s Facts ¶ 26; e.g., Pl.'s Ex. C, Part 2, at 1307, 1357.

Because the string light models are independently used, suitable for household use,

and decorative, Plaintiff's string light models cannot be classified under heading 8539,

as doing so "would impose a specific, and drastic, limitation on the scope of heading

9405." Gerson II, 898 F.3d at 1237. Because heading 9405 includes "lamps … not elsewhere specified or included," Customs' classification of the Period 2 imported merchandise was correct.

### III.    Classification of String Light Models at the Subheading Level

Finally, the court must decide whether Customs properly classified Plaintiff's various string light models under HTSUS subheading 9405.30.00, "[l]ighting sets of a kind used for Christmas trees." Plaintiff argues that "[i]f the [c]ourt determines that HTSUS [c]hapter 85 does not cover the subject articles," then any string light models "which feature cording [sic] in black, white, or any color other than green" or "are of lengths or sizes not suitable for use on Christmas trees," are instead classifiable under 9405.40.80, "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; … Other electric lamps and lighting fittings: Other." Consol. Compl. ¶¶ 40–43.[8]

Plaintiff bears the burden of establishing that Customs' classification of the imported merchandise is incorrect. Jarvis Clark, 733 F.2d at 876. This must be shown through "evidence (the burden of production portion of the burden of proof) that demonstrates by a preponderance (the burden of persuasion portion of the burden of proof) … because facts must be proven via evidence." Universal Elecs., 112 F.3d at 492 (emphases in original). It is only once a plaintiff has met its burden that the court

---

[8] Plaintiff does not address this argument in subsequent briefing, nor does Defendant address this argument.

undertakes a two-step process to ascertain the correct result. Faus Group, 581 F.3d at 1371–72; Jarvis Clark, 733 F.2d at 878; see also Victoria's Secret Direct, LLC v. United States, 908 F. Supp. 2d 1332, 1338 (CIT 2013), aff'd, 769 F.3d 1102 (Fed. Cir. 2014) ("Once imported merchandise is determined to be classifiable under a particular heading, a court must look to the subheadings to find the correct classification of the merchandise in question.").

    To classify merchandise under subheading 9405.30.00, "[l]ighting sets of a kind used for Christmas trees," two elements must be met: (1) the good is a "lighting set," including those goods that are part of "the general class of lights on strings"; and (2) the lighting set is "principally used for Christmas trees," rather than for other purposes such as general decoration or illumination. Primal Lite, Inc. v. United States ("Primal Lite I"), 15 F. Supp. 2d 915, 917 (CIT 1998), aff'd, 182 F.3d 1362 (Fed. Cir. 1999); HTSUS 9405.30.00. The parties agree, and the court concurs, that the imported merchandise at issue consists of lighting sets within the general class of lights on strings. Pl.'s Mot. at 9; Def.'s Mot. at 8; Primal Lite I, 15 F. Supp. 2d at 917. The issue is therefore whether Plaintiff has met its burden of establishing that the imported string light models are not principally used for Christmas trees. Primal Lite, Inc. v. United States ("Primal Lite II"), 182 F.3d 1362, 1364 (Fed. Cir. 1999) ("The government contends that subheading 9405.30.00 is a 'principal use' provision …. We agree.").

    In determining principal use, the court must rely on the undisputed record and the article itself. Target Gen. Merch., 392 F. Supp. 3d at 1331 ("Based on the parties' submissions and the court's examination of the submitted samples, there can be no

genuine issue of material fact that the lighting sets at issue are not principally used as Christmas tree lights and are not fungible with Christmas tree lights."); see also Primal Lite II, 182 F.3d at 1365 ("[Plaintiff's] affidavit established that the principal use of [its] imported goods was not for Christmas trees, and the government provided no evidence that those goods and those commercially fungible with them are principally used for Christmas trees."). The court additionally looks to the record to consider "the group of goods that are commercially fungible with the imported goods." Primal Lite II, 182 F.3d at 1365. Commercial fungibility between imported merchandise and a class or kind of merchandise is determined by evaluating all "pertinent circumstances," such as: the merchandise's general physical characteristics; how the merchandise is advertised and displayed; and the expectations of the ultimate purchasers. United States v. Carborundum Co., 536 F.2d 373, 377 (CCPA 1976).

Here, Plaintiff argues generally that any string light models "which feature cording [sic] in black, white, or any color other than green" or "are of lengths or sizes not suitable for use on Christmas trees are not lighting sets of a kind used on Christmas trees." Consol. Compl. ¶¶ 40–43. However, Plaintiff does not provide evidence that the string light models in dispute are not intended for use on Christmas trees.[9] For example, where the court relied on a plaintiff's affidavit and the physical evidence to determine that certain non-green colored corded lights would not be principally used for Christmas

---

[9] Notably, Plaintiff does not assert which of the 93 string light models over Period 1 and Period 2 were classified incorrectly. Consol. Compl. ¶¶ 40–43.

Consol. Court No. 15-00069                                                        Page 26

trees, no such affidavit or evidence exists here. See Target Gen. Merch., 392 F. Supp.

3d at 1336.

Plaintiff's evidence does not distinguish which, if any, of the imported string light

models are not principally used for Christmas trees. Plaintiff's witness, Target's Senior

Buyer, Christina Jarvis, asserted that string light models with department class item

DPCI 051 are sold during the Christmas season in Target's Trim-a-Tree Christmas

department. Jarvis Dep. At 80:6–18. However, when asked, "[d]o you know what makes

a light of a kind used on a Christmas tree versus one that's not?," Jarvis responded:

> I don't think there's a distinguishing factor. I think it could be used – it could
> be used on Christmas trees, but it could be used in other ways as well. This
> goes back to like it could be used on the exterior of your home. It can be
> used on a garland. It could be used on a pergola just for like ambient lighting
> outdoors year-round.

Jarvis Dep. 137:7–17. Plaintiff also has provided no evidence demonstrating the

packaging or consumer expectations of each model of string lights.

Because Plaintiff fails to provide evidence demonstrating that the string light

models are not principally used for Christmas trees, Plaintiff has failed to meet its

burden of establishing that Customs' classification is incorrect. Primal Lite I, 15 F. Supp.

2d at 917; Jarvis Clark, 733 F.2d at 876. As such, Defendant's classification will not be

disturbed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED**

and Defendant's cross motion for summary judgment is **GRANTED**. Judgment shall be

entered accordingly.

Consol. Court No. 15-00069                                              Page 27

                                                    /s/      Lisa W. Wang_____
                                                    Lisa W. Wang, Judge

Dated: _____August 13, 2025_____
         New York, New York